1   Brian J. Benoit (Pro Hac Vice forthcoming)
    bbenoit@kmazuckert.com
2   KMA Zuckert LLP
    227 West Monroe Street, Suite 3650
3   Chicago, Illinois 60606
    P: (312)345-3000 / F: (312)345-3119
4
    Christopher P. Katers (Pro Hac Vice forthcoming)
5   ckaters@katersgranitz.com
    Bryen Hill (Pro Hac Vice forthcoming)
6   Katers & Granitz, LLC
    8112 W. Bluemound Road, Suite 101
7   Milwaukee, WI 53213
    P: (414) 600-0115 / Fax: (414) 600-9551
8
    Brodie H. Smith, (CA Bar No. 221877)
9   brodie@lanzasmith.com
    LANZA & SMITH
10  A Professional Law Corporation
    3 Park Plaza, Suite 1650
11  Irvine, California 92614-8540
    P: (949) 221-0490 / F: (949) 221-0027
12
    Attorneys for Plaintiffs
13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16  AHP CAPITAL MANAGEMENT LLC,     Case No.:
17  an Ohio limited liability company, as
    Administrator of American Homeowner    **COMPLAINT FOR:**
18  Preservation Trust Series 2015A+ and
    American Homeowner Preservation    **1.  Violation of California Penal Code**
19  Trust Series AHP Servicing              **§496.**
20                                     **2.  Breach of Fiduciary Duty**
               Plaintiff;              **3.  Negligence**
21  vs.                                **4.  Violation of 18 U.S.C. § 1962(c) - RICO**
22                                     **5.  Violation of 18 U.S.C. § 1962(d) –**
    OAK HARBOR CAPITAL, LLC, a         **RICO Conspiracy**
23  Delaware limited liability company;    **6.  Violation of 18 U.S.C. § 1962(a) – Use**
    LAND HOME FINANCIAL               **or Investment of RICO Funds**
24  SERVICES, INC., a California       **7.  Violation of 18 U.S.C. § 1962(d) –**
    Corporation; ATLANTICA, LLC, a     **RICO Conspiracy**
25  Delaware limited liability company;    **8.  Violation of 18 U.S.C. § 1962(b) –**
26  MAGERICK, LLC, a Delaware limited  **RICO**
    liability company; WILLIAM         **9.  Violation of 18 U.S.C. § 1962(d) –**
27  WEINSTEIN, an individual; WWR      **RICO Conspiracy**
28

                                1
                            COMPLAINT

MANAGEMENT, LLC, a Delaware limited liability company WESTERN ALLIANCE BANK, an Arizona Corporation; BANNER BANK, a Washington Bank Corporation, BRADLEY WAITE, an individual; and DOES 1-50, inclusive,

Defendants.

10. **Unjust Enrichment**
11. **Accounting**
12. **Conversion**
13. **Fraud**
14. **Declaratory and Injunctive Relief**
15. **Cal. Bus. & Prof. Code § et seq.**
16. **Violation of 12 U.S.C. § 2607**
17. **Violation of 12 U.S.C. § 2607**
18. **Money Had and Received**

**[Jury Trial Demand]**

For its claims against Defendants Oak Harbor Capital, LLC, Land Home Financial Services, Inc., Atlantica, LLC, WWR Management, LLC, Magerick, LLC, William Weinstein, Western Alliance Bank, Banner Bank, and Bradley Waite, Plaintiff AHP Capital Management LLC as administrator for American Homeowner Preservation Trust Series AHP Servicing, and American Homeowner Preservation Trust Series 2015A+, allege as follows:

## INTRODUCTION

1.      "This file is going to end up being a big loss for [the AHP Trusts] and I think [they have] real problems going forward." Weinstein's September 22, 2022 declaration of a "big loss" was the predicate to a scheme to enlist Cymbidium Restoration Trust, Oak Harbor, Atlantica, Land Home, Magerick, Waite, WWR, and Western Alliance to seize control of and strip the AHP Trusts of over $84 Million in assets.

2.      This matter stems from a fraudulent scheme designed and orchestrated by Weinstein, Oak Harbor, Land Home, Atlantica, WWR, Magerick, Cymbidium, and Western Alliance. The AHP Trusts were and are the rightful owners of a group of Mortgage Loans ("Mortgage Loans") stolen from them, creating the "big loss."

X:\D\788-01\Pleadings\MASTER Complaint FINAL.docx

3.     The Mortgage Loans were stolen from the AHP Trusts and the original loan files ("Mortgage Loan Files") are currently in the physical possession of Western Alliance. Western Alliance will not return the Mortgage Loan Files. Magerick and/or Cymbidium cannot return the Mortgage Loans, and Oak Harbor, Atlantica, Weinstein, and Land Home are divesting the Mortgage Loans of their value by (a) transferring the Mortgage Loans to affiliates; (b) servicing the Mortgage Loans consistent with the Scheme described herein; including (c) charging AHP Trusts and consumers for non-existent insurance, and  (d) double-pledging (fraud upon a bank in which the same asset is pledged as collateral to two or more banks at the same time without the knowledge of the banks) the Mortgage Loans to monetize them to the detriment of their rightful owner – the AHP Trusts.

4.     The Mortgage Loans were and remain subject to a Mortgage Loan Sale Agreement with Repurchase Obligation ("MLSARO"), entered into between the AHP Trusts and Cymbidium. The Mortgage Loans consisted of Category A and B loans. Despite the representations in the MLSARO that both the Category A and B Mortgage Loans were sold by the AHP Trusts to Cymbidium, the terms of the MLSARO amounted to a loan for which 540 Mortgage Loans ("Category B Mortgage Loans") were pledged as collateral. Only (22) of the Mortgage Loans ("Category A Mortgage Loans") were actually sold and transferred to Cymbidium without an eventual contemplated transfer of all rights back to the AHP Trusts.

5.     The designation of the AHP Trusts as "Seller" and Cymbidium as "Purchaser" in the MLSARO did not and does not confer rights to the Mortgage Loans that exceed those enumerated rights and conditions set forth in the MLSARO.

6.     Magerick, not Cymbidium, with the substantial assistance of Weinstein, Oak Harbor, and Atlantica fraudulently pledged the Mortgage Loans to Western Alliance as collateral for Magerick's line of credit. Later, Weinstein double-pledged at least 231 of these same Mortgage Loans to Banner as collateral for a separate line of credit.

7.    Oak Harbor and Atlantica abused the powers granted to them and have purported to transfer ownership of the Mortgage Loans and all proceeds flowing there from ("the Mortgage Loan Proceeds") to its affiliates, primarily Magerick, for no or below-market consideration in violation of the very Limited Power of Attorneys pursuant to which Oak Harbor and Atlantica purported to act. Those acts also violated the law.

8.    The AHP Trusts satisfied the terms of the MLSARO and therefore are and continue to be entitled to the return of the remaining Mortgage Loans, Mortgage Loan Proceeds, and Mortgage Loan Files.

9.    The Mortgage Loans are being serviced by Land Home, which is a substantial investor in Magerick, the recipient of the majority of the stolen Mortgage Loans. Land Home continues to service the Mortgage Loans improperly and without authorization including the collection of the Mortgage Loan Proceeds which are then misappropriated to Magerick, Western Alliance and others in direct violation of the AHP Trusts' rights.

10.    Oak Harbor charged the AHP Trusts for over $300,000 of non-existent insurance. As part of the "Insurance Scheme," Land Home, as the servicer of the Mortgage Loans, is also charging hundreds of residential borrowers for force placed insurance on a monthly basis through the use of interstate mail and wire facilities and collecting the "insurance premiums" from the residential borrowers. No insurance has been procured or exists. The AHP Trusts, in addition to borrowers, are being charged for non-existent "self-insurance."

## PARTIES

11.    American Homeowner Preservation Trust Series 2015A+ ("2015A+ Trust") is a Delaware Statutory Trust with its principal place of business in Chicago, Illinois.

12.    The sole beneficiary of 2015A+ Trust is American Homeowner Preservation 2015 A+ LLC ("2015A+ LLC"), a Delaware limited liability company with its principal place of business in Chicago, Illinois.

13.    The sole member of 2015A+ LLC is American Homeowner Preservation Management, LLC ("AHP Management"), a Delaware limited liability company with its principal place of business in Chicago, Illinois.

14.    The members of AHP Management are Jorge Newbery ("Newbery") and Echeverria Newbery ("E. Newbery"):

      a.  E. Newbery is domiciled in and a citizen of the State of Illinois, with a home address in Barrington, Illinois; and

      b.  Jorge Newbery is domiciled in and a citizen of the State of Illinois, with a home address in Barrington, Illinois.

15.    The administrator of 2015A+ Trust is AHP Capital Management LLC ("AHP Capital").  In its role as administrator, AHP Capital has authority to bring suit on behalf of the 2015 A+ Trust. Newbery is the manager of AHP Capital.

16.    AHP Capital is an Ohio limited liability company with its principal place of business in Chicago, Illinois.

17.    The sole member of AHP Capital is Neighborhoods United, LLC ("Neighborhoods United").

18.    Neighborhoods United, LLC is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

19.    The members of Neighborhoods United, LLC are E. Newbery and Newbery.

20.    The trustee of 2015A+ Trust is U.S. Bank Trust N.A ("U.S. Bank").

21.    American Homeowner Preservation Trust Series AHP Servicing ("AHP Servicing Trust") is a Delaware Statutory Trust with its principal place of business in Chicago, Illinois.

X:\D\788-01\Pleadings\MASTER Complaint FINAL.docx

22. The sole beneficiary of AHP Servicing Trust is AHP Servicing, LLC ("AHP Servicing").

23. AHP Servicing is a Delaware limited liability company with its principal place of business in Chicago, Illinois.

24. The sole member of AHP Servicing is Neighborhoods United.

25. The administrator of AHP Servicing Trust is AHP Capital. In its role as administrator, AHP Capital has authority to bring suit on behalf of the AHP Servicing Trust.

26. The trustee of AHP Servicing Trust is U.S. Bank.

27. Oak Harbor Capital, LLC ("Oak Harbor") is a Delaware limited liability company with its principal place of business in Seattle Washington. Its sole member is Oak Harbor Holdings, LLC.

28. Oak Harbor Holdings, LLC ("Oak Harbor Holdings") is a Delaware limited liability company with its principal place of business in Seattle, Washington.

29. The members of Oak Harbor Holdings are Holdphrysing, Inc. ("Holdphrysing") and William S. Weinstein.

30. Holdphrysing is a Washington Corporation with its principal place of business in Seattle, Washington.

31. William S. Weinstein ("Weinstein") is domiciled in and a citizen of the State of Washington, with a home address at 75 Skagit Key, Bellevue, King County, Washington.

32. Oak Harbor is the manager of Cymbidium Restoration, LLC ("Cymbidium Restoration"), which is the settlor and sole beneficiary of Cymbidium.

33. Oak Harbor assisted in the scheme described herein by, *inter alia,* misusing the LPOAs to fraudulently transfer the assets of the AHP Trusts to Magerick, which pledged the AHP Trusts' Mortgage Loans to Western Alliance. Further, Oak Harbor participated in the Insurance Scheme described herein by charging the AHP Trusts for the same.

34.     WWR Management, LLC ("WWR") is a Delaware Limited Liability company with its principal place of business in the State of Washington.

35.     WWR is a company that, upon information and belief, is managed by Oak Harbor. Latim Wong is both the Governor of WWR and the Real Estate Owned ("REO") Director at Oak Harbor. The registered agent of WWR is Weinstein & Riley, P.C.

36.     Land Home Financial Services, Inc. ("Land Home") is a California Corporation with its principal place of business at 1355 Willow Way, Suite 250, Concord, CA.

37.     Land Home is a lending and servicing institution with licenses in all states of the union.

38.     Land Home serviced and continues to service the Mortgage Loans and, through the mail and wires, collect the Mortgage Loan Proceeds.  Land Home participated in the schemes described herein and continues to issue, through the mail and wires, invoices and collect funds in furtherance of the schemes set forth herein.

39.     Magerick, LLC ("Magerick") is a Delaware limited liability company with its principal place of business in Seattle Washington and an office in Santa Ana, California.  Magerick continues to receive and benefit from the Mortgage Loan Proceeds and misrepresents that it owns the Mortgage Loans to a least one lender, Western Alliance.

40.     Magerick has two members: Land Home Financial Services, Inc. and Oak Harbor Management, LLC.

41.     Oak Harbor Management, LLC's sole member is Oak Harbor Holdings, LLC.

42.     Atlantica, LLC ("Atlantica") is a Delaware Limited Liability Company with its principal place of business in Seattle, Washington. Atlantica participated in the scheme described herein by, among other things, misusing a LPOA to fraudulently transfer the AHP Trusts' Mortgage Loans.

43.     Upon information and belief, the sole manager of Atlantica is Oak Harbor. *See* ¶27.

44.     The sole member of Atlantica is Adam Henderson ("Henderson").

45.     Adam Henderson is a resident and domiciliary of the State of Washington.

46.     Weinstein is a resident of the State of Washington, a member of Oak Harbor Holdings, LLC and the sole shareholder of Holdphrysing.

47.     Bradley Waite ("Waite") is a resident of California.

48.     Banner Bank ("Banner") is a Washington Bank Corporation organized under the State of Washington with its principal place of business at 10 South 1st Ave., Walla Walla, Washington, 99362-1942.

49.     Western Alliance Bank, Inc. ("Western Alliance") is an Arizona Corporation with its principal place of business in Phoenix, Arizona.

## JURISDICTION AND VENUE

50.     The above-entitled case is a civil action of which the United States District Court for the Central District of California has original jurisdiction under the provisions of 28 U.S.C. Section 1332 and is an action of a civil nature between citizens of different states, wherein the amount in controversy exceeds $75,000.00.

51.     Jurisdiction is proper pursuant to 28. U.S.C. § 1331 as this action arises under the law of the United States, including 18 U.S.C. § 1962 *et seq.*, Racketeer Influenced and Corrupt Organizations Act and 12 U.S.C. § 2607 *et seq.*, Real Estate Settlement Procedures Act.

52.     Jurisdiction is also proper pursuant to 28 U.S.C. Section 1367 because this Court has supplemental jurisdiction over the state law claims asserted.

53.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(3), as Land Home Financial Services, Inc. is a California Corporation and Defendant Magerick, Inc., has one of its principal offices in Orange County (Santa Ana), California. That same office also acts as one of Land Home Financial Services, Inc.'s ("Land Home") branch locations. Land Home is a substantial investor and member of Magerick. and is subject

to this court's personal jurisdiction. Land Home and Magerick are subject to the court's jurisdiction in this venue, and there is no district in which an action may otherwise be brought as provided in 28 U.S.C. § 1391(b)(1) or (2). Additionally, Oak Harbor Capital, LLC (Entity No. 201906310590), Western Alliance Bank (Entity No. 3560413), and Banner Bank (Entity No. 3826793) are registered to conduct business in California and are also subject to the court's jurisdiction.

## FACTS COMMON TO ALL CLAIMS

### A.    THE MLSARO AND AMENDMENT

54.    On October 7, 2022, the AHP Trusts entered into the MLSARO with Cymbidium. The MLSARO, which was drafted by Cymbidium, transferred certain rights in the Category B Mortgage Loans to Cymbidium as security for a loan of $19.75 Million from Cymbidium to The AHP Trusts ("Cymbidium Loan").

55.    Prior to the execution of the MLSARO, Weinstein represented to Newbery that the Category B Mortgage Loans (540 mortgage loans with approximately $57 million due and owing on them) were security for the $19.75 Million Cymbidium Loan. On September 29, 2022, Weinstein wrote, "You [Newbery] need to approve **Schedule B's listing and acknowledge it is security for the $20 Million** [Cymbidium Loan]**.**" [Emphasis added.]

56.    Upon conveyance of certain rights in the Mortgage Loans by The AHP Trusts to Cymbidium, Cymbidium was entitled to receive with respect the Mortgage Loans, all monthly payments and all other payments and recoveries of principal, interest, late payment charges, prepayment premiums and other fees, charges and amounts until the Cymbidium Loan was repaid in full.

57.    The MLSARO also obligated The AHP Trusts to repurchase outstanding Mortgage Loans, at a cost that equated to the payoff of the Cymbidium Loan otherwise known as the "Repurchase Price" together with other fees, costs and expenses. Upon

repurchase, Cymbidium was required to transfer the outstanding Mortgage Loans back to the AHP Trusts.

58.     The MLSARO made clear that the rights that were being transferred to Cymbidium were, "subject to the representations, warranties terms and provision of this Agreement," including the AHP Trusts' contractual right to the return of the Mortgage Loans upon repayment of the Repurchase Price.

59.     The MLSARO also made clear that, "[t]he Mortgage Loans will be put up for sale to be managed by Mission Capital, with the proceeds of any sales **being applied dollar for dollar to the Repurchase Price for the benefit of [the AHP Trusts]** … for such sold Mortgage Loans." [Emphasis added.]

60.     Pursuant to the MLSARO, when the AHP Trusts repaid the Repurchase Price on the Repurchase Date, in regard to the Category B Loans "all of [Cymbidium's] rights, title and interests in such Mortgage Loans shall revert to the [the AHP Trusts] as of the Repurchase Date."

61.     Upon the funding of the Cymbidium Loan, the AHP Trusts were required to and did "deliver … the Mortgage Files to the Purchaser's **custodian** [Western Alliance] as directed." per the MLSARO. [Emphasis added.]

62.     Western Alliance, as custodian, was entrusted with temporary possession, but neither ownership of nor a security interest in the Mortgage Files delivered to Western Alliance.

63.     On January 7, 2023, the AHP Trusts were obligated to repurchase the Category B Mortgage Loans for a price calculated based on the terms of the MLSARO, the Repurchase Price, which amounted to repayment of the Cymbidium Loan with interest and costs.

64.     When the AHP Trusts were unable to repurchase the Category B Mortgage Loans, the AHP Trusts and Cymbidium executed the First Amendment (the "Amendment").

65. On March 15, 2023, the MLSARO was amended. The Amendment eliminated the distinction between Category A Mortgage Loans and Category B Mortgage Loans and in exchange, gave Cymbidium certain rights over additional Mortgage Loans beyond those Mortgage Loans pledged in the MLSARO, referred to in the aggregate as the "Mortgage Loans" to effectuate the terms of the MLSARO and the Amendment, and to satisfy the Cymbidium Loan. The AHP Trusts pledged an additional 277 Mortgage Loans with a total amount due of $17,222,824.

66. The MLSARO and Amendment provided that any revenue and proceeds from disposition, assignment, and servicing of the Mortgage Loans would be credited toward the Cymbidium Loan.

67. The Amendment provided that upon repayment by the AHP Trusts to Cymbidium of the Repurchase Price (Payoff) in the MLSARO and Amendment, the remaining Mortgage Loans and excess Mortgage Loan Proceeds were to be returned to the AHP Trusts unencumbered.

68. The Amendment changed the interest rate from 12% to 16% and made clear that the AHP Trusts' assets would be returned to them upon repayment of the Cymbidium Loan:

> The Seller [the AHP Trusts] will be entitled to all amounts recovered on the Mortgage Loans in excess of (i) repayment **of all debt and interest related to the transactions contemplated under the Agreement**; (ii) all unrelated third-party costs and fees related to managing the Mortgage Loans, (iii) the 16% Applicable Pricing Rate and (iv) Management Fee. **Thus, upon payment in full of these amounts, the remaining Mortgage Loans and other assets including excess cash are to be assigned back to the Seller [the AHP Trusts].** [Emphasis added.]

69. No provision of either the MLSARO or the Amendment negates the AHP Trusts' contractual right to the return of the Mortgage Loans upon repayment of the Cymbidium Loan.

1

**B.    THE PLEDGING OF CATEGORY B MORTGAGE LOANS AS**

2

**COLLATERAL**

3

70.    Immediately prior to October 7, 2022, the effective date of the MLSARO,

4

on October 6, 2022, Magerick fraudulently pledged the Category B Mortgage Loans as

5

collateral for an increase in its line of credit from Western Alliance ("Western

6

Alliance/Magerick Loan"). Both Weinstein and Land Home guaranteed the Western

7

Alliance/Magerick Loan.

8

71.    Magerick, via its affiliation with Cymbidium through its common manager,

9

Oak Harbor, which is managed by Weinstein, orchestrated a scheme to populate its

10

Western Alliance borrowing base certificates with Category B Mortgage Loans prior to

11

the effective date of the MLSARO.

12

72.    On September 29, 2022, Weinstein, prior to the execution of the

13

Cymbidium Loan between Cymbidium and the AHP Trusts, wrote to Frank "Trip"

14

Brannen at Oak Harbor, "Can you send schedules A and B [the schedules to the proposed

15

MLSARO] to Ken Hedberg [at Western Alliance] and create a borrowing base certificate

16

for this funding?"

17

73.    Magerick was neither a party to the MLSARO nor did it have authority to

18

pledge the Mortgage Loans it did not own, or have any rights in, as collateral.

19

74.    Weinstein leveraged his position as manager of Oak Harbor, Magerick, and

20

Cymbidium to affect the pledge by Magerick of the Mortgage Loans to Western Alliance

21

in spite of the lack of any authority granting such a right.

22

75.    While the AHP Trusts were aware or understood that Magerick was

23

involved in the Cymbidium Loan, AHP had no knowledge that the Mortgage Loans were

24

being transferred to Magerick to pledge as collateral for the Western Alliance/Magerick

25

Loan. Weinstein emailed Newbery on September 21, 2022:

26

> Dear Jorge, As promised, please see attached are suggested forms for the
> $25M loan documents Jorge refers to below.  They are based on the previous

27

> forms we have considered with AHP. Cymbidium Restoration Trust is

28

referenced as the purchaser, and will be purchasing for the benefit of Magerick, LLC.

On October 6, 2022, Weinstein emailed Newbery:
Dear Jorge, The AHP-Magerick transaction completed. Jorge should have the money in his account. Attached is the confirmation.

Attached was a wire confirmation with an effective date of October 6, 2022 from Alliance Bank of Arizona, a division of Western Alliance Bank.

76.    While AHP was aware or understood that a portion of funding for the AHP Loan came from a loan from Western Alliance, AHP had no knowledge that the Mortgage Loans were being pledged by Magerick as collateral for the Western Alliance/Magerick Loan. On December 2, 2022, Weinstein sent a letter to Newbery stating:

This letter confirms our conversation last night that under Mortgage Loan Sale Agreement dated as of October 7, 2022 (the "Agreement") and pursuant to Subsection 7.02 Delivery of Mortgage Files, that AHP Servicing, LLC, as Seller, must deliver the Mortgage Files to Cymbidium Restoration Trust's Custodian/Western Alliance Bank.

77.    This December 2, 2022 letter in ¶76 referred to what Newbery understood Western Alliance's role to be: "Custodian" for Cymbidium. As Western Alliance had not been a significant part of the communication at that point, Newbery erred in the bank name when he emailed AHP Trusts' VP Of Trading Karen Kamphausen ("Kamphausen") on December 2, 2022, and copied Weinstein,

Karen - We need to have the original collateral files for the Schedule B assets shipped to Pacific Western Bank. Please work with Shah to get this done next week.

Weinstein responded on December 2, 2022: "Thanks, but to be clear it's Western Alliance Bank."

78.    Since the Category B Mortgage Loans were pledged as collateral for a loan held by an entity, Magerick, that was not a party to the MLSARO, it made it impossible

for the Category B Mortgage Loans to be repurchased by the AHP Trusts on January 7, 2023, as required by the MLSARO.

79.     When the AHP Trusts were unable to repurchase the Category B Mortgage Loans, Cymbidium and the AHP Trusts executed the Amendment on March 15, 2023.

80.     The Amendment was not executed because Cymbidium wanted to provide the AHP Trusts with an outlet to satisfy its obligations to repay the $19.75 Million Cymbidium Loan, but because the Category B Mortgage Loans were encumbered by Western Alliance and the apparent (not actual) ownership of the Mortgage Loans by Magerick. The Category B Mortgage Loans consequently could not be returned to the AHP Trusts as required by the MLSARO.

81.     Shortly after the Category B Mortgage Loans were pledged, Western Alliance scrutinized the transfer. Rather than perform basic due diligence and correct what was easily decipherable as a fraudulent pledge of collateral, it acquiesced to the veiled assurances of Weinstein and would, shortly thereafter, ignore the stark reality that Magerick had no authority to pledge the Mortgage Loans as collateral for more than $20 Million Western Alliance loaned to Magerick.

82.     Western Alliance questioned the process and assignment of the Mortgage Loans from the beginning, as Oak Harbor, acting on behalf of Magerick and Cymbidium, contemplated how to complete the theft of the Mortgage Loans and transfer the same to Western Alliance. On October 27, 2022, Weinstein wrote to Ken Hedberg ("Hedberg") at Western Alliance:

> This issue is that the Magerick loans reside in a national trust, Cymbidium. The loans are segregated and marked for Magerick, but your back office said that all these AOLs needed to be refiled in Magerick's name, which defeats the entire purpose of the protections afforded under Cymbidium.  Can we work through the issue to satisfy Western Alliance?

83.     On October 27, 2002, Hedberg responded confirming that Western Alliance was not apprised of the true ownership of the Mortgage Loans or what rights Magerick

had in the Mortgage Loans and had been led to believe that Magerick had a direct interest in the Mortgage Loans:

> Yes, I am happy to jump on a call. I would also like to include my legal counsel, Bruce Johnson (copied), I recall discussing this in detail when we were documenting the change/It is my understanding that Magerick purchases notes then pledges to [Western Alliance] (executes the Allonges, Assignments, etc.) then transfers the Notes to Cymbidium subject to [Western Alliance's] interest in the notes.

84.    On November 9, 2022, Aaron Edwards of Oak Harbor, wrote to five individuals at Oak Harbor, including Weinstein:

> Trip and I met with [Weinstein] last night. **He wants to get the 23 loans from recent AHP deals assigned ASAP** and be prepared for the various assignments that need to be done with FNMA based on financing that has been brought together.
>
> Recently we've had differing directions **about what chain to follow for Western Alliance Bank (Magerick) and how to use Cymbidium.**
>
> I don't need to be a party for the initial discussions as we are asking for very clear instructions for our internal Asset management team which should come down to a simple spreadsheet with the assignee/assignor chains. In addition, we want confirmation [Western Alliance] will accept the transfer as we've been getting push back from them. [Emphasis added.]

85.    The lack of any documentation transferring the AHP Trusts' assets to Magerick confused even Oak Harbor's CFO Michael Basile ("Basile"), who emailed Weinstein on November 21, 2022:

> For the AHP deal...I see that AHP is repurchasing this asset from Cymbidium Trust. Where is the agreement where another entity (I assume Magerick) purchased a participation from Cymbidium Trust...who is now selling that participation back to Cymbidium Trust? This also means that Magerick would be entitled to the proceeds.
>
> For the Magerick sale to Scottsdale, REI....where is the agreement that Magerick purchased these accounts from anyone? If Scottsdale is purchasing from Magerick, we need the agreements where Magerick purchased the loans from AHP (and/or related agreements involving

Cymbidium Trust, if applicable)

86.     Defendants Weinstein, Magerick, Land Home, Atlantica, Waite and Western Alliance have taken possession of the stolen Mortgage Loans and the Mortgage Loan Proceeds and, as set forth herein, have pledged the same as collateral to various lenders, including Western Alliance and Banner, and continue to collect the Mortgage Loan Proceeds to continue the scheme descried herein.

## C.     THE BAILEE LETTERS TO WESTERN ALLIANCE

87.     Western Alliance as custodian, also known as a bailee, was entrusted with temporary possession, but neither ownership of nor a security interest in the Mortgage Files.

88.     The Bailee Letter Agreements, one in which 2015A+ is the Seller and the other in which AHP Servicing Trust is the Seller, dated November 4, 2022, state, "The Bailee [Western Alliance] **will act only in accordance with Seller's written instructions until the Bailee receives from the Seller a copy of the Release substantially in the form attached hereto as <u>Exhibit B</u> (the "Release")**." [Emphasis added.] The Bailee Letter Agreements were utilized pursuant to the MLSARO, which provided that the "Seller shall deliver and release to the Purchaser's [Cymbidium's] custodian [Western Alliance], the following documents[.]"

89.     Although the AHP Trusts delivered the Mortgage Loans to Western Alliance as Cymbidium's custodian, the Bailee letter was never fully executed, and the AHP Trusts never provided any releases to Western Alliance.

90.     On December 6, 2022, the AHP Trusts sent a **"BAILEE LETTER"** to Western Alliance, the subject being "Shipment of collateral files per schedule B1 & B2" stating, "Please be advised that 73 Collateral files are being forwarded via UPS 2nd day **to the above-mentioned custodian [Western Alliance] pursuant to loan agreement**." [Emphasis added.]

91.    On December 8, 2022, the AHP Trusts sent a **"BAILEE LETTER"** to Western Alliance, the subject being "Shipment of collateral files per schedule B1 & B2" stating, "Please be advised that 68 Collateral files are being forwarded via UPS ground **to the above-mentioned custodian [Western Alliance] pursuant to loan agreement**." [Emphasis added.]

92.    On December 9, 2022, the AHP Trusts sent a **"BAILEE LETTER"** to Western Alliance, the subject being "Shipment of collateral files per schedule B1 & B2" stating, "Please be advised that 100 Collateral files are being forwarded via UPS ground **to the above-mentioned custodian [Western Alliance] pursuant to loan agreement**." [Emphasis added.]

93.    On December 13, 2022, the AHP Trusts sent a **"BAILEE LETTER"** to Western Alliance, the subject being "Shipment of collateral files per schedule B1 & B2" stating, "Please be advised that 97 Collateral files are being forwarded via UPS ground **to the above-mentioned custodian [Western Alliance] pursuant to loan agreement**." [Emphasis added.]

94.    On December 14, 2022, the AHP Trusts sent a **"BAILEE LETTER"** to Western Alliance, the subject being "Shipment of collateral files per schedule B1 & B2" stating, "Please be advised that 71 Collateral files are being forwarded via UPS ground **to the above-mentioned custodian [Western Alliance] pursuant to loan agreement**." [Emphasis added.]

95.    On December 16, 2022, the AHP Trusts sent a **"BAILEE LETTER"** to Western Alliance, the subject being "Shipment of collateral files per schedule B1 & B2" stating, "Please be advised that 97 Collateral files are being forwarded via UPS ground **to the above-mentioned custodian [Western Alliance] pursuant to loan agreement**." [Emphasis added.]

96.    Western Alliance did not respond to any of the above letters in which the AHP Trusts delivered the collateral files to Western Alliance as Cymbidium's custodian. As set forth below, Western Alliance exceeded its role as custodian, misappropriated the

Mortgage Loans as collateral and directed Magerick and its affiliates in the creation of documentation designed to conceal the theft of the AHP Trusts' Mortgage Loans.

97.    On November 27, 2023, the AHP Trusts' counsel sent a letter to Adam Yeazel, Mortgage Warehouse Operations Manager – Note Finance, at Western Alliance stating: "AHP [Trusts] therefore requests that the collateral files be returned to AHP [Trusts]." Despite the Bailee Letter Agreements requiring that Western Alliance "**will act only in accordance with Seller's written instructions**," Western Alliance did not return the Mortgage Loan Files. [Emphasis added.]

98.    On February 13, 2024, Newbery wrote to Kenneth Vecchione, President & Chief Executive Officer of Western Alliance ("Vecchione") and advised that,

> based on the attached pleadings and Magerick's lack of authority to pledge AHP's assets as collateral, all collateral files must be returned to AHP." Despite the Bailee Letter Agreements requiring that Western Alliance "**will act only in accordance with Seller's written instructions**," Western Alliance did not return the Mortgage Loan Files. [Emphasis added.]

99.    On September 4, 2024, Kamphausen wrote to Glenn Smith ("Smith") at Western Alliance, stating:

> [T]o date, Western Alliance Bank has not returned the files to [the AHP Trusts] and continues to hold [the AHP Trusts'] files without authorization. Within two days, please ship the two requested files to the attention of Kaleena Ogo at Richmond Monroe Group, 82 Jim Linegar Lane, Branson West, MO 65737 and provide us with the tracking information. Further, within five business days, please ship all other [AHP Trusts'] files to my attention at AHP Servicing, 440 S. LaSalle Street, Suite 1110, Chicago IL 60605.

Despite the Bailee Letter Agreements requiring that Western Alliance "**will act only in accordance with Seller's written instructions**," Western Alliance did not return the Mortgage Loan Files." [Emphasis added.]

### D.   THE LIMITED POWER OF ATTORNEYS AND THEIR USE TO FRAUDULENTLY TRANSFER AND PLEDGE THE AHP TRUSTS' MORTAGE LOANS

100.   On April 19, 2023, AHP Capital executed a limited power of attorney on behalf of U.S. Bank Trust N.A. as Trustee of American Homeowner Preservation Series 2015A+, appointing Oak Harbor as attorney-in-fact to carry out tasks associated with Oak Harbor's responsibilities to manage mortgage loans and REO properties owned by the 2015A+ Trust ("2015A+/Oak Harbor LPOA").

101.   The 2015A+/Oak Harbor LPOA was executed and clearly stated was "in connection with OHC's [Oak Harbor Capital] responsibilities to manage mortgage loans and REO properties **owned** by **Principal [the 2015A+ Trust]**." [Emphasis added.]

102.   The 2015A+/Oak Harbor LPOA was presented to the 2015A+ Trust for execution on April 19, 2023, further representing the fact that the 2015A+ Trust was the owner of the Mortgage Loans, the "Principal" subject to Cymbidium's security interest.

103.   The 2015A+/Oak Harbor LPOA was to be utilized for the sole purpose of executing "in connection with OHC's responsibilities to manage mortgage loans and REO properties owned by Principal [the 2015A+ Trust]" including executing assignments of mortgage but only in connection with repurchases or "upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof."

104.   The Amendment stated that the "[T]he Purchaser will exercise best efforts in good faith to maximize the recovery on the Mortgage Loans" and the perceived goal of Oak Harbor's management efforts was to help monetize the Mortgage Loans and use the proceeds to pay the Balance/Repurchase Price of the Cymbidium Loan. For its services on behalf of Cymbidium, Oak Harbor was to receive an annual management fee of 1.75% of the outstanding balance of the Cymbidium Loan.

105.   Oak Harbor, an affiliate and manager of Magerick, Atlantica, and Cymbidium, was at all times fully aware of the AHP Trusts' contractual right to the unencumbered return of the Mortgage Loans upon repayment of the Cymbidium Loan.

106.    Weinstein, a member of Oak Harbor Holdings, was a signatory to the MLSARO and Amendment and was therefore knowledgeable of the contractual obligations bestowed upon Cymbidium to return the Mortgage Loans upon repayment of the Cymbidium Loan.

107.    The 2015A+/Oak Harbor LPOA did not grant Oak Harbor the right to sell or transfer mortgage loans to anyone, including to its affiliated entities, Magerick and Atlantica.

108.    The 2015A+/Oak Harbor LPOA did not grant Oak Harbor the right to sell or transfer mortgage loans for any amounts, including but not limited to, for no or less than market-value consideration.

109.    The 2015A+/Oak Harbor LPOA did not grant Oak Harbor the right to transfer or assign any of the Mortgage Loans to any lender as collateral or otherwise.

110.    On April 19, 2023, AHP Capital executed a limited power of attorney on behalf of U.S. Bank Trust N.A. as Trustee of American Homeowner Preservation Series AHP Servicing, appointing Oak Harbor as attorney-in-fact to carry out tasks associated with Oak Harbor's responsibilities to manage mortgage loans and REO properties owned by AHP Servicing Trust. ("AHP Servicing/Oak Harbor LPOA").

111.    The AHP Servicing/Oak Harbor LPOA was executed and clearly stated was "in connection with OHC's [Oak Harbor Capital] responsibilities to manage mortgage loans and REO properties **owned** by **Principal [the AHP Servicing Trust]**." [Emphasis added.]

112.    The AHP Servicing/Oak Harbor LPOA was presented to the AHP Servicing Trust for execution on April 19, 2023, further representing that the AHP Servicing Trust was the owner of the Mortgage Loans, the "Principal" subject to Cymbidium's security interest.

113.    The AHP Servicing/Oak Harbor LPOA was to be utilized "in connection with OHC's responsibilities to manage mortgage loans and REO properties owned by Principal [the AHP Servicing Trust]" including executing assignments of mortgage but

only in connection with repurchases or "upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof."

114.   The AHP Servicing/Oak Harbor LPOA did not grant Oak Harbor the right to sell or transfer the Mortgage Loans to anyone, including to its affiliated entities.

115.   The AHP Servicing/Oak Harbor LPOA did not grant Oak Harbor the right to transfer the Mortgage Loans for any amounts, including but not limited to, for no or less than market-value consideration.

116.   The AHP Servicing/Oak Harbor LPOA did not grant Oak Harbor or any entity the right to transfer or assign the Mortgage Loans to any Lender as collateral for any loan.

117.   In spite of the limitations on powers granted by the 2015A+/Oak Harbor LPOA and AHP Servicing/Oak Harbor LPOA (collectively "Oak Harbor LPOAs"), those LPOAs were used ostensibly to transfer hundreds of the AHP Trusts' Mortgage Loans.

118.   On September 20, 2022, American Homeowner Preservation LLC executed a limited power of attorney appointing Atlantica, LLC as attorney-in-fact ("Atlantica LPOA") as part of a separate August 2022 transaction between the AHP Trusts and Cymbidium ("AHP, LLC Transaction").

119.   The terms of AHP, LLC Transaction had been satisfied and had no direct relation to the MLSARO, Amendment or Mortgage Loans.

120.   The Atlantica LPOA pre-dated the MLSARO and was never intended to be utilized to facilitate the terms of MLSARO or relate in any way to the Mortgage Loans or the Cymbidium Loan.

121.   The Atlantica LPOA was to be utilized for the sole purpose of executing any and all documents relating to the creation and recording of assignments of mortgage, the endorsement of Notes or creation of appropriate allonges, listings for sale, execution of contracts of sale, closing of contracts for sale, or any and all other actions relating to

the disposition of real estate or real estate-backed assets owned by American Homeowner Preservation LLC, not the AHP Trusts.

122. American Homeowner Preservation LLC had no authority to and did not authorize Atlantica to take any action regarding AHP Trusts' Mortgage Loans.

123. The Atlantica LPOA was drafted by Weinstein & Riley, a law firm controlled by Weinstein.

124. The Atlantica LPOA did not authorize the transfer of any of the AHP Trusts' Mortgage Loans. As noted by Oak Harbor's Transaction Asset Manager Jamie Moring in an email to AHP Trusts' Kamphausen on December 12, 2022:

> The [Atlantica] POA we have currently has American Homeowner Preservation granting POA, and does not involve U.S. Bank National Association. For this population, the POA needs to include U.S. Bank Trust.

125. Despite the limitations on powers granted by the Atlantica LPOA and the lack of any nexus of the Atlantica LPOA to the MLSARO and Amendment, the Atlantica LPOA was used ostensibly to transfer the Mortgage Loans to Magerick, Cymbidium and to Atlantica for little to no consideration.

126. On October 23, 2023, Newbery, as manager of AHP Capital upon discovery that the Oak Harbor and Atlantica LPOAs were being abused, revoked all Powers of Attorney (including, but not limited to, the Oak Harbor and Atlantica LPOAs) between the AHP Trusts and any Oak Harbor Entities, including Atlantica, by correspondence to Weinstein, authorized representative of Oak Harbor, Magerick, Atlantica and Cymbidium.

127. On November 7, 2023, Newbery, as manager of AHP Capital executed a Notice of Revocation of the 2015A+/Oak Harbor LPOA.

128. On November 7, 2023, Jorge Newbery, as manager of AHP Capital, executed a Notice of Revocation of the AHP Servicing/Oak Harbor LPOA.

129. On December 8, 2023, Jorge Newbery, as manager of AHP, LLC executed a Notice of Revocation of the Atlantica LPOA.

X:\D\788-01\Pleadings\MASTER Complaint FINAL.docx

130.   Through at least December 2023, including after revocation of the LPOAs, Oak Harbor, at the direction of and/or for the benefit of it and Cymbidium, Magerick, Weinstein, Western Alliance, and Land Home continued to use LPOAs to transfer the Mortgage Loans from the AHP Trusts to affiliates of Oak Harbor, including Magerick, for no or less than market-value consideration in violation of the limited powers granted to them under the then revoked LPOAs.

131.   Oak Harbor, in spite of the revocations, utilized the Oak Habor LPOAs to sign documents on October 25, 2023 to close the REO sale of 1176 Dials Branch in Hardy, Kentucky; on October 27, 2023 to close the REO sale of 908 S. Farmersville St in Ruston, Louisiana; on October 31, 2023 to close the REO sale of 716 W. Silver Springs Place in Ocala, Florida; and on October 31, 2023 to close the REO sale of 424 N. Hollis in Hollis, Oklahoma. Each of these REOs were owned by the AHP Trusts. In each instance, based on information and belief, Oak Harbor directed that the seller proceeds be wired to bank accounts held at Western Alliance and belonging to Magerick or Weinstein & Riley, P.S. Trust.

132.   Weinstein & Riley's Richard Crommett inquired of Weinstein via email on October 27, 2023:

"I wanted to know if we could still sign for the two AHP entities below as attorney in fact. U.S. BANK TRUST, N.A., AS TRUSTEE OF AMERICAN HOMEOWNER PRESERVATION TRUST SERIES 2015A+ & U.S. BANK TRUST N.A., AS TRUSTEE OF AMERICAN HOMEOWNER PRESERVATION TRUST SERIES AHP SERVICING."

Weinstein responded:

"Yes. I will make sure that Jorge confirms this fact," and copied Newbery, who did not confirm.

133.   Through at least January 2024, including after revocation of the LPOAs, Atlantica, at the direction of and/or for the benefit of it, Cymbidium, Oak Harbor, Magerick, Weinstein, Western Alliance, and Land Home, continued to use the LPOAs granted to it to transfer the AHP Trusts' Mortgage Loans out of the AHP Trusts and into

Magerick, Atlantica and other affiliates of Oak Harbor, as well as Western Alliance, for no, or less than market-value consideration, in violation of the limited powers granted to it under its now revoked LPOA.

134.   Oak Harbor and Atlantica continue to transfer certain of the AHP Trusts' Mortgage Loans to its affiliates, primarily Magerick, for no or below-market-value consideration in furtherance of the scheme described herein.

135.   Since Western Alliance refused Oak Harbor and Magerick's request to hold the loans in the name of Cymbidium, the entities controlled by Oak Harbor and Land Home effectuated a scheme to transfer all Mortgage Loans out of the AHP Trusts and into Magerick to collateralize the Western Alliance/Magerick Loan.

136.   Oak Harbor, Atlantica, Magerick, Cymbidium, Weinstein, Land Home and Western Alliance have consequently stolen the Mortgage Loans and the Mortgage Loan Proceeds through their transfer of the Mortgage Loans and Mortgage Loan proceeds to Magerick.

137.   The manager of Magerick is Oak Harbor and a substantial investor in Magerick is Land Home.

**E.    THE AHP TRUSTS PAID OFF THE CYMBIDIUM LOAN BUT CYMBIDIUM REFUSED TO RETURN THE MORTGAGE LOANS AND EXCESS MORTGAGE LOAN PROCEEDS**

138.   Cymbidium, through Oak Harbor and Weinstein claims that the Cymbidium Loan has not been satisfied in spite of collections exceeding the Repurchase Price and the transfer of approximately $60 Million in Mortgage Loans to itself and its affiliates.

139.   Cymbidium's baseless assertions about a lack of repayment are its only option because its pledging, double-pledging, and transfer of the Mortgage Loans makes it impossible for Cymbidium to return the Mortgage Loans to the AHP Trusts.

140.   In October 2023, the AHP Trusts communicated to Oak Harbor, Cymbidium and Magerick, via Weinstein, that the Repurchase Price had been paid in full and the Cymbidium Loan satisfied:

> a.   On October 30, 2023, Newbery emailed Weinstein: "AHP has more than fully repaid/satisfied the loan/repurchase transaction and we need Cymbidium to return our unsold assets and excess cash."
> b.   On October 31, 2023, Newbery emailed Weinstein: "I want to follow the agreements so that we both get what was agreed to, nothing more and nothing less. However, the inability or unwillingness to provide a proper accounting is a barrier to any resolution."

141.   Upon the repayment of the Repurchase Price/Payoff of the Cymbidium Loan, the AHP Trusts were entitled and remain entitled to the return of the Mortgage Loans and excess Mortgage Loan Proceeds currently being collected by Land Home and being disbursed to Magerick, Western Alliance, Oak Harbor and Weinstein.

142.   Newbery requested that an accounting be performed and offered to pay for an independent auditor to perform an accounting, but Weinstein refused and continues to refuse.

143.   Instead of performing an accounting to determine the amounts payable under the Cymbidium Loan and resolve the dispute, on November 17, 2023, Cymbidium filed a lawsuit in the Superior Court of King County Washington, alleging conversion and breach of contract against the AHP Trusts arising from the MLSARO and Amendment ("Washington Lawsuit").

144.   Shortly thereafter, on December 8, 2023, Weinstein via Teams Meeting with Newbery, stated he would "bury [AHP Trusts] in litigation and incinerate [AHP Trusts]."

145.   Since making the statement on December 8, 2023, Cymbidium and/or Magerick filed nineteen lawsuits against the AHP Trusts in nineteen (19) different venues in the United States.

1    146.   The Washington Lawsuit was transferred to the U.S. District Court for the
2    Western District of Washington at Case No. 24-cv-25.

3    147.   The actions alleged by Cymbidium in the Washington Lawsuit presuppose
4    that the terms of the MLSARO and First Amendment were and are enforceable, since
5    the MLSARO and First Amendment require that the Mortgage Loans be returned to the
6    Trusts.

7    148.   Cymbidium did not and could not return the Mortgage Loans because the
8    Mortgage Loans were fraudulently transferred to Magerick, Atlantica and others by Oak
9    Harbor and Atlantica through the misuse of the LPOAs.

10   149.   Cymbidium did not and could not return the Mortgage Loans because the
11   Mortgage Loans were fraudulently assigned to Western Alliance by Magerick.

12   150.   Cymbidium did not and could not return the Mortgage Loans because
13   certain of the Mortgage Loans had been pledged to Banner by Weinstein, in furtherance
14   of the Bank Fraud Scheme set forth herein.

15   151.   Cymbidium did not and could not return the Mortgage Loans because
16   certain of the Mortgage Loans had been pledged to Western Alliance by Magerick, in
17   furtherance of the Bank Fraud Scheme set forth herein.

18   152.   Cymbidium did not and could not return the Mortgage Loans because
19   certain of the Mortgage Loans had been sold to third parties and those sales were hidden
20   from the AHP Trusts.

21   153.   When Western Alliance was made aware of the dispute, it ignored the alerts
22   by the AHP Trusts that the pledged Mortgage Loans were not owned by Magerick, which
23   had no rights to the Mortgage Loans.

24   154.   After Western Alliance was made aware of the dispute, it agreed to multiple
25   extensions of the maturity of the Western Alliance/Magerick Loan *infra* to Magerick
26   with certain of AHP Trusts' Mortgage Loans as collateral.

27
28

1

**F.    THE BANK FRAUD SCHEME**

2

155.   On October 6, 2022, the Mortgage Loans were pledged as collateral by

3

Magerick as security for the Western Alliance/Magerick Loan.

4

156.   The Mortgage Loans therefore were pledged as collateral for the Western

5

Alliance/Magerick Loan prior to any effective agreement between Cymbidium and the

6

AHP Trusts gave Cymbidium (not Magerick) any rights in the Mortgage Loans.

7

157.   Prior to the execution of the MLSARO, Weinstein, Cymbidium, Magerick,

8

Atlantica and Oak Harbor plotted, planned, and schemed to target the AHP Trusts and

9

use the AHP Trusts' Mortgage Loans to secure loans from third parties, including

10

Western Alliance, despite the terms of the MLSARO and the AHP Trusts' right to the

11

return of the Mortgage Loans upon payoff of the Cymbidium Loan.

12

158.   On September 22, 2022, prior to the execution of the Cymbidium Loan,

13

Weinstein emailed associate Cliff Ponte ("Ponte"), "This file is going to end up being a

14

big loss for [the AHP Trusts] and I think [they have] real problems going forward."

15

159.   Magerick did not own the Mortgage Loans on October 6, 2022, nor did it

16

have any contractual or other rights therein. Cymbidium was a party to the MLSARO,

17

not Magerick.

18

160.   The Mortgage Loans had not been transferred via deed, assignment, or

19

allonge, from the AHP Trusts to Cymbidium or Magerick, nor could they be, at the time

20

they were pledged as collateral for the Western Alliance Loan.

21

161.   Magerick pledged the Mortgage Loans as collateral to Western Alliance on

22

or before October 6, 2022, prior to the October 7, 2022 Effective Date of the MLSARO.

23

162.   Weinstein, Magerick, and Oak Harbor represented to Western Alliance,

24

through interstate wires, that Magerick was the owner of the Mortgage Loans when the

25

AHP Trusts were the owners of the Mortgage Loans and possessed a contractual right to

26

the return of the Mortgage Loans which were pledged as security for the Cymbidium

27

Loan.

28

163.    On November 27, 2023, the AHP Trusts' counsel wrote to Western Alliance explaining and demanding:

> [The AHP Trusts'] accounting shows that its $19,750,000 obligation was satisfied in full in September 2023. However, there is currently a dispute between [the AHP Trusts] and Cymbidium, Oak Harbor (and their affiliates) over what [the AHP Trusts claim] is its satisfaction of the obligations under the amendment. [The AHP Trusts have] also called into question the adherence by Cymbidium to its contractual obligation to refrain from the transfer of assets to affiliated entities and Cymbidium (and its affiliates) enlisting related third parties for services for which hundreds of thousands have been invoiced to the detriment of [the AHP Trusts].
>
> [The AHP Trusts] revoked all powers of attorney to Oak Harbor Capital and its affiliates based on the satisfaction of [the AHP Trusts] obligation. Also, [the AHP Trusts] identified potential Power of Attorney abuse by Oak Harbor in which the POAs have been utilized for powers unauthorized, including the conveyance of assets to affiliated parties without consideration. One of those affiliates, for which [the AHP Trusts] has learned acquired a number of assets for no consideration, is Magerick LLC, which we understand pledged assets to [Western Alliance].
>
> The transaction documents dictate that the excess cash and remaining assets are to be returned to [the AHP Trusts] once the obligation is fulfilled. To date, Cymbidium Restoration Trust has refused. [The AHP Trusts] position is it is owed assets [Mortgage Loans] with collateral files being held by [Western Alliance]. [The AHP Trusts] therefore requests that the collateral files be returned to [the AHP Trusts].

164.    On November 27, 2023, Western Alliance's Smith responded to the AHP Trusts' counsel:

> Internally, we have started discussing the issues you sent in your letter. Tomorrow, I have set up an internal meeting with all the [Western Alliance] vested parties to discuss with [Western Alliance] legal. We anticipate making the Thursday meeting proposal in your letter and we will confirm Tuesday or Wednesday…

165.   Smith never followed up with AHP Trusts' counsel and no meeting was ever scheduled. Western Alliance has continued to refuse to return the AHP Trusts' Mortgage Loan Files.

166.   Two weeks after being made aware of the abuse of the LPOAs by the AHP Trusts' counsel, Smith identified multiple transfers of the same Mortgage Loans. In a December 15, 2023, email, Smith alerted Weinstein:

> [Western Alliance] requires evidence of the chaining for Allonges and Assignments from where our customer purchased the loans down to [Western Alliance]/Blank. There can only be one standard allonge chain from AHP [the AHP Trusts] to the buying entity to [Western Alliance]/Blank, what should we expect to see. Currently we have three different chaining situations from AHP [the AHP Trusts]
>
> 1.  AHP[the AHP Trusts] to Atlantica
> 2.  AHP [the AHP Trusts] to Cymbidium
> 3.  AHP [the AHP Trusts] to Magerick.
>
> Which one is correct, as they all can't be valid. Thanks.
>
> O'Reilly
> 1. Allonge AHP to Atlantica – Signed by Oak Harbor
> 2. Allonge Atlantica to Magerick – Signed by Oak Harbor
> 3. Allonge from Atlantica to Magerick – Signed by Oak Harbor (Duplicate of above)
> 4. Allonge Magerick to blank – Signed by Oak Harbor
> In Summary: AHP to Atlantica to Magerick to Blank
>
> Moreno
> 1. Allonge AHP to Cymbidium – Signed by Oak Harbor
> 2. Allonge Cymbidium to Magerick – Signed by Oak Harbor
> 3. Allonge Magerick to blank – Signed by Oak Harbor
> 4. Allonge Magerick to blank – Signed by Oak Harbor (Duplicate of above)
> 5. Allonge Magerick to blank – Signed by Oak Harbor (Duplicate of above)
> In Summary: AHP to Cymbidium to Magerick to Blank (three times)
>
> Arosemena
> Allonge AHP to Magerick – Signed by Oak Harbor

Allonge Magerick to blank – Signed by Oak Harbor
In Summary: AHP to Magerick to Blank

167.    Despite the October 23, 2023 revocation of the LPOAs, in December 2023 and continuing thereafter, and after Western Alliance was aware of the AHP Trusts' ownership of the Mortgage Loans and the varying chains of alleged assignments and allonges, Oak Harbor and Atlantica continued to use the revoked LPOAs to execute documents at the request and direction of Western Alliance.

168.    On January 2, 2024, Smith wrote to Weinstein, copying others at Western Alliance and Oak Harbor requesting and explaining:

> Attached is a list of all loans pledged to borrowing base and their collateral status.  Aaron has reviewed all the collateral we have received to date.  Currently, the attached is filtered to show the 67 loans with missing collateral. Also below, is that missing collateral list of 67 loans . . .

169.    Sixty-four (64) of the sixty-seven (67) loans were the AHP Trusts' Mortgage Loans pledged to Cymbidium as collateral for the Cymbidium Loan.

170.    Smith's January 2, 2024, email contained a category, "[A]ssignment from Seller to Magerick." Seller, the AHP Trusts, had not executed these assignments to Magerick as Magerick was not a party to the MLSARO or the Cymbidium Loan. Any assignments to Magerick resulting from misuse of abused and revoked LPOAs were executed fraudulently by Oak Harbor or Atlantica. Western Alliance was aware of every action being taken and propagated those assignments.

171.    The vast majority of the "Assignment from Seller to Magerick" and "Assignment to [Western Alliance] or Blank" in Smith's January 2, 2024 email were "missing" and Western Alliance requested Oak Harbor clear these issues.  Further, Smith had granted exceptions to 62 loans which lacked sufficient title information.

172.    Weinstein responded on January 2, 2024,

> I agree that we should focus on the low-hanging fruit.  I also note that most of the remaining issues center on 'Assignment from Seller to Magerick,' 'Assignment to [Western Alliance] or Blank,' 'Allonge to Magerick' or

'Allonge to [Western Alliance] or Blank.'… **"We should be able to prepare these and clear them."** [Emphasis added].

173.  On January 25, 2024, David Hartsell ("Hartsell") of Oak Harbor, wrote to Aaron Maciel ("Maciel") at Western Alliance amongst others stating "[A]ttached is a shipping label and manifest for an incoming shipment or eight loans to cleared."

174.  In January 2024, Weinstein, Oak Harbor, Magerick, and Atlantica were preparing assignments with the direction and guidance of Western Alliance and clearing assignment and transfer documents that would have had to occur in 2022 to be effective and support the Magerick/Western Alliance Loan.

175.  On February 13, 2024, Newbery wrote a letter, sent via overnight service and an email with the subject line of "AHP assets pledged by Magerick without authority" to Vecchione, Chief Executive Officer at Western Alliance, with a copy to Dale Gibbons, Chief Financial Officer; Timothy Boothe, Chief Administration Officer; Lynne Herndon, Chief Credit Officer; Tim Bruckner, Chief Banking Officer;  Barbara Kennedy, Chief Human Resources Officer; Jessica Jarvi, Chief Legal Officer; Emily Nachlas, Chief Risk Officer; as well as Smith, Note Finance Operations Manager, and Kevin Chai ("Chai"), Vice President, Note Finance. The letter stated that.

> [H]undreds of mortgage loans and real estate properties totaling tens of millions of dollars appear to have been pledged as collateral to Western Alliance Bank by Magerick, LLC. However, Magerick did not own the majority of these assets and had no authority to pledge the assets.

This put Western Alliance's entire executive management team on notice of the ongoing fraud.

176.  Within 20 minutes of Newbery's February 13, 2024, e-mail, Chai forwarded the email to others employed by Western Alliance: David Bernard ("Bernard"), Senior Managing Director, Commercial Banking; Richie Walia, Senior Vice President, Mortgage Warehouse Operations Director; Josh Ormiston; Steve Curley ("Curley"), Chief Banking Officer, Western Alliance Bancorp; Lisa Alberti, Senior Vice President, Note Finance and Global Markets; and Smith explaining:

I wanted to make you aware of the following email that got sent to the executive team by AHP [Trusts]. This is in relation to the ongoing dispute between AHP and Oak Harbor (Magerick) in relation to certain collateral loans that are pledged to [Western Alliance's] line. Glenn and I have been copied on these emails somewhat regularly.

177.   In response, Bernard wrote to Weinstein on February 13, 2024,

[H]ope things are well. Please see the email below and the letter attached, which appears to be an escalation by AHP. Upon review, would appreciate an update on behalf of Magerick. Your written response, on company letterhead and executed would be helpful.

178.   In response, on February 13, 2024, Weinstein stated:

Hmm. I am including this email to Brad Keller, our outside attorney, to see who between us should respond to you. We have a variety of legal actions and motions pending against Jorge (who I note sent this letter personally instead of through his attorney), including a motion for a preliminary injunction. We have secured sufficient collateral from the AHP transaction and other Magerick purchases to make certain Western Alliance is fully secured. However, Jorge continues to send out shrill and inaccurate letters daily to many different people. We'll be back to you shortly, but in our view nothing substantively has changed.

179.   As of November 2023, if not earlier, Western Alliance was aware that Magerick was not the true owner of the Mortgage Loans and that the same had been illegally transferred by Oak Harbor and Atlantica to Magerick through abused and revoked LPOAs as well as a collection of inconsistent paperwork.

180.   The Bailee letters delivered to Western Alliance along with the Mortgage Loan Files made clear that the Mortgage Loans Files were being delivered to Western Alliance as the "custodian." Despite the same, Western Alliance misappropriated those Mortgage Loans Files, allowed Magerick to use the Mortgage Loans as collateral and continues to refuse to return them to their legal and rightful owners, the AHP Trusts.

181.   The releases were never delivered to Western Alliance as required by the Bailee letters, which was a prerequisite to Western Alliance taking any action with the AHP Trusts' Mortgage Loans, absent the AHP Trusts' direction.

182.   Western Alliance, was, at all times relevant hereto, aware that the AHP Trusts were the owners of the Mortgage Loans, not Magerick and, despite the same, directed Magerick, Oak Harbor, Cymbidium, Atlantica and Land Home in creating the paperwork to attempt to document the fraudulent transfers and fraudulent use of the AHP Trusts' Mortgage Loans as collateral for the Magerick/Western Alliance Loan.

183.   Western Alliance continues to retain the Mortgage Loan Files and refuses to return the Mortgage Loan Files and continues to receive Mortgage Loan Proceeds generated therefrom and apply those Mortgage Loan Proceeds to the debts of Magerick, despite the AHP Trusts' ownership thereof and Western Alliance's knowledge of the same, in furtherance of the scheme described herein.

184.   In spite of Cymbidium and its affiliates not holding title to the Mortgage Loans, and the limitations placed on Cymbidium and its affiliates' servicing and transfer of the Mortgage Loans, including the AHP Trusts' right to the return of the Mortgage Loans upon repayment of the Cymbidium Loan, Cymbidium, Oak Harbor, Atlantica, Magerick, Weinstein, Waite, Western Alliance, WWR Management, and Land Home intentionally omitted vital information from the AHP Trusts, converted Mortgage Loans and Mortgage Loan Proceeds belonging to the AHP Trusts for their own use, and have repeatedly refused to provide an accounting.

185.   As a result of Cymbidium, Oak Harbor, Atlantica, Magerick, WWR Management, Weinstein, Western Alliance and Land Home's misrepresentations and concealments of the true amounts of the credits and expenses to be applied to the Cymbidium Loan, the AHP Trusts have been forced into extensive litigation to resolve the same.

1

## G.    THE WESTERN ALLIANCE/MAGERICK LOAN FRAUD

2

3

4

186.    Magerick misrepresented its interest in the Mortgage Loans on six amendments to the original Restated Loan and Security Agreement to maintain its source of funding from Western Alliance.

5

6

7

8

187.    To safeguard the collateral and repayment of the principal amount of the Western Alliance/Magerick Loan, Western Alliance, with knowledge of the falsity of the representations made by Magerick, executed six loan modifications to perpetuate the continuing scheme to steal the Mortgage Loans.

9

10

11

12

13

188.    On June 23, 2021, Atlantica entered into a Restated Loan and Security Agreement with Western Alliance in the original principal amount of $20 Million. The Amended Loan and Security Agreement is subject to a Borrowing Base, which allowed Atlantica to borrow up to a certain percentage of its pledged assets, namely mortgage loans.

14

15

189.    The Atlantica Revolving Line of Credit required Atlantica to make "Special Representations Concerning Collateral" including:

16

17

18

19

20

21

(a) <u>Ownership</u>. Borrower is the legal and equitable owner and holder, free and clear of all Liens, of the Pledged Mortgages.  All Pledged Mortgages have been and will continue to be validly pledged or assigned to the Lender, subject to no other Liens.; (b) <u>Perfection:</u> Lender has and will at all times have a valid, enforceable and perfected first priority security interest in each Pledged Mortgage and all Collateral relating thereto.; and (c) <u>Borrower's Authority.</u> Borrower has, and will continue to have, the full right, power and authority to pledge the Collateral pledged and to be pledged by it hereunder.

22

23

24

25

26

27

190.    On November 30, 2021, the Amended and Restated Loan Agreement was modified to allow Magerick to become the Borrower and Atlantica to be become a guarantor along with Land Home, which was required to maintain a tangible net worth of $20 Million.  Additionally, the loan amount was increased to $40 Million.  Weinstein remained a guarantor with and was required to maintain a minimum tangible net worth of $30 Million.  The loan became the Western Alliance/Magerick Loan.

28

191.   On May 9, 2022, Magerick and Western Alliance modified the Western Alliance/Magerick Loan and entered into the Second Loan Modification Agreement to extend the maturity date of the Western Alliance/Magerick Loan to July 20, 2022.  The Second Loan Modification Agreement was signed by Weinstein, as authorized representative.  Land Home, Atlantica and Weinstein, as guarantors, all consented to the Second Loan Modification Agreement.

192.   On July 20, 2022, Magerick and Western Alliance modified the Western Alliance/Magerick Loan to remove Atlantica as a guarantor and extend the maturity date until November 2022**.**   Land Home and Weinstein remained guarantors of the Western Alliance/Magerick Loan and consented to the modification thereof.

193.   On November 15, 2022, Magerick and Western Alliance executed the Fourth Loan Modification Agreement to, "among other things, increase the Commitment amount . . . to Sixty-Five Million and 00/100 Dollars ($65,000,000.00) on a bulge basis."

194.   Pursuant to the Fourth Loan Modification Agreement*,* Magerick acknowledged and agreed that,

> (b) Neither the execution and delivery of this Agreement by Borrower [Magerick], nor consummation by Borrower[Magerick] of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower [Magerick], or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower [Magerick] is a party, by which Borrower [Magerick] is bound or to which any of Borrower's [Magerick] property or assets is subject.
>
> (d) Borrower [Magerick] hereby reaffirms and confirms that the representations and warranties of Borrower contained in the Loan Documents are true, correct and complete in all respects as of the date of his Agreement.
>
> (e) Borrower [Magerick] is in full and complete compliance with the terms, covenants, provisions and conditions of the Loan Agreement, the Note, the Guaranty and the other Loan Documents to which it is a party.
>
> All covenants, representations and warranties of Borrower herein are incorporated by reference and hereby made part of the Loan Agreement.

195.   The Fourth Loan Modification Agreement required Magerick to confirm and reaffirm "Special Representations Concerning Collateral" including:

(a) <u>Ownership.</u> Borrower [Magerick] is the legal and equitable owner and holder, free and clear of all Liens, of the Pledged Mortgages.  All Pledged Mortgages have been and will continue to be validly pledged or assigned to the Lender, subject to no other Liens.; (b) <u>Perfection:</u> Lender has and will at all times have a valid, enforceable and perfected first priority security interest in each Pledged Mortgage and all Collateral relating thereto.; and (c) Borrower's [Magerick' s] Authority. Borrower has, and will continue to have, the full right, power and authority to pledge the Collateral pledged and to be pledged by it hereunder.

196.   On November 15, 2022, when Magerick executed the Fourth Loan Modification Agreement with Western Alliance, it was not the owner or holder of the AHP Trusts' Mortgage Loans which Magerick had fraudulently pledged to Western Alliance as Pledged Mortgages.

197.   On November 15, 2022, both Land Home and Weinstein consented to the Fourth Loan Modification Agreement.  Weinstein represented that he was not aware of anything that would disprove the recital that, "[Western Alliance]'s security in the in the Collateral is first in priority" when he knew the same to be inaccurate.

198.   On February 7, 2023, Magerick and Western Alliance executed the Fifth Loan Modification Agreement to extend the bulge period, allowing Magerick to borrow up to $65 Million until April 14, 2023.

199.   Pursuant to the Fifth Loan Modification Agreement, Magerick acknowledged and agreed that:

(b) Neither the execution and delivery of this Agreement by Borrower [Magerick], nor consummation by Borrower [Magerick] of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower [Magerick], or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower [Magerick] is a party, by which Borrower [Magerick] is bound or to which any of Borrower's [Magerick' s] property or assets is subject.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(d) Borrower [Magerick] hereby reaffirms and confirms that the representations and warranties of Borrower [Magerick] contained in the Loan Documents are true, correct and complete in all respects as of the date of this Agreement.

(e) Borrower [Magerick] is in full and complete compliance with the terms, covenants, provisions and conditions of the Loan Agreement, the Note, the Guaranty and the other Loan Documents to which it is a party.

All covenants, representations and warranties of Borrower [Magerick] herein are incorporated by reference and hereby made part of the Loan Agreement.

200.   The Fifth Loan Modification Agreement required Magerick to confirm and reaffirm "Special Representations Concerning Collateral" including:

(a) Ownership. Borrower [Magerick] is the legal and equitable owner and holder, free and clear of all Liens, of the Pledged Mortgages.  All Pledged Mortgages have been and will continue to be validly pledged or assigned to the Lender, subject to no other Liens.; (b) Perfection. Lender has and will at all times have a valid, enforceable and perfected first priority security interest in each Pledged Mortgage and all Collateral relating thereto.; and (c) Borrower's [Magerick's] Authority. Borrower has, and will continue to have, the full right, power and authority to pledge the Collateral pledged and to be pledged by it hereunder.

201.   On February 7, 2023, when Magerick executed the Fifth Loan Modification Agreement with Western Alliance, it was not the owner or holder of the AHP Trusts' Mortgage Loans which Magerick had fraudulently pledged to Western Alliance as Pledged Mortgages.

202.   On February 7, 2023, both Land Home and Weinstein consented to the Fifth Loan Modification Agreement. Weinstein represented that he was not aware of anything that would disprove the recital that, "[Western Alliance]'s security in the in the Collateral is first in priority" when he knew the same to be inaccurate.

COMPLAINT

203.   On April 14, 2023, Magerick and Western Alliance executed a Sixth Loan Modification Agreement to modify the definition of the Borrowing Base, to extend the bulge period until May 14, 2023, and change the definition of the Principal Amount.

204.   Pursuant to the Sixth Loan Modification Agreement, Magerick acknowledged and agreed that:

(b) Neither the execution and delivery of this Agreement by Borrower [Magerick], nor consummation by Borrower [Magerick of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower [Magerick], or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower [Magerick] is a party, by which Borrower [Magerick] is bound or to which any of Borrower's [Magerick' s] property or assets is subject.

(d) Borrower [Magerick] hereby reaffirms ad confirms that the representations and warranties of Borrower contained in the Loan Documents are true, correct and complete in all respects as of the date of his Agreement.

(e) Borrower [Magerick] is in full and complete compliance with the terms, covenants, provisions and conditions of the Loan Agreement, the Note, the Guaranty and the other Loan Documents to which it is a party.

All covenants, representations and warranties of Borrower [Magerick] herein are incorporated by reference and hereby made part of the Loan Agreement.

205.   The Sixth Loan Modification Agreement required Magerick to confirm and reaffirm "Special Representations Concerning Collateral" including:

(a) <u>Ownership</u>. Borrower [Magerick] is the legal and equitable owner and holder, free and clear of all Liens, of the Pledged Mortgages.  All Pledged Mortgages have been and will continue to be validly pledged or assigned to the Lender, subject to no other Liens.; (b) <u>Perfection</u>. Lender has and will at all times have a valid, enforceable and perfected first priority security interest in each Pledged Mortgage and all Collateral relating thereto; and (c) <u>Borrower's</u> [Magerick] <u>Authority</u>. Borrower has, and will continue to have, the full right, power and authority to pledge the Collateral pledged and to be pledged by it hereunder.

206.   On April 14, 2023, when Magerick executed the Sixth Loan Modification Agreement with Western Alliance, it was not the owner or holder of the AHP Trusts' Mortgage Loans which Magerick had fraudulently pledged to Western Alliance as Pledged Mortgages.

207.   On April 14, 2023, both Land Home and Weinstein consented to the Sixth Loan Modification Agreement.  Weinstein represented that he was not aware of anything that would disprove the recital that, "[Western Alliance]'s security in the in the Collateral is first in priority" when he knew the same to be inaccurate.

208.   On May 22, 2023, Magerick and Western Alliance executed a Seventh Loan Modification Agreement to extend the bulge period until June 30, 2023 and change the definition of "Agreement of Lender."

209.  Pursuant to the Seventh Loan Modification Agreement, Magerick acknowledged and agreed that:

> (b) Neither the execution and delivery of this Agreement by Borrower [Magerick], nor consummation by Borrower [Magerick] of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower [Magerick], or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower [Magerick] is a party, by which Borrower [Magerick] is bound or to which any of Borrower's [Magerick' s] property or assets is subject.

> (d) Borrower [Magerick] hereby reaffirms and confirms that the representations and warranties of Borrower [Magerick] contained in the Loan Documents are true, correct and complete in all respects as of the date of his Agreement.

> (e) Borrower [Magerick] is in full and complete compliance with the terms, covenants, provisions and conditions of the Loan Agreement, the Note, the Guaranty and the other Loan Documents to which it is a party.

> All covenants, representations and warranties of Borrower [Magerick] herein are incorporated by reference and hereby made part of the Loan Agreement.

210.    The Seventh Loan Modification Agreement required Magerick to confirm and reaffirm "Special Representations Concerning Collateral" including:

(a) <u>Ownership</u>. Borrower [Magerick] is the legal and equitable owner and holder, free and clear of all Liens, of the Pledged Mortgages.  All Pledged Mortgages have been and will continue to be validly pledged or assigned to the Lender, subject to no other Liens.; (b) <u>Perfection</u>. Lender has and will at all times have a valid, enforceable and perfected first priority security interest in each Pledged Mortgage and all Collateral relating thereto.; and (c) <u>Borrower's</u> [Magerick] <u>Authority</u>. Borrower has, and will continue to have, the full right, power and authority to pledge the Collateral pledged and to be pledged by it hereunder.

211.    On May 22, 2023, when Magerick executed the Seventh Loan Modification Agreement with Western Alliance, it was not the owner or holder of the AHP Trusts' Mortgage Loans which Magerick had fraudulently pledged to Western Alliance as Pledged Mortgages.

212.    On May 22, 2023, both Land Home and Weinstein consented to the Seventh Loan Modification Agreement.  Weinstein represented that he was not aware of anything that would disprove the recital that, "[Western Alliance]'s security in the in the Collateral is first in priority" when he knew the same to be inaccurate.

213.    On June 29, 2023, Magerick and Western Alliance executed the Eighth Loan Modification Agreement to extend to bulge period until July 31, 2023 and change the definition of "Commitment" to reduce the loan amount to $50 Million during the bulge period.

214.    Pursuant to the Eighth Loan Modification Agreement, Magerick represented, warranted, covenanted and agreed that:

(b) Neither the execution and delivery of this Agreement by Borrower [Magerick], nor consummation by Borrower [Magerick] of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower [Magerick], or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower [Magerick] is a party, by which Borrower [Magerick] is bound or to which any of Borrower's [Magerick' s] property or assets is subject.

(d) Borrower [Magerick] hereby reaffirms and confirms that the representations and warranties of Borrower [Magerick] contained in the Loan Documents are true, correct and complete in all respects as of the date of this Agreement.

(e) Borrower [Magerick] is in full and complete compliance with the terms, covenants, provisions and conditions of the Loan Agreement, the Note, the Guaranty and the other Loan Documents to which it is a party.

All covenants, representations and warranties of Borrower [Magerick] herein are incorporated by reference and hereby made part of the Loan Agreement.

215.   The Eighth Loan Modification Agreement required Magerick to reaffirm and confirm "Special Representations Concerning Collateral" including:

(a) <u>Ownership</u>. Borrower [Magerick] is the legal and equitable owner and holder, free and clear of all Liens, of the Pledged Mortgages.  All Pledged Mortgages have been and will continue to be validly pledged or assigned to the Lender, subject to no other Liens.; (b) <u>Perfection</u>. Lender has and will at all times have a valid, enforceable and perfected first priority security interest in each Pledged Mortgage and all Collateral relating thereto.; and (c) <u>Borrower's</u> [Magerick] <u>Authority</u>. Borrower has, and will continue to have, the full right, power and authority to pledge the Collateral pledged and to be pledged by it hereunder.

216.   On June 29, 2023, when Magerick executed the Eighth Loan Modification Agreement with Western Alliance, Magerick was not the owner or holder of the AHP Trusts' Mortgage Loans which Magerick had fraudulently pledged to Western Alliance as Pledged Mortgages but continued to misrepresent the same.

217.   On June 29, 2023, both Land Home and Weinstein consented to the Eighth Loan Modification Agreement.  Weinstein represented that he was not aware of anything that would disprove the recital that, "[Western Alliance]'s security in the in the Collateral is first in priority" when he knew the same to be inaccurate.

218.   On July 25, 2023, Magerick and Western Alliance executed the Ninth Loan Modification Agreement to extend the bulge period until September 30, 2023 and change

the definition of "Commitment" to reduce the loan amount to $47 Million during the bulge period.

219. Pursuant to the Ninth Loan Modification Agreement, Magerick represented, warranted, covenanted, and agreed that:

(b) Neither the execution and delivery of this Agreement by Borrower [Magerick], nor consummation by Borrower [Magerick] of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower [Magerick], or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower [Magerick] is a party, by which Borrower [Magerick] is bound or to which any of Borrower's [Magerick' s] property or assets is subject.

(d) Borrower [Magerick] hereby reaffirms and confirms that the representations and warranties of Borrower [Magerick] contained in the Loan Documents are true, correct and complete in all respects as of the date of this Agreement.

(e) Borrower [Magerick] is in full and complete compliance with the terms, covenants, provisions and conditions of the Loan Agreement, the Note, the Guaranty and the other Loan Documents to which it is a party.

All covenants, representations and warranties of Borrower [Magerick] herein are incorporated by reference and hereby made part of the Loan Agreement.

220. The Ninth Loan Modification Agreement required Magerick to reaffirm and confirm "Special Representations Concerning Collateral" including:

(a) Ownership. Borrower [Magerick] is the legal and equitable owner and holder, free and clear of all Liens, of the Pledged Mortgages. All Pledged Mortgages have been and will continue to be validly pledged or assigned to the Lender, subject to no other Liens.; (b) Perfection. Lender has and will at all times have a valid, enforceable and perfected first priority security interest in each Pledged Mortgage and all Collateral relating thereto.; and (c) Borrower's [Magerick] Authority. Borrower has, and will continue to have, the full right, power and authority to pledge the Collateral pledged and to be pledged by it hereunder.

221. On July 25, 2023, when Magerick executed the Ninth Loan Modification Agreement with Western Alliance, it was not the owner or holder of the AHP Trusts'

Mortgage Loans which Magerick had fraudulently pledged to Western Alliance as Pledged Mortgages but continued to misrepresent the same.

222.   On July 25, 2023, both Land Home and Weinstein consented to the Ninth Loan Modification Agreement.  Weinstein represented that he was not aware of anything that would disprove the recital that, "[Western Alliance]'s security in the in the Collateral is first in priority" when he knew the same to be inaccurate.

223.   On May 10, 2024, Magerick and Western Alliance executed the Tenth Loan Modification and Waiver Agreement to extend the bulge period until August 18, 2024, and change the Land Home Financial Services, Inc. Minimum Adjusted Pre-Tax Profitability to no less than $1 (one dollar).

224.   Pursuant to the Tenth Loan Modification and Waiver Agreement, Magerick represented, warranted, covenanted and agreed that:

(b) Neither the execution and delivery of this Agreement by Borrower [Magerick], nor consummation by Borrower [Magerick] of the transactions contemplated hereby, conflicts with or constitutes a violation or a default under any law applicable to Borrower [Magerick], or any contract, commitment, agreement, arrangement or restriction of any kind to which Borrower [Magerick] is a party, by which Borrower [Magerick] is bound or to which any of Borrower's [Magerick' s] property or assets is subject.

(d) Borrower [Magerick] hereby reaffirms and confirms that the representations and warranties of Borrower [Magerick] contained in the Loan Documents are true, correct and complete in all respects as of the date of this Agreement.

(e) After giving effect to the waiver of the Profitability Covenant for the fiscal year ending January 31, 2024, Borrower [Magerick] is in full and complete compliance with the terms, covenants, provisions and conditions of the Loan Agreement, the Note, the Guaranty and the other Loan Documents to which it is a party.

All covenants, representations and warranties of Borrower [Magerick] herein are incorporated by reference and hereby made part of the Loan Agreement.

COMPLAINT

225.    The Tenth Loan Modification and Waiver Agreement required Magerick to reaffirm and confirm "Special Representations Concerning Collateral" including:

(a) <u>Ownership</u>. Borrower [Magerick] is the legal and equitable owner and holder, free and clear of all Liens, of the Pledged Mortgages.  All Pledged Mortgages have been and will continue to be validly pledged or assigned to the Lender, subject to no other Liens.; (b) <u>Perfection</u>. Lender has and will at all times have a valid, enforceable and perfected first priority security interest in each Pledged Mortgage and all Collateral relating thereto.; and (c) <u>Borrower's</u> [Magerick] <u>Authority.</u> Borrower has, and will continue to have, the full right, power and authority to pledge the Collateral pledged and to be pledged by it hereunder.

226.    On May 10, 2024, when Magerick executed the Tenth Loan Modification Agreement with Western Alliance, it was not the owner or holder of the AHP Trusts' Mortgage Loans which Magerick had fraudulently pledged to Western Alliance as Pledged Mortgages but continued to misrepresent the same.

227.    On May 10, 2024, both Land Home and Weinstein consented to the Tenth Loan Modification Agreement.  Weinstein represented that he was not aware of anything that would disprove the recital that, "[Western Alliance]'s security in the in the Collateral is first in priority" when he knew the same to be inaccurate.

228.    In each of the Modifications after and including the Fourth Loan Modification Agreement, Magerick fraudulently misrepresented its ownership of the collateral, its compliance with the loan agreement, and its authority to pledge the AHP Trusts' Mortgage Loans.

229.    Western Alliance was aware of Magerick's misrepresentations by November of 2023, if not earlier, but inexplicably continues to participate and allow Magerick to commit fraud with each amendment.

230.    In addition to Western Alliance's knowledge as set forth above, Newbery sent a letter to Western Alliance's CEO Vecchione on February 13, 2024, informing him that,

[H]undreds of mortgage loans and real estate properties totaling tens of millions of dollars appear to have been pledged as collateral to Western Alliance Bank by Magerick, LLC.  However, Magerick did not own the majority of the assets and had no authority to pledge the assets.

## H. THE AHP TRUSTS' MORTGAGE LOANS HAVE BEEN CONCURRENTLY AND FRAUDULENTLY PLEDGED TO MULTIPLE LENDERS

231.    Through a series of sham sales and participation agreements, Weinstein, Oak Harbor, Magerick, and Atlantica orchestrated the double-pledging of the Mortgage Loans and double-selling of participation interests in the Mortgage Loans, enabling them to procure millions of dollars in loans from  multiple banks, at least one (Western Alliance) of which later joined in and participated in the scheme in order to protect their interests.

232.    Cymbidium and Magerick allegedly entered into a Secured Participation Agreement ("Cymbidium/Magerick Participation Agreement).  The Agreement purports to be entered into on October 7, 2022, but was not signed by Adam Henderson, an authorized Representative of Cymbidium, until July 25, 2023.  Weinstein signed the document on behalf of Magerick. The date of said execution is unknown.

233.    Upon information and belief, the Cymbidium/Magerick Participation Agreement was executed in July of 2023 to justify the ineffective and fraudulent transfer of the AHP Trusts' Mortgage Loans to Magerick and others, as well as the pledging of the AHP Trusts' Mortgage Loans to Western Alliance nine months earlier.

234.    The Cymbidium/Magerick Participation Agreement made clear that the "Participant," Magerick, had pledged the AHP Trusts' Mortgages Loans to Western Alliance: "WHEREAS: the Participant [Magerick] financed a portion of the payment of purchase price under the [MLSARO] for the [Mortgage Loans] by a draw down under [Magerick's] credit facility with [Western Alliance] whereby the Bank was granted a first perfected security interest in the [Mortgage Loans]."

235.    The Cymbidium/Magerick Participation Agreement attempted to transfer any interest that Cymbidium acquired pursuant to the MLSARO to Magerick, but made clear, "that the Interest shall not include the legal title to the designated Assets, which shall continue to be held by Cymbidium."

236.    Despite the fact that neither Cymbidium nor Magerick had legal title to the AHP Trusts' Mortgage Loans and had no right to assign or transfer any of the Mortgage Loans, as set forth herein, Oak Harbor and Atlantica fraudulently misused LPOAs to assign the AHP Trusts' Mortgage Loans to Magerick and others. Magerick had already fraudulently pledged the AHP Trusts' Mortgage Loans to Western Alliance and misrepresented that Magerick was the owner of the Mortgage Loans. Some of the AHP Trusts' Mortgage Loans were also double-pledged to Banner by Weinstein, who misrepresented that he was the owner of the Mortgage Loans.

237.    The Cymbidium/Magerick Participation Agreement also made clear that Cymbidium was to keep a segregated set of books for the AHP Trusts' Mortgage Loans.

238.    Despite repeated and continuous demands for an accounting of the disposition of the AHP Trusts' Mortgage Loans, Cymbidium and Oak Harbor have refused.

239.    On or about October 6, 2022, Magerick pledged the AHP Trusts' Mortgage Loans to Western Alliance, prior to the MLSARO's effective date and the AHP Trusts providing Cymbidium, not Magerick, with a security interest in its Mortgage Loans.

240.    On July 20, 2023, Cymbidium and Magerick drafted a Mortgage Loan Sale Agreement between Magerick, as Seller of the AHP Trusts' Mortgage Loans and Cymbidium, as the Purchaser of the AHP Trusts' Mortgage Loans ("Magerick/Cymbidium Loan Sale Agreement").

241.    According to the Magerick/Cymbidium Loan Sale Agreement, Magerick was selling Cymbidium 298 of the AHP Trusts' Mortgage Loans with a total amount due on the loans of $22,685,625.06 in exchange for $10 Million to be wired to Weinstein

& Riley, P.S. Trust account at Western Alliance. The sale was for Mortgage Loans that the AHP Trusts had already pledged to Cymbidium as security for the Cymbidium Loan.

242. On July 20, 2023, Cymbidium entered into a Participation Agreement to convey a participation interest in 298 of the AHP Trusts' Mortgage Loans to Keydally Capital Ltd. ("Keydally"), an Irish registered company ("Cymbidium/Keydally Participation Agreement"). The 298 Mortgage Loans were the same loans which Cymbidium allegedly purchased from Magerick the same day, and which were and largely remain pledged to Western Alliance.

243. The Cymbidium/Keydally Participation Agreement stated: "WHEREAS [Cymbidium acquired that certain portfolio of residential loans [298 of the AHP Trusts' Mortgage Loans] under that certain Loan Sale Agreement dated as of July 20, 2023, made by and between Magerick, LLC, as the Seller, and [Cymbidium] as the Purchaser…"

244. The July 20, 2023, Cymbidium/Keydally Participation Agreement stated, "NOW THEREFORE: For value received, **including providing the funds necessary to acquire the** [298 of the AHP Trusts' Mortgage Loans], Cymbidium conveys a 100 percent participation interest in all of Cymbidium's beneficial and economic rights in [298 of the AHP Trusts' Mortgage Loans] to Keydally." [Emphasis added.]

245. Keydally did not provide any funding to Cymbidium to acquire the alleged participation interest in 298 of the AHP Trusts' Mortgage Loans. Instead, Keydally executed two promissory notes of $5 Million each, one to Weinstein, principal of Oak Harbor, and one to Waite, principal of Land Home, as the alleged Lenders, but the alleged debt owed to Weinstein and Waite never had to be paid, nor was it intended to be paid, as each SECURED DEMAND MORTGAGE NOTE stated:

> Lender [Weinstein and/or Waite] is jointly providing this loan with his co-lender, Brad Waite [and/or Weinstein], who is advancing an equivalent amount to [Keydally] through a separate Secured Demand Promissory Note on identical terms. Lender, in collaboration with his co-lender, has the authority to cancel and consider Note fully settled by exercising an option

granted by [Keydally] to Lender and his co-lender.  This option allows them to acquire all of Keydally's interest in the Collateral (as defined below) at any time during this Notes duration, in exchange for forgiving any remaining principal and accrued interest under this Note upon exercise.  Keydally agrees to undertake all necessary action transfer ownership of the Collateral to the lenders [Weinstein and Waite] upon the exercise of the option.

246.   The alleged collateral was the AHP Trusts' 298 Mortgage Loans that Cymbidium allegedly purchased from Magerick on July 20, 2023, with funds purportedly provided by Keydally.

247.   Instead of Keydally paying Cymbidium for its interest in the AHP Trusts' Mortgage Loans, Weinstein and Waite (CEO of Land Home) paid Keydally 6,000 euros to enter into what was a sham sale agreement.

248.   These fraudulent transactions were built on the bedrock of transfers and assignments created by fraudulent misuse of the LPOAs by Oak Harbor and Atlantica to fraudulently assign the AHP Trusts' Mortgage Loans to Magerick, Western Alliance, Atlantica and others in violation of the LPOAs.

249.   The aforementioned transactions were designed to deceive the AHP Trusts into believing that an actual sale had occurred, that the AHP Trusts' Mortgage Loans were being sold on the open market to get a competitive return to allow the AHP Trusts' Mortgage Loans to be monetized to repay the Cymbidium Loan.

250.   Despite the representations, the only purchasers were Weinstein and Waite, who allegedly loaned the money from their personal funds to Keydally. Weinstein, Waite, and Keydally knew Keydally was never going to pay the Note and Weinstein and Waite would end up with the stolen Mortgage Loans.

251.   The aforementioned knowledge and arrangement allowed Weinstein and Waite to acquire the AHP Trusts' Mortgage Loans for far less than market value while representing to the AHP Trusts' that that the Keydally transaction was a market transaction.  Upon information and belief, the market value of the Mortgage Loans in

the Keydally transaction was several million dollars higher than the $10 million sales price, ultimately benefitting Weinstein and Waite.

252. Weinstein and Waite did exercise their options, took, and retained possession of the AHP Trusts' Mortgage Loans for a below market price, and paid Keydally a management fee of 6,000 euros for its services as a straw buyer.

253. On March 10, 2023, Jenny Drain ("Drain"), former Controller at Oak Harbor, drafted an Exit Memo and sent it to Weinstein memorializing Oak Harbor's practice of creating ownership "just on paper" to sell loans:

> MWPNP, Inc:    In Accounting's books, we did not record the NWPNP sale anywhere, **as ownership is just on paper so that the Connecticut loans could be sold.** The appropriate funds are still responsible for expenses and entitled to the sales proceeds and we will book the sales as they happen. As far as compensation, MWPNP is only receiving a fee when the sale closes (built into the escrow), so MWPNP will be forwarding full proceeds to the fund. That was my understanding of the deal. I opened a bank account for Cliff but will have control of the account. [Emphasis added].

254. Similar to the Keydally transaction, the MWPNP transactions were another sham "just on paper" sale to deceive banks, lenders, regulators, auditors and, ultimately, the AHP Trusts.

255. In October of 2023, the AHP Servicing Trust delivered a deed to a property commonly known as 2101 Bellevue Avenue, Syracuse, NY, ("2101 Bellevue") to Mortgage Connect (to hold in escrow) consistent with a $70,000 contract to sell the property to MWPNP, LLC.  Escrow was never closed.

256. On January 24, 2024, the deed to 2101 Bellevue that the AHP Servicing Trust had deposited with Mortgage Connect, was recorded with a sale price of $70,000 without authorization from the AHP Trusts.

257. On February 7, 2024, the AHP Servicing Trust contacted Mortgage Connect, a title company and escrow agent, which indicated they were still in possession of the original deed delivered to it by the AHP Servicing Trust.

258.    Upon information and belief Ponte, Oak Harbor, and/or affiliates engaged a New York Law firm to record a scanned copy of the deed through a Simplifile account.

259.    2101 Bellevue was stolen from the AHP Servicing Trust and received by MWPNP, an entity controlled or owned by Weinstein and/or Oak Harbor.

260.    On April 17, 2024, Weinstein emailed Paul Birkett, CEO Of Automation Finance, purchaser of some of AHP Trusts' assets from Magerick: "On MWPNP, this is a separate party (Oak Harbor has no ownership interest in that entity)."  Although documentation may have been created to make it appear that Oak Harbor no longer had an ownership interest in MWPNP, consistent with the Exit Memo, the sale of MWPNP to Ponte was a sham "just on paper" sale.

261.    Weinstein, Oak Harbor, Cymbidium, Magerick, and Atlantica, systematically transferred, assigned, double-pledged, and double-sold the Mortgage Loans in a merry go round of bank fraud and theft.

262.    Double-pledging is fraud upon a bank in which the same asset is pledged as collateral to two or more banks at the same time without the knowledge of the banks.

263.    The March 10, 2023, Exit Memo from Drain at Oak Harbor that was sent to Weinstein exemplifies the practice of double-pledging assets:

> Banner Line [of credit]: Analytics should replace the NPL's [non-performing loans] in BK [bankruptcy] which are double pledged (Laelie and Isanthes loans).

264.    Double-selling, similar to double-pledging, is when the same interest in an asset (or assets) is sold to two or more different buyers.  Oak Harbor, Magerick, Weinstein, Cymbidium, and Atlantica engaged in selling of the Mortgage Loans to multiple buyers. Cymbidium engaged in the double-selling of participation interests in the Mortgage Loans to multiple buyers. The below are several examples of the widespread, continuous, and fraudulent schemes ("fraudulent scheme examples") which occurred hundreds of times:

<u>1016 Sheridan</u>.

265.    As collateral for the Cymbidium Loan, the AHP Trusts pledged to Cymbidium a mortgage loan secured by a property located at 1016 Sheridan St., Richmond, IN with an approximate amount due of $96,857.31. (The pledged mortgage loan is referred to hereafter as "1016 Sheridan").

266.    Magerick double-pledged 1016 Sheridan to Western Alliance from October 6, 2022 through at least July 25, 2024, per Western Alliance's Borrowing Base Certificates dated October 6, 2022; November 16, 2022; December 29, 2022; January 30, 2023; March 30, 2023; April 28, 2023; May 26, 2023; June 30, 2023; August 15, 2023; August 17, 2023; January 3, 2024; March 19, 2024; April 24, 2024; June 11, 2024; June 27, 2024; July 19, 2024; and July 25, 2024.

267.    Weinstein, in his individual capacity, double-pledged 1016 Sheridan to Banner from June 29, 2023, through at least December 31, 2023. This is evidenced by what Weinstein called the "Banner Bank Tape" and by Banner Borrowing Base Certificates dated September 30, 2023; October 30, 2023; and December 31, 2023.

268.    Magerick sold 1016 Sheridan, along with another 297 of the AHP Trusts' Mortgage Loans in which Magerick had neither an ownership interest nor a right to sell, to Cymbidium for $10 Millon on July 20, 2023, per the Magerick/Cymbidium Loan Sale Agreement. Prior to the purported sale, Cymbidium already held a security interest in 1016 Sheridan and the other 297 Mortgage Loans.

269.    Cymbidium double-sold a "100 percent participation interest" in 1016 Sheridan, along with another 297 of the AHP Trusts' Mortgage Loans in which it had neither an ownership interest nor a right to sell, to Keydally for $10 Million on July 20, 2023, per the Cymbidium/Keydally Participation Agreement. The Keydally Sale was financed by two $5 Million notes, one payable to Weinstein and one payable to Waite, with no down payment from Keydally.

270.    Cymbidium double-sold a "100 percent participation interest" in 1016 Sheridan, along with another 840 of the AHP Trusts' Mortgage Loans (including the 298 Mortgage Loans in which 100 percent participation was concurrently conveyed to

Keydally), to Magerick on July 25, 2023, per the Cymbidium/Magerick Participation Agreement dated October 7, 2022, but executed on July 25, 2023.

271.   On December 20, 2023, Weinstein and Waite each cancelled their $5 Million loans to Keydally and exercised options to each acquire 50% of Keydally's participation interest in 1016 Sheridan and another 297 of the AHP Trusts' Mortgage Loans. Keydally was paid a "management fee" of 6,000 euros for their role as a straw buyer.

272.   Oak Harbor abused the AHP Servicing/Oak Harbor LPOA on August 4, 2023, to fraudulently execute an assignment of 1016 Sheridan from AHP Servicing Trust to Magerick, that was subsequently recorded on August 7, 2023.

273.   Magerick fraudulently executed an assignment of 1016 Sheridan to Western Alliance on August 4, 2023.

274.   In regard to 1016 Sheridan: (a) two parties, Magerick and Weinstein, which did not own 1016 Sheridan, double-pledged 1016 Sheridan as collateral for loans at Western Alliance and Banner; (b) Cymbidium, which was the party to the MLSARO and thereby held a security interest in 1016 Sheridan, nevertheless "purchased" 1016 Sheridan from Magerick which had no legal title or interest therein; (c) Cymbidium double-sold 100% participation interests in 1016 Sheridan to both Magerick and Keydally; (d) Weinstein and Waite exercised options to acquire the straw buyer Keydally's 100% participation interest in 1016 Sheridan; (e) Oak Harbor abused a LPOA to transfer 1016 Sheridan from AHP Servicing Trust to Magerick; and (f) Magerick transferred 1016 Sheridan to Western Alliance.

10146 Route 50.

275.   As collateral for the Cymbidium Loan, the AHP Trusts pledged to Cymbidium a mortgage loan secured by a property located at 1046 Route 50, Ballston Lake, NY with an approximate amount due of $267,150.74.  (The pledged mortgage loan is referred to hereafter as "1046 Route 50").

276.    Magerick double-pledged 1046 Route 50 to Western Alliance from October 6, 2022, through at least July 25, 2024, per Western Alliance's Borrowing Base Certificates dated October 6, 2022; November 16, 2022; December 29, 2022; January 30, 2023; March 30, 2023; April 28, 2023; May 26, 2023; June 30, 2023; August 15, 2023; August 17, 2023; January 3, 2024; March 19, 2024; April 24, 2024; June 11, 2024; June 27, 2024; July 19, 2024; and July 25, 2024.

277.    Weinstein, in his individual capacity, double-pledged 1046 Route 50 to Banner from June 29, 2023, through at least December 31, 2023, per the "Banner Bank Tape" and Banner Borrowing Base Certificates dated September 30, 2023; October 30, 2023; and December 31, 2023.

278.    Magerick sold 1046 Route 50, along with another 297 of the AHP Trusts' Mortgage Loans in which it had neither an ownership interest nor a right to sell, to Cymbidium for $10 Million, on July 20, 2023, per the Magerick/Cymbidium Loan Sale Agreement. Prior to this purported sale, Cymbidium already held a security interest in 1046 Route 50 and the other 297 Mortgage Loans.

279.    Cymbidium double-sold a "100 percent participation interest" in 1046 Route 50, along with another 297 of the AHP Trusts' Mortgage Loans in which it had neither an ownership interest nor a right to sell, to Keydally for $10 Million on July 20, 2023, per the Cymbidium/Keydally Participation Agreement. The Keydally Sale was financed by two $5 Million notes, one payable to Weinstein and one payable to Waite, with no down payment from Keydally.

280.    Cymbidium double-sold a "100 percent participation interest" in 1046 Route 50, along with another 840 of the AHP Trusts' Mortgage Loans (including the 298 Mortgage Loans in which 100 percent participation was concurrently conveyed to Keydally), to Magerick on July 25, 2023, per the Cymbidium/Magerick Participation Agreement dated October 7, 2022 but executed on July 25, 2023.

281.    On December 20, 2023, Weinstein and Waite each cancelled their $5 Million loans to Keydally and exercised options to each acquire 50% of Keydally's

participation interest in 1046 Route 50 and another 297 of the AHP Trusts' Mortgage Loans. Keydally was paid a "management fee" of 6,000 euros for their role as a straw buyer.

282.    Oak Harbor abused the Oak Harbor/AHP Servicing LPOA to fraudulently execute an assignment of 1046 Route 50 from AHP Servicing Trust to Magerick on May 12, 2023, that was subsequently recorded on May 17, 2023.

283.    In regard to 1046 Route 50: (a) two parties, Magerick and Weinstein, which did not own 1046 Route 50, double-pledged 1046 Route 50 as collateral for loans at Western Alliance and Banner; and (b) Cymbidium, which was the party to the MLSARO and thereby held a security interest in 1046 Route 50, nevertheless "purchased" 1046 Route 50 from Magerick, which had no legal title or interest therein;; (c) Cymbidium, also lacking title, then nevertheless fraudulently double-sold 100% participation interests in 1046 Route 50 to both Magerick and Keydally; (d) Weinstein and Waite exercised options to acquire the straw buyer Keydally's participation interest in 1046 Route 50; and (e) Oak Harbor abused a LPOA to transfer 1046 Route 50 from AHP Servicing Trust to Magerick.

### 527 Subdivision.

284.    As collateral for the Cymbidium Loan, the AHP Trusts pledged to Cymbidium   a mortgage loan secured by a property located at 527 Subdivision, New Zion S.C., with an approximate amount due of $54,314.  (The pledged mortgage loan is referred to hereafter as "527 Subdivision").

285.    Magerick double-pledged 527 Subdivision to Western Alliance from October 6, 2022, through at least July 25, 2024, per Western Alliance's Borrowing Base Certificates dated October 6, 2022; November 16, 2022; December 29, 2022; January 30, 2023; March 30, 2023; April 28, 2023; May 26, 2023; June 30, 2023; August 15, 2023; August 17, 2023; January 3, 2024; March 19, 2024; April 24, 2024; June 11, 2024; June 27, 2024; July 19, 2024; and July 25, 2024.

286.    Weinstein, in his individual capacity, double-pledged 527 Subdivision to Banner from June 29, 2023, through at least December 31, 2023, per the "Banner Bank Tape" and Banner Borrowing Base Certificates dated September 30, 2023; October 30, 2023; and December 31, 2023.

287.    Magerick sold 527 Subdivision, along with another 297 of the AHP Trusts' Mortgage Loans it had neither an ownership interest nor a right to sell, to Cymbidium for $10 Millon on July 20, 2023, per the Magerick/Cymbidium Loan Sale Agreement. Prior to this purported sale, Cymbidium already held a security interest in 527 Subdivision as well as the other 297 Mortgage Loans.

288.    Cymbidium double-sold a "100 percent participation interest" in 527 5ubdivision, along with another 297 of the AHP Trusts' Mortgage Loans it had neither an ownership interest nor a right to sell, to Keydally for $10 Million on July 20, 2023, per the Cymbidium/Keydally Participation Agreement. The Keydally Sale was financed by two $5 Million notes, one payable to Weinstein and one payable to Waite, with no down payment from Keydally.

289.    Cymbidium double-sold a "100 percent participation interest" in 527 Subdivision, along with another 840 of the AHP Trusts' Mortgage Loans (including the 298 Mortgage Loans in which 100 percent participation was concurrently conveyed to Keydally), to Magerick on July 25, 2023, per the Cymbidium/Magerick Participation Agreement dated October 7, 2022, but executed on July 25, 2023.

290.    On December 20, 2023, Weinstein and Waite each cancelled their $5 Million loans to Keydally and exercised options to each acquire 50% of Keydally's participation interest in 527 Subdivision and another 297 of the AHP Trusts' Mortgage Loans. Keydally was paid a "management fee" of 6,000 euros for their role as a straw buyer.

291.    Oak Harbor abused the 2015A+/Oak Harbor LPOA to fraudulently execute an assignment of 527 Subdivision from the 2015A+ Trust to Magerick on May 1, 2023, that was subsequently recorded on May 2, 2023.

292.   In regard to 527 Subdivision: (a) two parties, Magerick and Weinstein, which did not own 527 Subdivision, double-pledged 527 Subdivision as collateral for loans at Western Alliance and Banner; (b) Cymbidium, which was the party to the MLSARO and thereby held a security interest in 527 Subdivision, nevertheless "purchased" 527 Subdivision from Magerick, which had no legal title or interest therein; and (c) Cymbidium, also lacking title, nevertheless fraudulently double-sold 100% participation interests in 527 Subdivision to both  Keydally and Magerick; (d) Weinstein and Waite exercised options to acquire the straw buyer Keydally's 100% participation interest in 527 Subdivision; and (e) Oak Harbor abused a LPOA to transfer 527 Subdivision from 2015A+ Trust to Magerick

### 11 Michaels.

293.   As collateral for the Cymbidium Loan, the AHP Trusts pledged to Cymbidium a mortgage loan secured by a property located at 11 Michaels Place, Lackawanna, N.Y.  with an approximate amount due of $111,721.02. (The pledged mortgage loan is referred to hereafter as "11 Michaels").

294.   Magerick double-pledged 11 Michaels to Western Alliance from October 6, 2022 through at least July 25, 2024, per Western Alliance's Borrowing Base Certificates dated October 6, 2022; November 16, 2022; December 29, 2022; January 30, 2023; March 30, 2023; April 28, 2023; May 26, 2023; June 30, 2023; August 15, 2023; August 17, 2023; January 3, 2024; March 19, 2024; April 24, 2024; June 11, 2024; June 27, 2024; July 19, 2024; and July 25, 2024.

295.   Weinstein, in his individual capacity, double-pledged 11 Michaels to Banner from June 29, 2023, through at least December 31, 2023, per the "Banner Bank Tape" and Banner Borrowing Base Certificates dated September 30, 2023; October 30, 2023; and December 31, 2023.

296.   Magerick sold 11 Michaels, along with another 297 of the AHP Trusts' Mortgage Loans to Cymbidium, for $10 Millon on July 20, 2023, per the

Magerick/Cymbidium Loan Sale Agreement.  Prior to this purported sale, Cymbidium already held a security interest in 11 Michaels as well as the other 297 Mortgage Loans.

297.   Cymbidium double-sold a "100 percent participation interest" in 11 Michaels, along with another 297 of the AHP Trusts' Mortgage Loans in which it had neither an ownership interest nor a right to sell, to Keydally for $10 Million on July 20, 2023, per the Cymbidium/Keydally Participation Agreement. The Keydally Sale was financed by two $5 Million notes, one payable to Weinstein and one payable to Waite, with no down payment from Keydally.

298.   Cymbidium double-sold a "100 percent participation interest" in 11 Micheals, along with another 840 of the AHP Trusts' Mortgage Loans (including the 298 Mortgage Loans in which 100 percent participation was concurrently conveyed to Keydally), to Magerick, on July 25, 2023, per the Cymbidium/Magerick Participation Agreement dated October 7, 2022 but executed on July 25, 2023.

299.   On December 20, 2023, Weinstein and Waite each cancelled their $5 Million loans to Keydally and exercised options to each acquire 50% of Keydally's participation interest in 11 Michaels and another 297 of the AHP Trusts' Mortgage Loans. Keydally was paid a "management fee" of 6,000 euros for their role as a straw buyer.

300.   Atlantica abused the Atlantica LPOA to fraudulently execute an assignment of 11 Michaels on October 13, 2022, from the 2015A+ Trust to itself that was subsequently recorded on November 2, 2022.

301.   Atlantica fraudulently executed another assignment of 11 Michaels to Magerick on May 12, 2023, which was subsequently recorded on May 17, 2023.

302.   In regard to 11 Michaels: (a) Magerick and Weinstein double-pledged 11 Michaels as collateral for loans at Western Alliance and Banner; (b) Cymbidium, which was the party to the MLSARO and thereby held a security interest in 11 Michaels , nevertheless "purchased" 11 Michaels from Magerick, which had no legal title or interest therein; (c) Cymbidium, also lacking title, nevertheless fraudulently double-sold 100%

participation interests in 11 Michaels to Keydally and Magerick; (d) Weinstein and Waite exercised options to acquire the straw buyer Keydally's 100% participation interest in 11 Michaels;  (e) Atlantica  abused a LPOA to transfer 11 Michaels  from 2015A+  Trust to itself; and (f) Atlantica fraudulently transferred 11 Michaels  to Magerick.

### 110 Smith Perry.

303.   As collateral for the Cymbidium Loan, the AHP Trusts pledged to Cymbidium a mortgage loan secured by a property located at 110 Smith Perry Rd., Lucasville, OH with an approximate amount due of $48,338.14.  (The pledged mortgage loan is referred to hereafter as "110 Smith Perry").

304.   Magerick double- pledged 110 Smith Perry to Western Alliance from October 6, 2022 through at least July 25, 2024, per Western Alliance's Borrowing Base Certificates dated October 6, 2022; November 16, 2022; December 29, 2022; January 30, 2023; March 30, 2023; April 28, 2023; May 26, 2023; June 30, 2023; August 15, 2023; August 17, 2023; January 3, 2024; March 19, 2024; April 24, 2024; June 11, 2024; June 27, 2024; July 19, 2024; and July 25, 2024.

305.   Weinstein, in his individual capacity, double-pledged 110 Smith Perry to Banner from June 29, 2023, through at least December 31, 2023, per the "Banner Bank Tape" and Banner Borrowing Base Certificates dated September 30, 2023; October 30, 2023; and December 31, 2023.

306.   Magerick sold 110 Smith Perry, along with another 297 of the AHP Trusts' Mortgage Loans it had neither an ownership interest in nor a right to sell, to Cymbidium for $10 Million on July 20, 2023, per the Magerick/Cymbidium Loan Sale Agreement. Prior to the purported sale, Cymbidium already held a security interest in 100 Smith Perry as well as the other Mortgage Loans.

307.   Cymbidium double-sold a "100 percent participation interest in 110 Smith Perry, along with another 297 of the AHP Trusts' Mortgage Loans in had no ownership interest or not right to sell, to Keydally for $10 Million on July 20, 2023, per the

Cymbidium/Keydally Participation Agreement. The Keydally Sale was financed by two $5 Million notes, one payable to Weinstein and one payable to Waite, with no down payment from Keydally.

308. Cymbidium double-sold a "100 percent participation interest" in 110 Smith Perry, along with another 840 of the AHP Trusts' Mortgage Loans (including the 298 Mortgage Loans in which 100 percent participation was concurrently conveyed to Keydally), to Magerick on July 25, 2023, per the Cymbidium/Magerick Participation Agreement dated October 7, 2022, but executed on July 25, 2023.

309. On December 20, 2023, Weinstein and Waite each cancelled their $5 Million loans to Keydally and exercised options to each acquire 50% of Keydally's participation interest in 110 Smith Perry and another 297 of the AHP Trusts' Mortgage Loans. Keydally was paid a "management fee" of 6,000 euros for their role as a straw buyer.

310. Oak Harbor abused the 2015A+/Oak Harbor LPOA on July 18, 2023, to fraudulently execute an assignment of 110 Smith Perry from the 2015A+ Trust to Magerick that was subsequently recorded on July 19, 2023.

311. In regard to 110 Smith Perry: (a) two parties, Magerick and Weinstein, which did not own 110 Smith Perry, double-pledged 110 Smith Perry as collateral for loans at Western Alliance and Banner; (b) Cymbidium, which was the party to the MLSARO and thereby held a security interest in 110 Smith Perry, nevertheless "purchased" 110 Smith Perry from Magerick, which had no legal title or interest therein (c) Cymbidium, also lacking title, nevertheless fraudulently double-sold 100% participation interests in 110 Smith Perry to both Keydally and Magerick; (d) Weinstein and Waite exercised options to acquire the straw buyer Keydally's 100% participation interest in 110 Smith Perry; and (e) Oak Harbor abused a LPOA to fraudulently transfer 110 Smith Perry from 2015A+ Trust to Magerick.

<u>11965 Cummings</u>.

312.   As collateral for the Cymbidium Loan, the AHP Trusts pledged to Cymbidium a mortgage loan secured by a property located at 11965 Cummings Road, Cato, N.Y. with an approximate amount due of $130,792.70.  (The pledged mortgage loan is referred to hereafter as "11965 Cummings").

313.   Magerick double-pledged 11965 Cummings to Western Alliance from October 6, 2022 through at least June 27, 2024, per Western Alliance's Borrowing Base Certificates dated October 6, 2022; November 16, 2022; December 29, 2022; January 30, 2023; March 30, 2023; April 28, 2023; May 26, 2023; June 30, 2023; January 3, 2024; March 19, 2024; April 24, 2024; June 11, 2024; and June 27, 2024.

314.   Weinstein, in his individual capacity, double-pledged 11965 Cummings to Banner from June 29, 2023, through at least December 31, 2023, per the "Banner Bank Tape" and Banner Borrowing Base Certificates dated September 30, 2023; October 30, 2023; and December 31, 2023.

315.   Cymbidium sold a "100 percent participation interest" in 11965 Cummings, along with another 840 of the AHP Trusts' Mortgage Loans to Magerick on July 25, 2023, per the Cymbidium/Magerick Participation Agreement dated October 7, 2022 but executed on July 25, 2023.

316.   Magerick sold 11965 Cummings, along with another 6 of the AHP Trusts' Mortgage Loans it had neither ownership interest nor a right to sell, to Automation Finance Reperformance Fund IV, LLC on August 31, 2023, for $532,288.60 pursuant to a Mortgage Loan Sales Agreement dated August 31, 2023. Even after 11965 Cummings was sold to apparent third-party Automation Finance Reperformance Fund IV, LLC, 11965 Cummings continued to be pledged to both Western Alliance and Banner.

317.   Atlantica abused the Atlantica LPOA, which had been revoked on October 23, 2023, on December 27, 2023, to fraudulently execute a Quitclaim Deed of 11965 Cummings from the AHP Servicing Trust to Magerick that was subsequently recorded on January 18, 2024.

318.   In regard to 11965 Cummings: (a) two parties, Magerick and Weinstein, which did not own 11965 Cummings, double-pledged 11965 Cummings as collateral for loans at Western Alliance; (b) Cymbidium, without title, nevertheless fraudulently sold a 100% participation interest in 11965 Cummings to   Magerick; (d) Magerick, without title, fraudulently sold 11195 Cummings to Automation Finance Reperformance Fund IV, LLC; and (e) Atlantica   abused a revoked LPOA to fraudulently transfer 11965 Cummings from AHP Servicing Trust to Magerick after 11965 Cummings was allegedly sold to Automation Finance Reperformance Fund IV, LLC.

45 Miller.

319.   As collateral for the Cymbidium Loan, the AHP Trusts pledged to Cymbidium a mortgage loan secured by a property located at 45 Miller Pl., Hemptstead, N.Y. with an approximate amount due of $336,296.85.  (The pledged mortgage loan is referred to hereafter as "45 Miller").

320.   Magerick double-pledged 45 Miller to Western Alliance from October 6, 2022, through at least January 3, 2024, per Western Alliance's Borrowing Base Certificates dated October 6, 2022; November 16, 2022; December 29, 2022; January 30, 2023; March 30, 2023; April 28, 2023; May 26, 2023; June 30, 2023; and January 3, 2024.

321.   Weinstein, in his individual capacity, double-pledged 45 Miller to Banner from June 29, 2023, through at least December 31, 2023, per the "Banner Bank Tape" and Banner Borrowing Base Certificates dated September 30, 2023; October 30, 2023; and December 31, 2023.

322.   Magerick "sold" 45 Miller, along with another 6 of the AHP Trusts' Mortgage Loans it had neither ownership interest nor a right to sell, to Automation Finance Reperformance Fund IV, LLC on August 31, 2023, for $532,288.60 pursuant to a Mortgage Loan Sales Agreement dated August 31, 2023. Even after 45 Miller was sold to apparent third-party Automation Finance Reperformance Fund IV, LLC, 45 Miller continued to be pledged to both Western Alliance and Banner.

323.    Atlantica abused the Atlantica LPOA on October 13, 2022, to fraudulently execute an assignment of 45 Miller from the AHP Servicing Trust to Atlantica that was subsequently recorded on Feb 8, 2023.

324.    Atlantica fraudulently executed an assignment on May 16, 2023, transferring 45 Miller from Atlantica to Magerick that was subsequently recorded on May 18, 2023.

325.    As to 45 Miller: (a) two parties, Magerick and Weinstein, which did not own 45 Miller, double-pledged 45 Miller as collateral for loans at Western Alliance and Banner; (b) Atlantica abused a LPOA to transfer 45 Miller to itself, and later transferred 45 Miller to Magerick, even though neither Atlantica nor Magerick had legal title or an interest in 45 Miller; and (c) Magerick, without title, then fraudulently sold 45 Miller to Automation Finance Reperformance Funds IV, LLC.

326.    Western Alliance was aware of the Bank Fraud Scheme through its communications with Weinstein and Oak Harbor.

327.    In addition to Western Alliance's knowledge as set forth above, Newbery sent a letter to Western Alliance's CEO Vecchione on February 13, 2024, informing him that,

> Hundreds of mortgage loans and real estate properties totaling tens of millions of dollars appear to have been pledged as collateral to Western Alliance Bank by Magerick, LLC.  However, Magerick did not own the majority of the assets and had no authority to pledge the assets.

328.    With this information, Bernard of Western Alliance requested an update from Weinstein to be executed and sent on Weinstein's company letterhead.

329.    Weinstein's response to Bernard doubled down on his misrepresentation, stating "[W]e have also secured sufficient collateral from the AHP [the AHP Trusts] transaction and other Magerick purchases to make certain that Western Alliance is fully secured."

330.    Western Alliance was fully aware of the structure that Weinstein and others orchestrated to defraud the AHP Trusts out of over $60 Million in Mortgage Loans.

331.     Despite Western Alliance's knowledge, it refused to take action that would rectify the theft of the Mortgage Loans, because to do so would jeopardize the collection of the money it lent to Magerick.  Instead, Western Alliance joined in and participated in the scheme.

## I.     WEINSTEIN FRAUDULENTLY PLEDGED THE AHP TRUSTS' MORTGAGE LOANS TO BANNER

332.     Weinstein obtained a Variable Rate Non-Disclosable Revolving Line of Credit from Banner beginning on October 26, 2018, or earlier.

333.     Pursuant to the Business Loan Agreement (Asset Based) between Banner and Weinstein ("Banner Loan Agreement"), Weinstein agreed that: "To secure payment of the Primary Credit Facility and performance of all other Loans, obligations and duties owed by Borrower to Lender, Borrower (and others, if required) shall grant to Lender Security Interest in such property and assets as Lender may require" and represented that:

> With respect to the Portfolios and Accounts, Borrower [Weinstein] represents and warrants to Lender: (1) Each Portfolio represented by Borrower [Weinstein] to be an Eligible Portfolio for purposes of this Agreement conforms to the requirements of the definition of an Eligible Portfolio; (2) All Portfolio and Account information listed on Borrowing Base Certificates and other schedules delivered to Lender will be true and correct, subject to immaterial variance . . .

334.     Pursuant to the Banner Loan Agreement, an Eligible Portfolio required the pledged loan to be owned by Weinstein, free and clear of any ownership interest, lien, security interest or claim of any person of entity and required Weinstein to represent:

> Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.
>
> Unless otherwise previously disclosed to Lender in writing, Borrower has

not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that in any way be superior to Lender's Security Interests and rights in and to such Collateral.

Borrower shall not, without the prior written consent of Lender, sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens).

335.    Pursuant to the Banner Loan Agreement, Weinstein represented:

Borrower, [Weinstein] represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of a of any Loan, and at times the indebtedness exists:

**Authorization.** Borrowers execution, delivery, and performance of this Agreement and all Related Documents do not conflict with, result in, a violation, or constitute a default under (1) any provision of any agreement or other instrument binding upon Borrower. . .

336.    As set forth herein, Weinstein pledged at least 231 Mortgage Loans on June 29, 2023, to Banner, despite the fact that he did not own them.

337.    Each time Weinstein submitted a borrowing base certificate, amended a loan agreement or took a disbursement from Banner, he committed bank fraud by misrepresenting his ownership of the Mortgage Loans.

338.    Each time Weinstein pledged the AHP Trusts' Mortgage Loans to Banner, he committed bank fraud by misrepresenting his ownership of the AHP Trusts' Mortgage Loans.

## J.    WEINSTEIN'S SERIAL MISREPRESENTATIONS THROUGH THE WIRES

339.    From on or about September 2022 until today, Weinstein, through Oak Harbor, Atlantica, and Magerick has made misrepresentations through the wires about the ownership of the AHP Trusts' Mortgage Loans and rights therein, in furtherance of

the scheme described herein to obtain the AHP Trusts' Mortgage Loans, misappropriate Mortgage Loan Proceeds, and obtain funds from financing secured by pledging (and, in many instances, double-pledging) the stolen Mortgage Loans to financial institutions while refusing to return the Mortgage Loans despite the payoff of the Cymbidium Loan.

340.    On September 18, 2022, prior to the execution of the $19.75 Million Cymbidium Loan, Weinstein wrote to Newbery via email, asking "Do you need to **borrow** $27 Million instead of $25 Million?" [Emphasis added.]

341.    On September 21, 2022, prior to the execution of the $19.75 Million Cymbidium Loan, Weinstein wrote to Newbery via email "Dear Jorge, As promised, please see attached are  suggested forms for  the **$25M loan documents** Jorge refers to below." [Emphasis added.]

342.    On September 28, 2022, prior to the execution of the $19.75 Million Cymbidium Loan, Weinstein wrote to Newbery via email advising that "Determination of **remaining loans that will be pledged for $20 Million**" was needed. [Emphasis added.]

343.    On September 29, 2022, prior to the execution of the $19.75 Million Cymbidium Loan, Weinstein wrote to Newbery via email confirming that the Mortgage Loans were collateral for the Cymbidium Loan, "You need to approve Schedule B's listing and acknowledge **it is security for the $20 Million**." [Emphasis added.]

344.    On December 29, 2022, Weinstein wrote to Hedberg at Western Alliance, via email, confirming and representing that the Cymbidium Loan was just that, a loan, and that Magerick, which was not the party to the MLSARO, had pledged the AHP Trusts' Mortgage Loans to Western Alliance. Weinstein stated

> Magerick loaned [the AHP Trusts] approximately $20 Million at a high interest rate secured by a very large pool of loans, which are in turn repledged to Western Alliance . . . [The AHP Trusts claim] it will be able to sell more than enough loans to pay back the secured loan to them, but I want to have a 'Plan B' in the event AHP fails to perform.

345.    On January 4, 2023, Weinstein wrote to Newbery via email again representing and confirming the Cymbidium Loan was just that, a loan, "Topics to Discuss: **Loan repayment.**" [Emphasis added.]

346.    On March 2, 2023, Weinstein emailed Yonel Devico of Crosby Capital again representing that the Cymbidium Loan was a loan, stating "the [Cymbidium] loan amount is approximately $22 Million, and interest rate is 16%."

347.    On July 21, 2023, Weinstein wrote to Newbery via email on one hand confirming the Cymbidium Loan was a loan, and on the other, for the first time taking the positions that "We" do not have to return the Mortgage Loans, and "We" own them, despite terms of the MLSARO and the Amendment. Weinstein stated, "I don't think you appreciate how difficult it has been to sell these assets and raise the money to retire your **debt.**" Further, in direct violation of the MLSARO and Amendment, Weinstein wrote, "[W]e own all these assets. **We have no obligation to give any of them back to you.**" [Emphasis added.]

348.    On July 28, 2023, Weinstein represented to Chai, via email, at Western Alliance that the Mortgage Loans had been purchased and that Western Alliance had a security interest in the same and represented that when the Cymbidium Loan was paid back, Western Alliance would retain that interest regardless of the MLSARO or Amendment:

> However, the recent "buy-out" of the AHP [Trusts'] assets at a huge discount has created confusion on asset allocation and basis. All of the money used to purchase AHP [Trusts'] loans will be recovered and remitted to [Western Alliance] in the next 60 days **so the question becomes what do we do with the collateral**. Is it released and the assets used by Magerick as it sees fit. (Magerick would use the funds undoubtedly to pay down the [Western Alliance] loan)? Is the collateral pledged to [Western Alliance] but at a valuation of zero? [Emphasis added.]

349.    The collateral Weinstein was referring to was and is the AHP Trusts' Mortgage Loans, which Cymbidium was and is contractually obligated to return to the AHP Trusts.

350.    On August 4, 2023, Weinstein wrote to Bob Switzer and Curley at Western Alliance, via email, again representing that "we" paid less for the Mortgage Loans:

> [T]the total purchase price in this model is artificial because the amount borrowed was only $65,000,000.  However, we used AHP's basis, even though **we paid less than that basis.**  As you can see **we are going to make a huge profit on this transaction** particularly because we're selling these assets off so quickly at or above projected price. [Emphasis added.]

351.    Weinstein fraudulently omitted the fact that the selling the Mortgage Loans off so quickly at above the projected price meant that the Cymbidium Loan would be paid off faster and the Mortgage Loans returned to the AHP Trusts sooner.   The representation that Magerick was going to make a huge profit on the transaction was and is untrue. According to a recent audit, Magerick did report an eight-figure profit which was largely the result of Magerick's theft of AHP Trusts' Mortgage Loans, which the audit also revealed made up the majority of Magerick's assets.

352.    On August 16, 2023, Weinstein wrote to Newbery via email again confirming the Cymbidium Loan was a loan: "Topics: Retirement of loan."

353.    On September 11, 2023, Weinstein wrote to Newbery via email confirming a reconciliation of the Cymbidium Loan was necessary and that the AHP Trusts were entitled to the return of the AHP Trusts' Mortgage Loans, upon satisfaction of the Cymbidium Loan.

> It is my goal to complete a reconciliation and part ways amicably this week. There is a considerable shortfall, but hopefully we can reach an agreement on what we keep and **what we return** and sign a mutual release. [Emphasis added.]

354.    On September 20, 2023, Weinstein wrote to Newbery that a reconciliation of the Cymbidium Loan was necessary and that the Trusts were entitled to the return of the AHP Trusts' Mortgages: "We have identified a group of loans we could sell that would resolve the remaining **obligation and send back a lot of your loans."** [Emphasis added.]

355.    On October 16, 2023, Weinstein wrote to Western Alliance's Smith, via email, confirming that more of the AHP Trusts' Mortgage Loans were being pledged to Western Alliance, despite the terms of the MLSARO. "[W]e have another large file of AHP [Trusts'] loans where we're trying clear exceptions this week and pledge to [Western Alliance]."

356.    On October 27, 2023, Weinstein wrote to Newbery via email again confirming that the Cymbidium Loan was a loan, and the AHP Trusts were entitled to return of their Mortgage Loans and the Mortgage Loans Proceeds on repayment thereof. The only outstanding issue as of October 27, 2023, was the reconciliation:

> Enclosed as promised please find the promised reconciliation.  Please note that it understates the expenses and insurance (only calculated through September 30), doesn't count interest on the Keydally note, and doesn't include money collected on the SCLs for the past year (assuming you exercise the put-back on January 1.  It overstates the loan putbacks and counts the $2 Million obligation that will be expunged on the put-back.  Bottomline: I think you owe us between $1.75 and $2.0 to resolve the issues, and we can pick out some loans to close the gap.

357.    The reconciliation referred to in ¶356 reflected an Outstanding repurchase price of $281,612.10, although this neglected to include multiple credits which would have resulted in an overpayment of the Cymbidium Loan. Further, millions of dollars in "Other items" such as $300,358.57 for non-existent insurance and other unrelated and unauthorized items were added in to inflate the payoff amount of the Cymbidium Loan.

358.    In the October 27, 2023, correspondence in ¶356, Weinstein was referring to the AHP Trusts owing an amount on the Repurchase Price/Payoff of the Cymbidium Loan and was suggesting that the AHP Trusts pay that alleged amount owed to Cymbidium by assigning certain of the AHP Trusts' Mortgage Loans to Cymbidium, with the rest of the Mortgage Loans to be returned to the AHP Trusts consistent with MLSARO and Amendment.  Weinstein fraudulently omitted that the Mortgage Loans had already been assigned or pledged to Western Alliance, Banner, Cymbidium, Magerick, Atlantica, Keydally, Weinstein, Waite, and others.

359.    On August 6, 2024, in a verified complaint filed in Superior Court of New Jersey, Ocean County at Case No: OCN-L-2937-23, Weinstein represented on behalf of Magerick, which the not a party to either the MLSARO or the Amendment, that the Cymbidium Loan was a loan, "When AHP [the AHP Trusts] defaulted on the repurchase obligation, the Cymbidium Agreement was amended on or about March 15, 2023, which resulted in AHP Trust Servicing **owing a debt to Cymbidium**." [Emphasis added.] The verified complaint continued, "Plaintiff [Magerick] made the entire payment in form of a reduction from the outstanding balance owed by Defendant AHP Trust Servicing to Plaintiff."

## K.    THE INSURANCE FRAUD SCHEME.

360.    In or about 2021, Weinstein, Land Home, Oak Harbor and Magerick devised a plan to bill homeowners for insurance that was never intended to be procured.

361.    Upon information and belief, Max Diehl ("Diehl") of Rice Insurance, Shaun Shenouda of SES Risk Solutions, and representatives of Land Home agreed to participated in Insurance Scheme with Weinstein and Oak Harbor.

362.    To give the scheme a veil of credibility, Oak Harbor purchased a property policy from Lloyds of London. However, the property policy states that "Coverage hereunder is limited to properties with an insured interest (Loan or Ownership) of USD150,000 above." Any home with a value of $150,000 or less was not covered by any property insurance, even though consumers and the AHP Trusts were charged for it.  Claims for these lower value homes, as well as claims under $150,000 on properties with values over $150,000, were to be covered by Oak Harbor through what came to be known as the "self-insurance program".

363.    The self-insurance never existed. Oak Harbor is not a licensed insurer but nevertheless charged and continues to charge homeowners and the AHP Trusts for insurance which does not exist.

364.    The Insurance Scheme operated and continues to operate as follows:

a.  First, Land Home bills consumers monthly for non-existent insurance premiums under the guise that Land Home is procuring force placed insurance on the consumer's home; and

b.  Second, the funds collected for the non-existent insurance premiums flow directly from consumers to Land Home and ultimately to Oak Harbor. The September 2, 2022 "Standard Operating Procedure Between Land Home/SES/Oak Harbor/Rice" states that: "Any monies received from borrower will be posted to corporate advance balance and remitted to Oak Harbor."

c.  Third, claims under $150,000 were to be paid from the anticipated savings achieved by not paying for real insurance coverage.  Consistent with a February 16, 2022, "Notification and Acknowledgement" signed by Oak Harbor's Basile and acknowledged by Goldman Sachs Bank USA by Benjamin Case, Managing Director at Goldman Sachs: ""The New policies provide essentially the same coverage as the prior policies with two primary exceptions: (1) The deductible for a claim for damages has been raised to $150,000; and (2) Flood insurance is no longer provided. . The new policies will allow Oak Harbor to reduce the managed entities' annual insurance premiums by approximately $1 million annually which savings will be directed into a claims account to be self-administered by Oak Harbor Capital and Sedgwick Claims Management Services, Inc to handle claims of less than the $150,000 deductible. The $1 million in annual savings will be used dollar for dollar to pay insurance claims and nothing else."  This is unlike a licensed insurer, which would pay claims from premiums collected.

d.  Fourth, claims under $150,000 were to be administered by Ponte, an unlicensed claims adjuster, per the September 9, 2022, Standard Operating Procedure.

365.  Per the draft Claims Procedures email from Rice Insurance to Weinstein on April 13, 2022, Sedgwick Claims Management Services, Inc., a licensed claims adjuster, was to be part of claims administration. However, an August 17, 2023, email from

Constantine Pavlakis ("Pavlakis") of Land Home to Roy Lee Williams ("Williams"), Claims Department Manager at Rice Insurance, stated:

> **The investor does not believe that Sedwick is needed.** Cliff, and a couple of other folks have not been able to convince the investor to the contrary." [Emphasis added.]

366.    In response to the Pavlakis email of August 17, 2023, Williams responded:

> The main concern I have in not using Sedgwick (or some other third-party adjusting firm) is that there is the potential for lawsuits related to actions land home or oak harbor capital take while acting as an adjuster. That type of lawsuit would go towards the Adjusters professional liability which isn't a type of policy available to land home or oak harbor. I only mention it since last I talked to the borrower on this potential claim she mentioned getting an attorney involved. Obviously none of us want that.

367.    The scenario described in ¶¶365-366 had previously arisen during a December 28, 2022, email exchange, in which Land Home's Pavlakis declared to Rice's Williams on December 28, 2023 that "**LHFS [Land Home] is a loan servicer, not a licensed insurance adjustor.**" [Emphasis added.]

368.    The Insurance Scheme includes the AHP Trusts' Mortgage Loans or properties secured by those Mortgage Loans. Per the TIMS (Total Insurance Management System) Report as of June 20, 2023, 65% of the 2,289 "insured properties" had values under $150,000. Thus, in addition to the AHP Trusts being charged on 703 homes for property insurance which did not exist, hundreds more non-AHP Trusts homeowners were also being fraudulently charged for property insurance which did not exist. In addition, hundreds of homeowners with property values over $150,000 were being unlawfully charged for insurance by a non-insurance company.

369.    On July 21, 2023, Ponte, Default Consultant, and Director of the National REO Brokers Association wrote to Weinstein at others at 9:46 A.M., asking:

> We should set-up a call on this. The punchline here is that we are not charging our self-insurance for any of the AHP [Trusts'] loans that are serviced at AHP and some at Land Home. The goal is to charge insurance on each of the [AHP Trusts'] properties (entire portfolio) so we can charge back to the AHP [Trusts].

370.    Later that same day, Weinstein emailed Newbery at 3:25 P.M. representing that the AHP Trusts were liable for the costs of the non-existent insurance that was never procured by Land Home, Oak Harbor, Cymbidium, Magerick or anyone else, stating "[W]e put a plug number of $1,000,000 for the insurance we have had to put in place."

371.    In addition to the fraudulent nature of charging for non-existent insurance, Cymbidium, Weinstein, and Oak Harbor ultimately used the fraudulent insurance charges to attempt to increase the amount the AHP Trusts owed on the Cymbidium Loan and using the same as the guise to argue that the AHP Trusts had not satisfied the terms of the Cymbidium Loan.

372.    On August 22, 2023, Newbery wrote to reconcile the balance of the Cymbidium Loan, stating "I am not including the insurance as we paid for force placed insurance when borrower's coverage was not in place.  Please advise what you need to verify this."

373.    On September 11, 2023, a home at 1815 Myrtle Street in Erie, PA 16502 ("Myrtle Street") was severely damaged by fire. One of the AHP Trusts' Mortgage Loans pledged as collateral to Cymbidium for the Cymbidium Loan was secured by the mortgage on Myrtle Street.

374.    On September 14, 2023, Weinstein wrote Newbery in furtherance of his scheme to force the AHP Trusts to pay for insurance that did not exist, stating "Western Alliance and Magerick require insurance on the properties regardless of whether you have insurance on the property."

375.    Regardless of the alleged requirements of force placed insurance by Magerick or Western Alliance, as set forth in Weinstein's September 14, 2023, email, Magerick, Land Home, Oak Harbor, and Weinstein never obtained insurance despite representations to the AHP Trusts and homeowners.

376.    On September 15, 2023, Newbery responded, confirming that AHP Servicing, on behalf of AHP Trusts, had insured properties where the homeowner's insurance had lapsed and, if the representations concerning Land Home or Magerick

obtaining insurance were accurate, the parties would be entitled to a refund in regard to the double-insuring:

> On the insurance, I expect that AHP, Land Home and SN insured everything that was serviced.  If the properties were double-insured, one of us can request a refund.  I look forward to receiving detail of your insurance payments and evidence so that we can review and take appropriate action.

377.    On September 23, 2023, Weinstein, in furtherance of the Insurance Scheme, wrote to Newbery via email, in regard to alleged insurance expenses the AHP Trusts owed Cymbidium, "For our discussion tomorrow The [sic] number is not $1,000,000 but is 300K."  Weinstein included in the email a document titled "2023-08 **Self Insurance Invoice** 9.20.23_AHP." The attachment represented that the AHP Trusts allegedly owed Cymbidium $300,358.57 for "self-insurance" because no actual insurance policies were ever procured by Land Home which was servicing some of the AHP Trusts' Mortgage Loans.  The attachment included a charge of $23.99 monthly for insurance coverage for Myrtle Street for the period of March 1, 2023, through September 30, 2023, inclusive of September 11, 2023, the day on which the Myrtle Street Property was severely damaged by fire.

378.    On October 9, 2023, Weinstein, in furtherance of the Insurance Scheme, wrote via email, in response to Newbery's request for evidence of insurance: "The insurance agent will provide a cover letter pursuant to a call I just had with them."

379.    When Weinstein sent his October 9, 2023, email set forth in the immediately preceding paragraph, he was fully aware that no insurance existed, including on the Myrtle Street Property. On the same day, Weinstein emailed Diehl regarding Newbery's request:

> This is a problem. I talked to Troy briefly on this on Friday.  Can we have a brief call, the three of us, no more than 15 minutes to describe what we're looking for?

380.    On October 12, 2023, Weinstein continued his serial misrepresentations regarding insurance, including coverage on the Myrtle Street Property, stating "Trying to get something issued today by our insurance agent."

381.    On October 13, 2023, Weinstein again confirmed the lack of insurance and by extension, his falsehoods, by stating "FYI. I'm pushing. See below." The "See below" was in reference to a forwarded email from Diehl who stated,

> [W]e just got word back from SES and they mentioned that due to the large schedule of loans within the list we provided them, they will need around 5-7 business days to run through the entire list to provide coverage confirmation at each property. Constantine [Pavlakis] and I are working on getting it all sort out, however, it will take a little bit of time to complete.

382.    When Weinstein forwarded the email in the immediately preceding paragraph on October 13, 2023, he was fully aware that neither Cymbidium, Land Home, Oak Harbor nor any affiliated entity had secured insurance for the AHP Trusts' Mortgage Loans, including for the Myrtle Street Property.

383.    On October 19, 2023, Weinstein, forwarded Newbery an email from Diehl stating, "[R]egarding the list of loans or AHP [the AHP Trusts], as previously mentioned, due to the amount of loans need to be verified in SES's system it will take a bit of time."

384.    When Weinstein forwarded the email in the immediately preceding paragraph on October 13, 2023, he was fully aware that neither Cymbidium, Land Home, Oak Harbor nor any entity had secured insurance on the Mortgage Loans, including for the Myrtle Street Property, or any of the other properties securing the AHP Trusts' Mortgage Loans despite Cymbidium's attempts to charge the AHP Trusts for the non-existence insurance.

385.    A homeowner being charged premiums for non-existent insurance contacted Land Home in October 2023 to request proof of insurance. A "Portfolio Status Report" dated October 4, 2023, reflected building coverage of $88,065, a premium amount of $95.00, an expiration date of December 1, 2023, and identified the insurance

company as "Certain Underwriters at Lloyds." However, in reality, the premium amount of $95.00 was for non-existent insurance and the homeowner had no coverage.

386.    On December 19, 2023, Melissa Stawicki ("Stawicki"), the REO Manager at AHP Servicing wrote, via an email to Joe LaBruna ("LaBruna") and Jose Flores ("Flores"), employees of Land Home, regarding the Myrtle Street Property:

> The agent notified us of a fire that occurred on 9/11.  Due to such we need to proceed with filing an insurance claim.  LHFS [Land Home] should have insurance currently in place to proceed with such.  I have listed summery of the incident/reason as well as agent contact information and attached reports/pictures.  Please confirm receipt as well as confirm once claim is filed, thank you.

387.    On January 2, 2024, Stawicki wrote to LaBruna and Flores and others at Oak Harbor regarding the Myrtle Street Property: "I just wanted to follow up to see if this request has been reviewed."  Stawicki received no response.

388.    On January 9, 2024, Stawicki wrote to LaBruna and Flores and others at Oak Harbor regarding the Myrtle Street Property: "Can someone please provide me with an update on this request?"  Stawicki received no response.

389.    On January 18, 2024, Stawicki wrote to LaBruna and Flores and others at Oak Harbor regarding the Myrtle Street Property: "Can someone please advise if a claim was filed for the fire damage or if one will be filed?"  Stawicki received no response.

390.    On January 19, 2024, Flores wrote to Stawicki, LaBruna and others at Oak Harbor regarding the Myrtle Street Property: "We are still waiting on a response and have followed up."

391.    On February 26, 2024, Stawicki wrote to LaBruna and Flores and others at Oak Harbor regarding the Myrtle Street Property:

> "It has been a while since my last f/u for status, 1/18/24.  If you could please advise it would be greatly appreciated."

Stawicki received no response.

392.    On March 26, 2024, Stawicki wrote to LaBruna and Flore and others at Oak Harbor regarding the Myrtle Street Property:

It has been a month since my last follow up. If you could please advise and ensure you reply to all would be greatly appreciated, thank you.

393.    On March 26, 2024, Flores finally responded regarding the Myrtle Street Property and asked Jeanne Drake, another Land Home employee: "Hi Jeanne, Any update on this?"

394.    On March 26, 2024, LaBruna wrote to Stawicki regarding the Myrtle Street Property now claiming it was Oak Harbor's issue, despite the fact that Cymbidium was the party to the MLSARO, "Hi Melissa, Please contact Oak Harbor with any questions, I show this property under their account."

395.    Neither Weinstein, Magerick, Cymbidium, Land Home nor Oak Harbor procured insurance for any of the AHP Trusts' Mortgage Loans, and all were aware of the same at the time the misrepresentations set forth above were made.

396.    Weinstein confirmed the "self-insurance program" that Oak Harbor, Cymbidium, Magerick and Land home were running by telling homeowners and the AHP Trusts that the properties securing the Mortgage Loans were insured.

397.    In spite of Weinstein's assurances, Oak Harbor and its affiliates refused to pay claims when submitted because no actual insurance policy existed, and consumers and AHP Trusts were being fraudulently charged for insurance that did not exist. The fraudulent charges were (and are) being added to borrowers' monthly statements, payoff statements, bankruptcy court claims and foreclosure bids.

398.    No insurance documents were drafted or created.

399.    Consumers and the AHP Trusts had no contractual rights against any insurance company in return for the premiums that were charged.

## FIRST CLAIM FOR RELIEF
## VIOLATION OF CAL. PENAL CODE § 496(a)
### (Against Oak Harbor, Land Home, Atlantica, Western Alliance, Magerick, Waite and Weinstein)

400.    The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

401.    Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, Western Alliance and Waite engaged in theft, concealment and withholding of the Mortgage Loans, Mortgage Loan Proceeds and Mortgage Loan Files in violation of Cal. Penal Code section 496(a), which states,

> Every person who buys or receives property that has been stolen or that has obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail not exceeding one year.

402.    Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, Western Alliance and Waite received and/or continue to hold the AHP Trusts' stolen property, the Mortgage Loans, Mortgage Loan Proceeds and Mortgage Loan Files or property that has been obtained in a manner constituting theft.

403.    Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, Western Alliance, and Waite knew and continue to know that the AHP Trusts' property was stolen or obtained in a manner constituting theft or extortion. Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, and Waite knew the property was stolen or obtained in a manner constituting theft or extortion because they orchestrated and perpetrated the theft. Western Alliance knew that the AHP Trusts' property was stolen or obtained in a manner constituting theft or extortion because the AHP Trusts wrote correspondences to Western Alliance on November 27, 2023 and February 13, 2024 advising them of the theft/extortion; and because Western Alliance was served with a subpoena related to the Washington Lawsuit and produced documents which would have led a reasonable

COMPLAINT

person to the conclusion that the AHP Trusts' property was stolen or obtained in a manner constituting theft or extortion.

404.   Despite this, Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, Western Alliance and Waite continue to withhold the stolen assets and funds from the AHP Trusts in violation of California Penal Code section 496(a).

405.   Pursuant to Cal. Penal Code section 496(c) the AHP Trusts are entitled to recover three times the amount of its actual damages, costs of suit, and reasonable attorneys' fees.

406.   In violation of Cal. Penal Code section 496(a) Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, Western Alliance and Waite stole and refuse to return the Mortgage Loans and the Mortgage Loan Proceeds from the AHP Trusts.

407.   As a further proximate result of the Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, Western Alliance and Waite's violation of Cal. Penal Code section 496(a) the AHP Trusts have been involved in extensive litigation regarding these matters for which the AHP Trusts have incurred attorneys' fees and costs.

**<u>SECOND CLAIM FOR RELIEF</u>**
**BREACH OF FIDUCIARY DUTY**
**(Against Oak Harbor, Land Home and Western Alliance)**

408.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

409.   In consideration for managing the enumerated Mortgage Loans and acting on behalf of Cymbidium to execute the terms of the MLSARO and Amendment, the AHP Trusts executed the Oak Harbor LPOAs naming Oak Harbor as attorney-in-fact.

410.   As the attorney-in-fact for the AHP Trusts, Oak Harbor owed a fiduciary duty to the AHP Trusts to, *inter alia*, act in the AHP Trusts' best interests and adhere to the limited powers granted to it by the Oak Harbor LPOAs.

411. In spite of the obligations bestowed upon Oak Harbor, as a fiduciary, Oak Harbor breached those duties by, *inter alia*:

    a. assigning the Mortgage Loans from the AHP Trusts to Magerick and other affiliates for no consideration, or below-market consideration;

    b. assigning the Mortgage Loans from the AHP Trusts to Magerick and other affiliates to assist Magerick and Weinstein in obtaining fraudulent loans;

    c. profiting from its breaches of fiduciary duty; and

    d. participating in the Insurance Scheme described herein.

412. As the custodian of Mortgage Loans, Western Alliance owed a fiduciary duty to the AHP Trusts to, *inter alia*, act in the AHP Trusts' best interests and not take any action absent the AHP Trusts' instruction without the signed release required from the AHP Trusts.

413. In spite of the obligations bestowed on Western Alliance, as a fiduciary, Western Alliance breached those duties, by *inter alia*:

    a. allowing Magerick to pledge the AHP Trusts' Mortgage Loans as collateral to Western Alliance for a loan to Magerick;

    b. releasing the Mortgage Loan Files to third parties without the required releases from the Trusts;

    c. refusing to return the Mortgage Loan Files to the AHP Trusts;

    d. continuing to receive and benefit from the Mortgage Loans Proceeds; and

    e. providing direction and guidance to Oak Harbor in regard to creating documents to steal the Mortgage Loan form the AHP Trusts.

414. As the servicer of the Mortgage Loans, Land Home, owed and owes a fiduciary duty to the AHP Trusts to, *inter alia,* act in the AHP Trusts' best interests, by

COMPLAINT

*inter alia* remitting funds to the AHP Trusts as they are collected, protecting the physical security of the collateral securing the Mortgage Loans by maintaining adequate hazard and other forms of insurance, providing periodic reports on the status of the Mortgage Loans it is servicing to the AHP Trusts, and otherwise taking appropriate measures to protect the value of the Mortgage Loans.

415.    In spite of the obligations bestowed upon Land Home, as fiduciary, Land Home breached those duties by:

a.       failing to adequately protect the security of the collateral securing the Mortgage Loans by procuring appropriate insurance;

b.       failing to remit the Mortgage Loans Proceeds to the AHP Trusts;

c.       failing to provide the AHP Trusts any information concerning the Mortgage Loans or Mortgage Loan Proceeds;

d.       remitting the Mortgage Loan Proceeds to Magerick, Oak Harbor, Western Alliance and others;

e.       participating in the Insurance Scheme described herein; and

f.       refusing to transfer servicing of the Mortgage Loans.

416.    As a result of the breaches of fiduciary duty committed by Oak Harbor, Western Alliance and Land Home, the AHP Trusts have been divested of and deprived possession of the Mortgage Loans, Mortgage Loan Proceeds, and Mortgage Loan Files.

417.    Oak Harbor, Land Home and Western Alliance's actions were intentionally done with malice, oppression, and fraud such that the Oak Harbor, Western Alliance and Land Home are liable for punitive damages in an amount to punish and make an example of Oak Harbor, Western Alliance and Land Home.

418.    These breaches of fiduciary duty were malicious, oppressive and fraudulent in the sense of Ca. Civil Code § 3294, and so Plaintiffs are entitled to exemplary and

punitive damages. These breaches of fiduciary duty were further committed with intent to vex, injure, and annoy, and with conscious disregard of the Plaintiffs' rights.

419.    The conduct constituting malice, oppression, and fraud was committed or authorized by one or more officers, directors, or managing agents of Oak Harbor, Land Home and Western Alliance, who acted on behalf of Oak Harbor, Land Home and Western Alliance, or knew of the conduct and either adopted or approved that conduct after it occurred.

### THIRD CLAIM FOR RELIEF
### NEGLIGENCE
### (Against Oak Harbor Capital, Land Home and Western Alliance)

420.    The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

421.    In consideration for managing the Mortgage Loans and acting on behalf of Cymbidium to execute the terms of the MLSARO and Amendment, the AHP Trusts executed the Oak Harbor LPOAs naming Oak Harbor as attorney-in-fact.

422.    As the attorney-in-fact for the AHP Trusts, Oak Harbor owed a duty to the AHP Trusts to act in their best interests, with diligence, and to adhere to the limited powers granted to it by the limited power of attorneys consistent with those obligations reasonably required of an attorney-in-fact.

423.    In spite of the obligations bestowed upon Oak Harbor, Oak Harbor breached those duties, by, *inter alia*:

> a.    assigning the Mortgage Loans from the AHP Trusts to Magerick and other affiliates for no consideration, or below-market consideration;

> b.    assigning the Mortgage Loans from the AHP Trusts to Magerick and others in violation of the Oak Harbor LPOAs;

> c.    assigning the Mortgage Loans from the AHP Trusts to Magerick and other affiliates to assist Magerick and Weinstein in obtaining fraudulent loans;

d.    profiting from their negligence; and

e.    otherwise was and is acting in a manner inconsistent with the standard of care required of an attorney-in-fact.

424.    As the custodian of Mortgage Loans, Western Alliance owed and owes a duty to the AHP Trusts to act in their best interests and adhere to the duties of a custodian consistent with the Bailee letters and consistent with those obligations reasonably required of a custodian of mortgage loans.

425.    In spite of the obligations bestowed on Western Alliance, Western Alliance breached those duties by, *inter alia*:

a.    allowing Magerick to pledge the AHP Trusts' Mortgage Loans to Western Alliance as collateral for a loan to Magerick;

b.    releasing the Mortgage Loan Files to third parties without the required releases from the AHP Trusts;

c.    refusing to return the Mortgage Loan Files to the AHP Trusts;

d.    continuing to receive and benefit from the Mortgage Loans Proceeds; and

e.    otherwise was and is acting unreasonably, negligently, and in a manner inconsistent with requirements and expectations of a custodian of the Mortgage Loan Files to the detriment of the AHP Trusts.

426.    As the servicer of the Mortgage Loans, Land Home, owed and owes a duty to the AHP Trusts to, *inter alia,* act in the AHP Trusts' best interests, remit funds to the AHP Trusts as they are collected, protect the physical security of the collateral securing the Mortgage Loans by maintaining adequate hazard and other forms of insurance, and provide periodic reports on the status of loans it is servicing to the AHP Trusts.

427.    In spite of the obligations bestowed upon Land Home, Land Home breached those duties by, *inter alia*:

    a.      failing to adequately protect the security by securing appropriate insurance;

    b.      failing to remit the Mortgage Loans Proceeds to the AHP Trusts;

    c.      failing to provide the AHP Trusts any information concerning the Mortgage Loans or Mortgage Loan Proceeds;

    d.      remitting the Mortgage Loan Proceeds to Magerick, Oak Harbor, Western Alliance and others; and

    e.      otherwise negligently acting in a manner inconsistent with those obligations required of a servicer of mortgage loans and, in particular, the Mortgage Loans.

428.    As a result of the negligence and breach of duty, by Oak Harbor, Land Home and Western Alliance, the AHP Trusts have been divested of hundreds of Mortgage Loans and the Mortgage Loan Proceeds and Mortgage Loan Files.

## FOURTH CLAIM FOR RELIEF
### VIOLATION OF 18 U.S.C. § 1962(c) – R.I.C.O.
### (Magerick, Oak Harbor, Weinstein, Atlantica, Western Alliance and Land Home)

429.    The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

430.    The AHP Trusts bring this claim alleging violation of the Organized Crime Control Act of 1970, 18 U.S.C. §§ 1962 *et seq.*, Racketeer Influenced and Corrupt Organizations Act. ("RICO Act"), and 18 U.S.C. 1964(c) ("RICO").

431.    Each of the Defendants, Magerick, Weinstein, Oak Harbor, Atlantica, Land Home, and Western Alliance is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

432.    The AHP Trusts are also "persons" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

433.   Section 1962(c) of the RICO Act provides that "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or activities which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . ." 18 U.S.C. § 1962(c).

<u>Overview of the Pattern of Racketeering Activity</u>

434.   The Defendants Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium violated 18 U.S.C. § 1962(c), by agreeing to join and participating in the Enterprise described herein by agreeing to:

a.   steal the Mortgage Loans from the AHP Trusts as set forth herein at ¶¶70-86, 100-154;

b.   fraudulently abuse LPOAs to allegedly transfer ownership of the Mortgage Loans in violation of the LPOAs and the AHP Trusts' rights therein as set forth herein at ¶¶100-154, 231-331;

c.   fraudulently pledge Mortgage Loans not owned by Magerick or Weinstein to Western Alliance and Banner to obtain funds for Magerick and Weinstein as set forth herein at ¶¶70-86, 155-185, 322-338;

d.   perpetrate the Insurance Scheme through the mails and wires set forth herein at ¶¶360-399;

e.   use the stolen Mortgage Loan Proceeds and the Insurance Scheme Proceeds to continue the scheme and service the debt on the financing obtained from Western Alliance and Banner; and

f.   use the Mortgage Loan Proceeds and the Insurance Scheme Proceeds to continue to enrich themselves and their investors.

435.   The Enterprise, as described below, violated RICO, in connection with a scheme devised, conducted and/or participated in by Magerick, Oak Harbor, Atlantica, Land Home and Weinstein, along with Cymbidium, later joined by Western Alliance, who were associated with an unlawful Enterprise dealing in interstate commerce; and each of whom conducted or participated, directly or indirectly, in that Enterprise through

a pattern of racketeering activity by committing mail and wire fraud, bank fraud, insurance fraud, transportation of stolen money and money laundering as described herein and in violation of:

      a.    18 USC § 1341 (Mail Fraud);

      b.    18 USC § 1343 (Wire Fraud);

      c.    18 USC § 1033 (Insurance Fraud);

      d.    18 USC § 1344 (Bank Fraud);

      e.    18 USC § 2314 (Transportation of Stolen Money);

      f.    18 U.S.C. § 1956 (Money Laundering); and

      g.    potentially other predicate acts.

436.   Later in the scheme, but no later than December of 2023, Western Alliance joined the Enterprise and took overt acts in furtherance of the Enterprise's goals, while having full knowledge of the purpose and goals of the Enterprise.

<u>The Role of Each Enterprise Member in the Enterprise</u>

437.   Cymbidium's role as a member of the Enterprise was to steal the Mortgage Loans from the AHP Trusts and cause the Mortgage Loans to be transferred by Oak Harbor and Atlantica to Magerick, Western Alliance, Waite, Weinstein and at times back to Cymbidium.

438.   Atlantica's role was to abuse the LPOA drafted by Weinstein and Oak Harbor to fraudulently transfer apparent (not actual) ownership of the Mortgage Loans to itself, Magerick, Western Alliance, Waite, Weinstein and others.

439.   Magerick's role, with the assistance of Oak Harbor and Weinstein, and later Western Alliance, was to fraudulently represent that it owned the Mortgage Loans and obtain financing from Western Alliance.

440.  In addition to the foregoing, Magerick is the vehicle, along with others, including Weinstein, Waite and Western Alliance, that continues to reap the benefits of the Mortgage Loan Proceeds.

441.  According to a recent audit, Magerick generated an eight-figure profit which was largely the result of Magerick's theft of the AHP Trusts' Mortgage Loans.

442.  Oak Harbor's role was to abuse the Oak Harbor LPOAs drafted by Weinstein and Oak Harbor, to fraudulently transfer apparent (not actual) ownership of the Mortgage Loans to Magerick, Western Alliance, Weinstein, Waite and others.

443.  In addition to the foregoing, Oak Harbor assisted Magerick and Weinstein in obtaining financing through fraud from Western Alliance and Banner respectively.

444.  Land Home, as the ostensible loan servicer of the Mortgage Loans, assumed a role as a member of the Enterprise to:

> a.    collect the Mortgage Loan Proceeds through monthly statements and notices sent through the mails and wires with the intention of withholding the Mortgage Loan Proceeds from the AHP Trusts even after the AHP Trusts had repurchased the Mortgage Loans and the collected proceeds rightfully belonged (and continue to belong) to the AHP Trusts;

> b.    collect "insurance premiums" from consumers for insurance that does not exist; and

> c.    charge customers directly, via billing statements, for the non-existent insurance through statements sent monthly through the mails and wires.

445.  The Mortgage Loan Proceeds and the Insurance Scheme Proceeds which Land Home generates, in part, and collects, assists the Enterprise in maintaining the financing from Western Alliance and Banner that the Enterprise requires to perpetuate its ongoing scheme to convert stolen Mortgage Loans into cash and collateral for additional sources of financing, and to enrich the members of the Enterprise and its investors.

446.  Weinstein's role is to act on his behalf as well as on behalf of Cymbidium, Magerick, Atlantica, and Oak Harbor in order to perpetrate the frauds set forth herein, including obtaining personal loans from Banner by double-pledging the AHP Trusts' Mortgage Loans.

447.  Weinstein directs the activities of Cymbidium, Magerick, Atlantica, and Oak Harbor; sometimes executing the acts of fraud personally, on his own behalf and at times on behalf of Cymbidium, Magerick, Atlantica, and Oak Harbor, and at other times instructing the employees of Cymbidium, Magerick, Atlantica, and Oak Harbor to do so.

448.  In his role in the Enterprise to obtain loans through double-pledged collateral that neither he nor Magerick owned, Weinstein further advanced the scheme of the Enterprise by making fraudulent misrepresentations through the mails and wires set forth herein at ¶¶339-359.

449.  Western Alliance's role was and is to continue to hold the AHP Trusts' Mortgage Loan Files hostage and profit from the Mortgage Loan Proceeds, advise Weinstein and the other Defendants regarding how to continue and perpetuate the scheme and protect the other Defendants from the AHP Trusts' efforts to regain its assets, despite Western Alliance's knowledge that Magerick is not the owner of the Mortgage Loans.

450.  Although Western Alliance may at one time have been a victim of the Bank Fraud Scheme, when it learned of the issues with its collateral, including that Magerick did not own the Mortgage Loans, which had never been transferred or assigned to Magerick, Western Alliance moved to protect its own interests, joined the Enterprise and provided direction and guidance to Weinstein, Oak Harbor, Magerick, Cymbidium and Atlantica regarding the creation of  documentation to make it appear Magerick owned the Mortgage Loans in order to conceal the fraud and true nature of the ownership of the AHP Trusts' Mortgage Loans.

451.  In spite of Western Alliance's knowledge that Magerick does not and never did own the Mortgage Loans, Western Alliance continues to hold the Mortgage Loan

Files, receives a portion of the Mortgage Loan Proceeds as interest and principal on the fraudulent Western Alliance/Magerick Loan, refuses to return the Mortgage Loan Files to the AHP Trusts to further its own and the Enterprise's interests in extending the Western Alliance/Magerick Loan, and in monetizing the Mortgage Loans that belong to the AHP Trusts.

Pattern of Racketeering Activity (Predicate Acts)

452. In the weeks immediately before to the effective date of the MLSARO on October 7, 2024, Weinstein, on behalf of the entire Enterprise, made false representations to Newbery regarding his intended performance (or non-performance) under the MLSARO, which amounted to promissory fraud. For example, on September 29, 2022, Weinstein wrote in an email to Newbery, "You need to approve Schedule B's listing and acknowledge it is security for the $20 Million." This was a misrepresentation; Weinstein and Enterprise had no intention of simply using assets in Schedule B as security for the Cymbidium Loan only.

453. The day prior to effective date of the MLSARO, Weinstein caused Magerick to pledge the Category B Mortgage Loans as security to Western Alliance for a loan to Magerick (not Cymbidium), thus Weinstein and the Enterprise contemplated that the Mortgage Loans would be transferred from Cymbidium from the outset. Additionally, Weinstein and Cymbidium, on behalf of the Enterprise, concealed their true intentions in their negotiations with the AHP Trusts, which intentions were to transfer the Mortgage Loans to other entities controlled by Weinstein, and from there, use the Mortgage Loans as collateral (multiple times concurrently with different lenders). It is not known at present where Weinstein was located when he sent the above communications, but Plaintiffs received them via wire in Illinois.

454. Weinstein, on behalf of himself and the Enterprise, made additional misrepresentations to the AHP Trusts, amounting to additional instances of promissory fraud, when they transmitted drafts of the MLSARO to Newbery in the weeks immediately before the MLSARO's effective date of October 7, 2022. By transmitting

the drafts, with terms which were eventually incorporated into the final executed MLSARO, Weinstein represented that they intended to comply with these terms and perform under them if the MLSARO were to be executed. For example, on September 21, 2022 Weinstein transmitted, via wire (email) a draft of the MLSARO which states that "the Mortgage Loans will be put up for sale to me managed by Mission Capital, with the proceeds of any sales being applied dollar for dollar to the Repurchase Price…" The email stated "As promised, please see attached are suggested forms for the $25M loan documents…"

455.  On information and belief, Weinstein and Cymbidium had no intention of ever returning the Mortgage Loans regardless of how much the AHP Trusts might pay for their repurchase. Additionally, Weinstein, on behalf of himself and the Enterprise, concealed their true intentions, which were to transfer the Mortgage Loans to other entities controlled by Weinstein, and from there, use the Mortgage Loans as security (multiple times concurrently with different lenders). It is not known at present where Weinstein was located when he sent the above communications, but Plaintiffs received them via wire in Illinois.

456.  In the weeks leading up to the execution of the Amendment, Weinstein, on behalf of himself and the Enterprise, made false representations to Newbery regarding their intended performance (or non-performance) under the Amendment, misrepresenting that the additional 277 Mortgage Loans being added as collateral for the loan would be held by Cymbidium. This constituted additional instances of promissory fraud by wire.

457.  On March 13, 2023, for example, Weinstein emailed Newbery stating, in effect, that the additional 277 Mortgage Loans would be used as collateral for the Cymbidium Loan:

> Enclosed please find the AHP Amendment we discussed today.  Please review, and, if acceptable, execute it so we can move forward to accelerate a profitable liquidation of these loans.

458.  Attached to the email referenced in ¶457 was a draft of the Amendment identifying Cymbidium as the Purchaser and the AHP Trusts as the Seller and stating:

    a. **Seller intends to now utilize the Purchaser to maximize the ultimate recovery the Seller will achieve for the Loans conveyed under the Agreement** (the "Loans").

    b. The loan schedule attached hereto as Exhibit A is incorporated into the Schedule I of the Agreement as **additional Loans conveyed under the Agreement.**

    c. **The Seller will be entitled to all amounts recovered on the Loans in excess** of (i) repayment of all debt and interest related to the transactions contemplated under the Agreement, (ii) all costs and fees related to managing the Loans, (iii) the 16% Applicable Pricing Rate and (iv) the Management Fee.

    d. **The Purchaser will exercise best efforts in good faith to maximize the recovery on the Loans**, but the Seller acknowledges that Purchaser has to meet its and its affiliates' obligations to Western Alliance Bank, one of the primary funding sources for the transactions contemplated under the Agreement. [Emphasis added].

459.  Implied in these covenants set forth in ¶458, was that the Mortgage Loans would not be transferred to any other entities or pledged or double-pledged by such other entities. In fact, on information and belief, Weinstein knew at the time he made these promises that he would cause the Mortgage Loans to be transferred from the AHP Trusts to other entities under his control and then pledged as collateral for loans from multiple financial institutions.

460.  In addition to Weinstein's knowledge of the falsity of his statements, Weinstein concealed in his communications that the original Category B Mortgage Loans had already been pledged to Western Alliance by Magerick, and that Cymbidium no longer held an interest in the Mortgage Loans. It is not known at present where Weinstein was located when he sent the above communications, but Plaintiffs received them via wire in Illinois.

461.  In the weeks leading up to the execution of the Oak Harbor LPOAs on April 19, 2023, Weinstein, on behalf of himself and the Enterprise, made false representations to Newbery regarding their (Weinstein and the Enterprise's) intentions with regard to their intended performance or non-performance under the Amendment, misrepresenting that the Oak Harbor LPOAs would only be utilized by Oak Harbor to manage the Mortgage Loans.

462.  In an email sent by Oak Harbor's Transaction Asset Manager Jamie Moring ("Moring") on April 7, 2023, to Kamphausen, for example, Moring attached a draft of the LPOA which contained a term that proposed the LPOA would be used "in connection with OHC's responsibilities to manage mortgage loans and REO properties owned by Principal (the AHP Trusts)."

463.  Just before the execution of the Atlantica LPOA on September 20, 2022, Moring sent an email on September 16, 2022 to Kamphausen with proposed terms of the Atlantica LPOA. The subject line was "NY Trade – LPOA, Attached" in reference to the August 2022 AHP, LLC Transaction which included New York mortgage loans only.

464.  The proposed terms of the Atlantica LPOA was a representation by Oak Harbor and Atlantica that Atlantica intended to use the LPOA on as part of a separate, August, 2022, transaction unrelated to the MLSARO. In fact, on information and belief, Weinstein knew at the time he made these promises, during negotiations for the terms of the LPOAs, that he would use the LPOAs to transfer hundreds of the AHP Trusts' Mortgage Loans to parties and entities controlled by him and the Enterprise but with whom the AHP Trusts' had no agreements.

465.  Each time Magerick, with the assistance of Weinstein, Land Home and Oak Harbor, represented to Western Alliance, pursuant to a Loan Agreement, Amendment or Borrowing Base Certificate, or otherwise, that it was the owner of and had the legal right to pledge the Mortgage Loans to Western Alliance, it committed wire fraud and bank fraud with the intention of enriching the Enterprise by transferring possession of the Mortgage Loans away from the AHP Trusts' immediate legal and practical reach.

466.   As an example of the actions described in ¶465, Weinstein sent an email via wire to Bernard, Senior Managing Director of Western Alliance (discussing a letter sent by Newbery to Western Alliance earlier that same day advising Western Alliance again that their collateral was stolen property) stating, among other things,

> …We have secured sufficient collateral from the AHP transaction and other Magerick purchases to make certain Western Alliance is fully secured. However, Jorge continues to send out shrill and inaccurate letters to many different people…

467.   The statements by Weinstein, on behalf of the Enterprise, were false. Among other things, the Enterprise, and certainly not Magerick, had *not* secured sufficient collateral to ensure Western Alliance was fully secured, and Newbery's letter to Western Alliance was accurate, not "inaccurate."

468.   The purpose of the aforementioned fraudulent misrepresentations made by Weinstein on behalf of the Enterprise was to obstruct and frustrate the AHP Trusts' attempts to regain possession and use of their own property—the stolen Mortgage Loans.

469.   The purpose of the aforementioned fraudulent misrepresentations made by Weinstein on behalf of the Enterprise was to further the scheme's goal of attempting to irrevocably place the Mortgage Loans beyond the AHP Trusts' ability to regain possession.

470.   Each time Land Home utilized the mails and wires to bill consumers for non-existent insurance, it represented to consumers that the charges were for the use and procurement of homeowners' insurance from an insurance company, providing the homeowners contractual rights in those insurance policies.

471.   From mid-2022, Land Home, on behalf of the Enterprise sent monthly fraudulent "bills" for insurance to approximately 2,000 consumers. This practice continues to present on a monthly basis. The consumer-recipients of these fraudulent monthly bills are too numerous to list in this Complaint; they are scattered across many states in the United States.

472. Each time Land Home collected the monies paid by the consumers (including hundreds of homeowners whose Mortgage Loans are owned by the AHP Trusts) for the non-existent insurance, the Insurance Scheme Proceeds were then paid to Oak Harbor consistent with the customary practice of the Enterprise in furtherance of the Insurance Scheme.

473. Each time Land Home collected the Mortgage Loan Proceeds after the AHP Trusts met their repurchase obligations in full in September of 2023, and Land Home transferred the proceeds belonging to the AHP Trusts to Magerick, Oak Harbor, Western Alliance, Banner or others, it was transferring stolen funds and money laundering. Land Home, on behalf of itself and the Enterprise, collected the proceeds of Insurance Scheme Proceeds and the Mortgage Loan Proceeds from each of the hundreds of consumer-mortgagors whose mortgages were part of the Mortgage Loans, on a recurring monthly basis, beginning in or about May 2023 and continuing to the present. Hundreds of such fraudulent transactions have occurred which have deprived the AHP Trusts of its rightful income from the Mortgage Loans.

474. For each instance that Land Home transferred stolen Mortgage Loan Proceeds as described above, Land Home was falsely representing that those funds belonged to Magerick or others when those funds belonged, and still belong, to the AHP Trusts. The ostensible transfer documents and contract(s) constitute fraudulent communications because they falsely assert that, among other things, Magerick was the owner of the Mortgage Loans and had the right to effectuate such transfer. Magerick was not the owner and had no such rights. Many additional such fraudulent transactions occurred after this date, following the same pattern as above.

475. Each time Western Alliance accepted and continues to accept the Mortgage Loan Proceeds dating back to at least November 27, 2023 (when Western Alliance was made aware of the revocation of the LPOAs via correspondence from the AHP Trusts' legal counsel), if not earlier, it was and is substantially assisting in the theft and subsequent money laundering of the AHP Trusts' funds.

476. By January 2024, Western Alliance sent emails to Weinstein specifically identifying many missing documents including assignments and allonges which Western Alliance would ordinarily expect and require in its loan files. On January 2, 2024, Weinstein advised Western Alliance's Smith of his intention to fraudulently create these missing assignments and allonges to make the apparent (not actual) transfer appear legitimate.

477. Weinstein, in furtherance of the fabrication of missing assignments and allonges, advised Smith that "We should be able to prepare and clear them." Smith, despite knowing that Weinstein intended to fraudulently "prepare" the missing assignments and related documents, Western Alliance did not act to ensure the Mortgage Loans were returned to their rightful owners.

478. Instead of preventing the fraud, in January 2024, Western Alliance provided substantial assistance to the Enterprise by accepting Weinstein's offer to "prepare" the missing documents. By this date, Western Alliance knew that there was a dispute between the AHP Trusts and the Enterprise regarding the ownership of the Mortgage Loans and thus knew that the Weinstein could not unilaterally (without the AHP Trusts' assistance) create the missing transfer documents. Execution of the transfer documents to complete the chains of title would have necessarily required the AHP Trusts' participation at that time.

479. Western Alliance and its agents knew by that time that the AHP Trusts would not have complied and that all LPOAs between the AHP Trusts and Oak Harbor and Atlantica had been abused and therefore revoked.

480. Based on the foregoing, Western Alliance had actual or constructive knowledge that Weinstein intended to and did create fraudulent assignments and other documents to complete their chains of allonges and assignments through the utilization of revoked LPOAs.

481.  Western Alliance accepted the fraudulent assignments via wire as confirmed in a statement from Hartsell of Oak Harbor to Maciel at Western Alliance, on January 25, 2024, who wrote:

> [A]ttached is a shipping label and manifest for an incoming shipment of eight loans to be cleared. Also within the package are corrective documents for other loans.

> Maciel responded to Hartsell on January 31, 2024, to advise

> Please accept this as confirmation that the package has been received and processed. I have attached a copy of the manifest after the review:

482.  The manifest with comments identified "AOM (Assignment of Mortgage) to Magerick-Recorded" for "11032 W 678 Rd" as "Cleared" by Western Alliance. This AOM to Magerick was executed on November 3, 2023, by the AHP Servicing Trust "by its Attorney-in-Fact Oak Harbor Capital, LLC" and recorded on November 27, 2023.

483.  Western Alliance was aware that the Oak Harbor AHP Servicing LPOA did not authorize the execution of assignments to transfer assets except in instances of repurchases or "upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof."

484.  Western Alliance was also aware that the Oak Harbor AHP Servicing LPOA was revoked on October 23, 2023, prior to this assignment of mortgage being executed on November 3, 2023. Despite knowledge that this assignment was fraudulently prepared and executed, Western Alliance marked this "Cleared."

485.  On February 1, 2024, Maciel emailed Maxwell Thornton at Oak Harbor to advise,

> I have attached an updated copy of the Collateral Exception report for your reference. The report has been updated to include the latest package that was received last week." The "Magerick Collateral Summary" identified 555 "Active Loans," 511 "Active Cleared Loans" and 44 "Active Loans Missing Collateral.

This indicated that over 20 loans had been cleared since Smith's January 2, 2024 email to Weinstein: "Also below, is that missing collateral list of 67 loans…"  Knowing that these were  fraudulently prepared and executed, Western Alliance participated in and provided substantial assistance in the commission of the fraud by the Enterprise.

486. Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, agreed to participate repeatedly and did participate in the Bank Fraud Scheme.  Magerick, Oak Harbor, Atlantica, Land Home, and Weinstein along with Cymbidium, agreed to participate repeatedly and did participate in the Insurance Scheme. Both schemes involved mail and wire fraud, as well as money laundering and the transportation of stolen funds.

487. The Bank Fraud Scheme and the Insurance Scheme, both of which were perpetuated by mail and wire fraud, money laundering, and the transportation of stolen funds, began sometime in 2022.

488. The Bank Fraud Scheme and the Insurance Scheme continue today as the Mortgage Loans Proceeds and Insurance Scheme Proceeds are still being collected by Land Home and misused, in part to service the fraudulently obtained financing and continue the schemes set forth herein while enriching the members of the Enterprise and their investors.

489. At all relevant times described above, Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium carried out the Bank Fraud Scheme.  At all relevant times described above, Magerick, Oak Harbor, Atlantica, Land Home, Weinstein carried out the Insurance Scheme, both of which were perpetuated by mail and wire fraud, bank fraud, insurance fraud, money laundering, and the transportation of stolen funds in connection with the conduct of a "Enterprise," as the term is described in 18 U.S.C. § 1961(4).

<u>The Enterprise</u>

490.  The Enterprise consisted of the following persons or entities: Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, Western Alliance, and Cymbidium and

COMPLAINT

others yet to be determined, who constitute an "association-in-fact enterprise" within the meaning of 18 U.S.C. Sections 1961(4) and 1962, and who collectively constitute the Enterprise. The common purposes of the Enterprise were to:

    a.    steal the Mortgage Loans from the AHP Trusts as set forth herein at ¶¶70-86, 100-154;

    b.    abuse the LPOAs to fraudulently transfer ownership of the Mortgage Loans in violation of the LPOAs and the AHP Trusts' rights therein as set forth herein at ¶¶100-154, 231-331;

    c.    fraudulently pledge the Mortgage Loans owned by the AHP Trusts and not Magerick or Weinstein to Western Alliance and Banner to obtain funds for Magerick, Weinstein and others as set forth herein at ¶¶70-86, 155-185, 332-338;

    d.    perpetrate the Insurance Scheme through the mails and wires described herein at ¶¶ 360-399;

    e.    utilize the Mortgage Loan Proceeds and the Insurance Scheme Proceeds to continue the schemes and pay the debt service for the financing fraudulently obtained from Western Alliance, Banner and likely others by fraudulent misrepresentations through the mails and wires; and

    f.    use the Mortgage Loan Proceeds and the Insurance Scheme Proceeds to continue to enrich themselves and their investors.

491. Another common purpose of the Enterprise was to launder money in violation of 18 U.S.C. § 1956 as the property involved, namely the Mortgage Loan Proceeds and the Insurance Scheme Proceeds represent the proceeds of unlawful activity.

492. Another common purpose of the Enterprise was to maintain the collateral pledged by Magerick to Western Alliance, facilitate Magerick's ability to monetize the AHP Trusts' Mortgage Loans to ensure that Magerick could meet its obligations to Western Alliance pursuant to the terms of the Western Alliance/Magerick Loan, and preserve the appearance that the Western Alliance/Magerick Loan was in good standing.

493.  The proceeds of the unlawful activity were and are being collected by Land Home and transferred to Magerick, Oak Harbor, Western Alliance, and others to hide the true nature of their ownership.

494.  The Enterprise had a discernable structure as follows:

a.    Cymbidium was the entity that entered into the MLSARO and the Amendment with the AHP Trusts to allow the Mortgage Loans and Mortgage Loan Proceeds to be stolen from the AHP Trusts.

b.    Oak Harbor, with the direction and assistance of Weinstein, abused the LPOAs to transfer the Mortgage Loans to various entities including Magerick.

c.    Oak Harbor, with the direction and assistance of Weinstein and Land Home, assisted Magerick in submitting fraudulent information to obtain loans from Western Alliance.

d.    Atlantica, at the direction of and with the assistance of Weinstein, abused the LPOAs to transfer the Mortgage Loans to various entities including Magerick and at times transferred Mortgage Loans to itself.

e.    Magerick unlawfully claimed ownership of the Mortgage Loans and represented, with the substantial assistance of Oak Harbor, Weinstein, Land Home, and ultimately Western Alliance, that it was the owner of the Mortgage Loans to obtain and maintain financing.

f.    Weinstein unlawfully represented that he was the owner of the Mortgage Loans to obtain financing from Banner and used that financing to continue the schemes described herein.

495.  Land Home assumed the servicing of the Mortgage Loans, has and continues to direct the Mortgage Loan Proceeds to Magerick, Oak Harbor, Western Alliance and others, and refuses to account for the Mortgage Loan Proceeds to the AHP Trusts. Land Home took direction from both Oak Harbor and Weinstein on how to perpetrate the Insurance Scheme and continues to administer the Insurance Scheme and collect the proceeds thereof.

496. At all relevant times, Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, knew that the Enterprise was engaged in the Bank Fraud Scheme, and agreed to participate in it.

497. At all relevant times, Magerick, Oak Harbor, Atlantica, Land Home and Weinstein along with Cymbidium, knew that the Enterprise was engaged in the Insurance Scheme, and agreed to participate in it.

498. Both the Bank Fraud Scheme and the Insurance Scheme involved mail and wire fraud, money laundering and the transportation of stolen funds in connection with the conduct of a "Enterprise," as the term is described in 18 U.S.C. § 1961(4).

499. The Enterprise is distinct from the pattern of racketeering activity, including the predicate acts of bank fraud, insurance fraud, mail and wire fraud, money laundering and the transportation of stolen funds because Weinstein and the various business entities that he controls, as well as  Land Home and Western Alliance, conduct ostensibly legitimate business, including the buying and selling of bundled mortgage packages and lending, in addition to the pattern of racketeering activity.

   a. Cymbidium is a Trust that holds mortgage loans and at times participates in legal business activities.

   b. Weinstein is an individual who allegedly practices law and upon information and belief at times participates in legal business activities.

   c. Magerick is a private equity fund that holds loans and at times participates in legal business activities.

   d. Oak Harbor is an SEC-registered investment adviser and at times participates in legal business activities.

   e. Atlantica  is private equity fund that holds and administers loans and at times participates in legal business activities.

   f. Land Home is a nationally licensed mortgage loan originator and servicer that at times participates in legal business activities.

   g. Western Alliance is a banking institution that at times participates in legal banking activities.

500.  Throughout the Bank Fraud Scheme and Insurance Scheme, the members of the Enterprise agreed to utilize false and misleading representations and omissions, through the mails and wires which include(d):

a.      the ownership and right to pledge the Mortgage Loans;

b.      the repayment of the Cymbidium Loan; and

c.      the alleged existence of the force placed insurance.

501.  The misrepresentations described and alleged in ¶499 were made in a deliberate effort to continue to reap the benefits of the Mortgage Loan Proceeds, Insurance Scheme Proceeds and to fraudulently obtain the Mortgage Loans and additional funds from financing secured by pledging (and, in many instances, double-pledging) the stolen Mortgage Loans.

<u>Further Racketeering Activity</u>

502.  In furtherance of the schemes, the Enterprise engaged in hundreds, if not thousands, of acts of wire fraud, in violation of 18 U.S.C. § 1343, each of which constitute "racketeering activity," as the phrase is defined in 18 U.S.C. § 1961(1).

503.  Each time Land Home charged and charges a consumer and collects an insurance premium for insurance that does not exist, which Land Home knows does not exist, it constitutes wire fraud because it uses the United States wires to accomplish the same.

504.  In furtherance of the schemes, the Enterprise engaged in hundreds of acts of bank fraud, in violation of 18 U.S.C. § 1344, each of which constitute "racketeering activity," as the phrase is defined in 18 U.S.C. § 1961(1).

505.  Each time Magerick, Weinstein or Land Home submitted a Borrowing Base Certificate or signed an amendment or Guaranty, it/he misrepresented the ownership and ability of Magerick or Weinstein to pledge the Mortgage Loans.

COMPLAINT

X:\D\788-01\Pleadings\MASTER Complaint FINAL.docx

506. The conduct described in ¶505 constitutes fraud as each member of the Enterprise knew that they were fraudulently obtaining money that was owned by, or under the custody or control of, a financial institution.

507. In furtherance of the schemes, the Enterprise engaged in hundreds of acts of Transportation of Stolen Money, in violation of 18 U.S.C. § 2314, each of which constitutes "racketeering activity," as the phrase is defined in 18 U.S.C. § 1961(1).

508. Each time the Enterprise, through Land Home, collected the Insurance Scheme Proceeds or the Mortgage Loan Proceeds, it subsequently transferred those funds and continues to transfer such funds over state lines through the use of the wires and is therefore transferring stolen money across state lines.

509. In furtherance of the schemes, the Enterprise engaged in hundreds of acts of Laundering of Monetary Instruments in violation of 18 U.S. Code § 1956.

510. Each time the Enterprise, through Land Home, collected the Insurance Scheme Proceeds or the Mortgage Loan Proceeds it subsequently transferred those funds to Magerick, Western Alliance, Oak Harbor, and other members of Enterprise to hide the true nature and ownership of those funds.

511. In furtherance of the schemes, the Enterprise engaged in hundreds of acts of Laundering of Monetary Instruments in violation of 18 U.S. Code § 1956.    Each time the Enterprise, through Land Home, collected the Insurance Scheme Proceeds, it subsequently transferred those funds to Magerick, Western Alliance, Oak Harbor and other members of the Enterprise thereby willfully embezzling, misappropriating, and laundering money, funds and premiums to conceal and disguise the ownership thereof.

512. Each member of Enterprise knew that the financial transactions involved proceeds that were derived from fraudulent activity and used for the purpose of committing fraud and theft and to continue the schemes.

513. The Enterprise has and continues to engage in its aforementioned activities that affect interstate commerce, including the use of electronic mail, telephone and digital communications, the federal ACH and wire systems which permeate across state

lines to misappropriate and subsequently use the AHP Trusts' Mortgage Loans, the Mortgage Loan Proceeds and the Insurance Scheme Proceeds.

514.  As a result of the foregoing activities, the Enterprise has and continues to engage in wire fraud in violation of 18 U.S. Code § 1343, bank fraud, in violation of 18 U.S. Code § 1344, and insurance fraud in violation of 18 U.S. Code § 1033(b)(B).

515.  The Enterprise has engaged in transfers in interstate commerce of money of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud.

516.  Because of the conduct described herein and in particular in ¶508, the Enterprise has engaged in Transportation of Stolen Money in violation of 18 U.S.C § 2314 and money laundering in violation of 18 U.S.C. § 1956.

517.  As set forth herein, the members of Enterprise continue to utilize the Insurance Scheme Proceeds and the Mortgage Loan Proceeds to continue their pattern of racketeering, and to continue to support the Insurance Scheme and Bank Fraud Scheme.

518.  The Enterprise's fraudulent scheme against the AHP Trusts and others is part of a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

519.  The acts of racketeering by the Enterprise alleged herein were not isolated. Rather, these acts of racketeering are related because they had the same or similar purpose, results, participants, victims, and methods of commission.

520.  As of the filing of this Complaint, the Enterprise continues to direct the Insurance Scheme, the Bank Fraud Scheme, the laundering of money, and the transportation of the stolen Mortgage Loan Proceeds and stolen Insurance Scheme Proceeds. All of the Schemes identified above are related and together form an overarching scheme to violate various federal criminal statutes for the purposes of stealing and laundering money from the AHP Trusts and others.

<u>Damages</u>

521.   As a direct result of the foregoing violations of 18 U.S.C. § 1962(c), the AHP Trusts have been injured in their business and its property in multiple ways, including, but not limited to:

    a.    the loss of the over $60 Million in Mortgages Loans that remain in physical possession of the Enterprise;

    b.    the continued loss of the Mortgage Loan Proceeds;

    c.    the continued loss of insurance coverage for damages to properties including the Myrtle Street Property; and

    d.    attorneys' fees and costs in an amount to be determined.

522.   As a further proximate result of Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance's violations of RICO, the AHP Trusts have been involved in extensive litigation for which the AHP Trusts have incurred and continue to incur attorneys' fees and costs.

523.   But for the predicate acts described above – the AHP Trusts would have possession of the Mortgage Loans and receipt of the Mortgage Loan Proceeds, which are currently being misappropriated and liquidated by the Enterprise.

524.   The RICO violations described herein have directly and proximately caused injuries and damages to the AHP Trusts, and the AHP Trusts are entitled to bring this action for three times its actual damages, as well as equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1961(3).

## FIFTH CLAIM FOR RELIEF
### Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy in regard to 18 U.S.C. § 1962(c) claim)
**(Magerick, Oak Harbor, Weinstein, Atlantica, Western Alliance and Land Home)**

525.   The AHP Trusts reallege and incorporate all of the foregoing as though set forth in this paragraph in full.

526.   In violation of 18 U.S.C. § 1962(d), Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium conspired to violate 18 U.S.C. § 1962(c). The conspiracy commenced no later than October of 2022.

527.   The object of the conspiracy was to:

    a.   steal the Mortgage Loans from the AHP Trusts as set forth herein at ¶¶ 70-86, 100-154;

    b.   fraudulently abuse LPOAs to allegedly transfer ownership of the Mortgage Loans in violation of the LPOAs and the AHP Trusts' rights therein as set forth herein at ¶¶ 100-154, 231-331;

    c.   fraudulently pledge Mortgage Loans not owned by Magerick or Weinstein to Western Alliance and Banner to obtain funds for Magerick and Weinstein as set forth herein at ¶¶ 70-86, 155-185, 332-338;

    d.   perpetrate the Insurance Scheme through the mails and wires described herein at ¶¶ 360-399;

    e.   use the Mortgage Loan Proceeds and the Insurance Scheme Proceeds to continue to the scheme and service the financing obtained from Western Alliance, Banner and likely others by fraudulent misrepresentations through the wires; and

    f.   use the Mortgage Loan Proceeds and the Insurance Scheme Proceeds to continue to enrich themselves and their investors.

528.   Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1343, 1344, 2314, 1033 and 1986 in violation of 18 U.S.C. § 1962(c).

529.   Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, whether individually or through the Enterprise,

objectively manifested, by words or acts, their agreement to the commission of the substantive RICO violations by at least one member of the conspiracy.

530.   Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, each committed at least one overt act in furtherance of the conspiracy.

531.   In conspiring with each other to commit the RICO violations alleged herein, Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, and each of them, are jointly and severally liable for the wrongful actions of each co-conspirator.

532.   As a direct result of the conspiracy to violate RICO, the AHP Trusts are the victims of the theft of their Mortgage Loans and the continued theft of the Mortgage Loan Proceeds.

533.   As a further proximate result of the conspiracy to violate RICO, the AHP Trusts have been involved in extensive litigation for which the AHP Trusts have incurred and continue to incur attorneys' fees and costs.

534.   The Enterprise's conspiracy to violate RICO described herein has directly and proximately caused injuries and damages to the AHP Trusts, and the AHP Trusts are entitled to bring this action for three times its actual damages, as well as equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1961(3).

## SIXTH CLAIM FOR RELIEF
### Violation of 18 U.S.C. § 1962(a) (Use or Investment of RICO Funds)
### (Against All Defendants)

535.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

536.   In violation of 18 U.S.C. § 1962(a), Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise, in violation of 18 U.S.C. § 1962(c).

537.   Defendants both used and invested income consisting of payments received from the AHP Trusts pursuant to the AHP Trusts' repayment of the Cymbidium Loan, the Mortgage Loan Proceeds, and the Insurance Scheme Proceeds set forth above, among other things.

538.   The pattern of racketeering activity from which these funds were derived is set forth more fully in the 19 U.S.C. Section 1962(c) claim alleged above and is incorporated herein. When Defendants used and invested the funds as described above, they knew that the funds rightfully belonged to the AHP Trusts but nevertheless used and invested the funds as if the funds belonged to the Enterprise instead.

539.   Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, in addition to their roles in the illegal pattern of racketeering activity, each also conducted legitimate business dealings in interstate commerce. Each of these Defendants used and invested the proceeds gained from the pattern of racketeering activity into the legitimate business activities of Cymbidium and each of the Defendant entities. Additionally, as set forth above, some of the money was used and received by Western Alliance, which as a banking and financial institution utilizes and transfers money across interstate lines.

540.   The aforementioned legitimate business activities, in which the proceeds of the pattern of racketeering activity were invested, affect interstate commerce. For example, these businesses engaged in, among other things, the buying and selling of mortgage loan packages (and in the "servicing" of loans in such packages) which contain mortgage loans related to residential properties located in dozens of states in the United States. The loan servicing activities of Land Home includes the collection of payments from the borrowers whose loans it services, and the statements, notices and money collected were transferred across state lines thousands of times. Defendants are thus engaged in the receipt and use of funds and goods in interstate commerce.

541.   As a direct result of the use and investment of funds derived from the pattern of racketeering activity, the AHP Trusts are the victims of such illegal use of funds belonging to the AHP Trusts and the continued theft of the Mortgage Loan Proceeds.

542.   As a further proximate result of the use and investment of such funds in violation of 18 U.S.C. Section 1962(a), the AHP Trusts have been involved in extensive litigation, and pre-litigation collection efforts, for which the AHP Trusts have incurred and continue to incur attorneys' fees and costs.

543.   The Defendants' violation of 18 U.S.C. Section 1962(a) described herein has directly and proximately caused injuries and damages to the AHP Trusts, and the AHP Trusts are entitled to bring this action for three times its actual damages, as well as equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1961(3).

### SEVENTH CLAIM FOR RELIEF
### Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy) in regard to 18 U.S.C. § 1962(a)claim
### (Magerick, Oak Harbor, Weinstein, Atlantica, Western Alliance and Land Home)

544.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

545.   In violation of 18 U.S.C. § 1962(d), Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, conspired to violate 18 U.S.C. § 1962(c). The conspiracy commenced no later than October of 2022.

546.   The object of the conspiracy was to use and invest income consisting of payments received from the AHP Trusts pursuant to the AHP Trusts' payment of the Cymbidium Loan and the Mortgage Loan Proceeds, and the Insurance Scheme Proceeds set forth above, among other things. The pattern of racketeering activity from which these funds were derived is set forth more fully in the 19 U.S.C. Section 1962(c) claim alleged above and is incorporated herein. When Defendants used and invested the funds as described above, they knew that the funds rightfully belonged to the AHP Trusts but

nevertheless used and invested the funds as if the funds belonged to the Enterprise instead.

547.   Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, and Western Alliance, along with Cymbidium, knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1343, 1344, 2314, 1033 and 1986 in violation of 18 U.S.C. § 1962(c).

548.   Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, and Western Alliance, along with Cymbidium, whether individually or through the Enterprise, objectively manifested, by words or acts, their agreement to the commission of the substantive RICO violations by at least one member of the conspiracy.

549.   Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, and Western Alliance, along with Cymbidium, each committed at least one overt act in furtherance of the conspiracy.

550.   In conspiring with each other to commit the RICO violations alleged herein, Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, and Western Alliance, along with Cymbidium, and each of them, are jointly and severally liable for the wrongful actions of each co-conspirator.

551.   As a direct result of the conspiracy to violate RICO, the AHP Trusts are the victims of the theft of their Mortgage Loans and the continued theft of the Mortgage Loan Proceeds.

552.   As a further proximate result of the conspiracy to violate RICO, the AHP Trusts have been involved in extensive litigation for which the AHP Trusts have incurred and continue to incur attorneys' fees and costs.

553.   The Enterprise's conspiracy to violate RICO described herein has directly and proximately caused injuries and damages to the AHP Trusts, and the AHP Trusts

COMPLAINT

are entitled to bring this action for three times its actual damages, as well as equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1961(3).

**EIGHTH CLAIM FOR RELIEF**
**VIOLATION OF 18 U.S.C. § 1962(b) –R.I.C.O.**
**(Magerick, Oak Harbor, Weinstein, Atlantica, Western Alliance and Land Home)**

554. The AHP Trusts reallege all of the preceding paragraphs as though set forth in this paragraph in full.

555. The AHP Trusts and AHP Capital bring this claim alleging violation of the Organized Crime Control Act 1970 ("RICO"), 18 U.S.C. §§ 1962 *et seq.*, Racketeer Influenced and Corrupt Organizations Act ("RICO"), and 18 U.S.C. 1964(b).

556. The AHP Trusts are "persons" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

557. Each of the Defendants, Magerick, Weinstein, Oak Harbor, Atlantica, Land Home, and Western Alliance is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. § 1961(3).

558. RICO provides that "It shall be unlawful for any person through a pattern of racketeering activity or through the collection of an unlawful debt to acquire, maintain, directly or indirectly, any interest or control of any enterprise which is engaged in, or the activities which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).

559. For purposes of this count, Magerick, Weinstein, Oak Harbor, Atlantica, Land Home, and Western Alliance undertook a scheme to acquire an interest in and control the AHP Enterprise through mail and wire fraud, bank fraud, insurance fraud, transportation of stolen money and money laundering as described herein and in violation of:

    a. 18 USC § 1341 (Mail Fraud);

    b. 18 USC § 1343 (Wire Fraud);

    c. 18 USC § 1033 (Insurance Fraud);

    d. 18 USC § 1344 (Bank Fraud); and

e.  18 USC § 2314 (Transportation of Stolen Money);

f.  18 U.S.C. § 1956 (Money Laundering); and

g.  potentially other predicate acts.

560.  Later in the scheme, but no later than December of 2023, Western Alliance joined the Enterprise and took overt acts in furtherance of the Enterprises' goals, while having full knowledge of the purpose and goals of the Enterprise.

561.  The AHP Enterprise consisted of the AHP Trusts and AHP Capital, who constitute an "association-in-fact enterprise" within the meaning of RICO, who collectively constitute the "AHP Enterprise."

562.  The AHP Enterprise, whose activities affected interstate and foreign commerce, is an association-in-fact of AHP Trusts and a limited liability company associated together for the common purpose of purchasing and managing pools of distressed mortgages and seeking sustainable solutions to keep struggling homeowners in their homes.

563.  The AHP Enterprise was formed and existed at all times material to the allegations in this Complaint.

564.  Magerick, Weinstein, Oak Harbor, Atlantica, Land Home, and Western Alliance and their respective officers and employees, acting together developed a scheme to defraud and seize control of the AHP Enterprise by stealing the Mortgage Loans, taking control of the servicing thereof, taking possession of and stealing the Mortgage Loan Proceeds and Mortgage Loan Files, claiming ownership of the Mortgage Loans and thereafter pledging those Mortgages Loans to Western Alliance and Banner, thereby taking complete control of the AHP Enterprise, which they still control. The pattern of racketeering activity is set forth more fully in the 19 U.S.C. Section 1962(c) claim alleged above.

565.  In furtherance of the scheme, Magerick, Weinstein, Oak Harbor, Atlantica, Land Home, and Western Alliance acquired control of the AHP Enterprise by  engaging in hundreds, if not thousands, of acts of wire fraud, in violation of 18 U.S.C. § 1343,

engaged in hundreds of acts of bank fraud, in violation of 18 U.S.C. § 1344, engaged in hundreds of acts of Transportation of Stolen Money, in violation of 18 U.S.C. § 2314 engaged in hundreds of acts of Laundering of Monetary Instruments in violation of 18 U.S. Code § 1956, engaged in hundreds of acts of insurance fraud in violation of 18 U.S. Code § 1033(b)(B),each of which constitute "racketeering activity," as the phrase is defined in 18 U.S.C. § 1961(1).

566.   As a direct result of the foregoing violations of 18 U.S.C. § 1962(b), the AHP Trusts and AHP Capital have been injured in their business and their property in multiple ways, including that they were stripped of the control of their business and the operations thereof along with the theft of the Mortgage Loans, Mortgage Loan Files and the Mortgage Loan Proceeds.

567.   But for the predicate acts described above - wire fraud, bank fraud, transportation of stolen money, money laundering and insurance fraud - Magerick, Weinstein, Oak Harbor, Atlantica, Land Home, and Western Alliance would not have been able to gain control of the AHP Enterprise, steal the Mortgage Loans, Mortgage Loan Files and the Mortgage Loan Proceeds and continue the scheme described here.

568.   The RICO violations described herein have directly and proximately caused and continue to cause injuries and damages to the AHP Trusts and AHP Capital, and the AHP Trusts and AHP Capital are entitled to bring this action and recover three times their actual damages, as well as equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1961(3).

**NINTH CLAIM FOR RELIEF**
**Violation of 18 U.S.C. § 1962(d) (RICO Conspiracy) – in regard to 18**
**U.S.C. § 1962(b)claim**
**(Magerick, Oak Harbor, Weinstein, Atlantica, Western Alliance and Land Home)**

569.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

570.    In violation of 18 U.S.C. § 1962(d), Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium conspired to violate 18 U.S.C. § 1962(b). The conspiracy commenced no later than October of 2022.

571.    The object of the conspiracy was to seize control of the AHP Enterprise by stripping the AHP Enterprise of the control of their business and the operations thereof along with the theft of the Mortgage Loans, Mortgage Loan Files and the Mortgage Loan Proceeds.

572.    Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the Enterprise through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1343, 1344, 2314, 1033 and 1986 in violation of 18 U.S.C. § 1962(c).

573.    Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, whether individually or through the Enterprise, objectively manifested, by words or acts, their agreement to the commission of the substantive RICO violations by at least one member of the conspiracy.

574.    Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, each committed at least one overt act in furtherance of the conspiracy.

575.    In conspiring with each other to commit the RICO violations alleged herein, Magerick, Oak Harbor, Atlantica, Land Home, Weinstein and Western Alliance, along with Cymbidium, and each of them, are jointly and severally liable for the wrongful actions of each co-conspirator.

576.    As a direct result of the conspiracy to violate RICO, the AHP Trusts are the victims of the theft of their Mortgage Loans and Mortgage Loan Files, and the continued theft of the Mortgage Loan Proceeds.

577.   As a further proximate result of the conspiracy to violate RICO, the AHP Trusts have been involved in extensive litigation for which the AHP Trusts have incurred and continue to incur attorneys' fees and costs.

578.   The Enterprise's conspiracy to violate RICO described herein has directly and proximately caused injuries and damages to the AHP Trusts, and the AHP Trusts are entitled to bring this action for three times its actual damages, as well as equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1961(3).

## TENTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
### (Against Atlantica, Magerick, Western Alliance, Weinstein, Waite, and Oak Harbor)

579.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

580.   In spite of the AHP Trusts' rights to the Mortgage Loans and the Mortgage Loan Proceeds, the Mortgage Loans have been transferred to Magerick, Atlantica, Weinstein, Waite, and others.

581.   A benefit was conferred upon Magerick, Atlantica, Weinstein and Waite by receipt of the Mortgage Loans for which the AHP Trusts received no or less than market value consideration.

582.   A benefit was conferred upon Atlantica and Oak Harbor either by consideration paid directly to it by the affiliate to which it assigned the Mortgage Loans or, to the extent no money was paid to Atlantica or Oak Harbor for the transfer of the Mortgage Loans to its affiliate, the benefit bestowed upon its affiliates to which the loan was transferred for which the AHP Trusts received no consideration.

583.   A benefit was conferred upon Western Alliance either by receipt of the Mortgage Loans and Mortgage Loan Files, the alleged security position Western Alliance claims in the loans, and receipt of the Mortgage Loan Proceeds for which the AHP Trusts received no or below market consideration.

584.   The failure of Magerick, Atlantica, Weinstein, Waite and Western Alliance to provide consideration to the AHP Trusts for the benefits received was and is a continuing detriment to the AHP Trusts.

585.   The failure of Magerick, Atlantica, Weinstein, Waite and Western Alliance to return the Mortgage Loans and Mortgage Loan Files to the AHP Trusts was and is a continuing detriment to the AHP Trusts.

586.   The benefits conferred to Magerick, Atlantica, Weinstein, Waite and Western Alliance were and are to deprivation of the AHP Trusts, which violates the fundamental principles of justice, equity and good conscience.

## ELEVENTH CLAIM FOR RELIEF

### ACCOUNTING
### (Against Oak Harbor and Land Home)

587.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

588.   A fiduciary duty existed by the execution of the LPOAs appointing Oak Harbor as attorney-in-fact.

589.   At Oak Harbor's request, AHP delivered the Mortgage Loan Files to Western Alliance for the Mortgage Loans which were stolen from the AHP Trusts.

590.   At the request of Oak Harbor, servicing of the Mortgage Loans was transferred to Land Home by both SN Servicing and AHP Servicing, and Land Home accepted the responsibility of servicing the Mortgage Loans.

591.   In violation of its fiduciary duty to the AHP Trusts and in violation of the Oak Harbor LPOAs, Oak Harbor assigned the Mortgage Loans to its own affiliates without consideration and without authority.

592.   Oak Harbor, by assigning and transferring the Mortgage Loans to its affiliates, gained an advantage over the AHP Trusts by also depriving the AHP Trusts of consideration for the Mortgage Loans and the Mortgage Loan Proceeds.

593.   After discovering that Oak Harbor assigned and transferred the Mortgage Loans from the AHP Trusts to entities owned by, managed by, or affiliated with Oak Harbor, for which the AHP Trusts received no consideration, the AHP Trusts made a demand for an accounting to Oak Harbor, which Oak Harbor refused.

594.   Although requested by the AHP Trusts to do so, Oak Harbor, and Land Home have failed, neglected, and refused to account to the AHP Trusts for all amounts received in connection with the Mortgage Loans.

595.   Since the amount of the revenue and proceeds received by Oak Harbor and Land Home is unknown, and the amounts credited against the Cymbidium Loan are unknown, the account cannot be conveniently taken in an action at law.

596.   The AHP Trusts have been damaged by Oak Harbor and Land Home's willful refusal to provide an accounting as requested, and the only way to remedy this issue, is for this Court to require that a proper accounting take place.

## TWELFTH CLAIM FOR RELIEF
### CONVERSION
### (Against– Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein and Waite)

597.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

598.   All of the monies received from the Mortgage Loans, including but not limited to mortgage payments received by Land Home and subsequently transferred in whole or in part to Western Alliance, Oak Harbor, Magerick, and others are the AHP Trusts' Mortgage Loan Proceeds.

599.   The AHP Trusts are the rightful owners of the Mortgage Loans and the Mortgage Loan Proceeds and have a possessory, legal, and beneficial interest in the Mortgage Loans and the Mortgage Loan Proceeds.

600.   The Mortgage Loan Proceeds and the Mortgage Loans were obtained from the AHP Trusts by means of fraud and theft. Therefore, a constructive trust was imposed

as a matter of law and Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein, and Waite became involuntary trustees for the benefit of the AHP Trusts.

601.   At all relevant times Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein, and Waite knew that the Mortgage Loans and the Mortgage Loan Proceeds had been misappropriated and that the Mortgage Loan Proceeds were continuing to be collected by Land Home and Magerick and wrongfully transferred to and retained by Magerick, Atlantica, Oak Harbor, Land Home and Western Alliance.

602.   Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein, and Waite have no legal or equitable right to own or possess the Mortgage Loans or the Mortgage Loan Proceeds, which belong to the Trust.

603.   The AHP Trusts have demanded the return of the Mortgage Loans, Mortgage Loan Proceeds and Mortgage Loan Files, but Magerick, Atlantica, Oak Harbor, Land Home Western Alliance, Weinstein, and Waite have refused to return the same.

604.   By exercising dominion over and refusing to return the Mortgage Loans, Mortgage Loan Proceeds and Mortgage Loan Files to the AHP Trusts, Magerick, Atlantica, Oak Harbor, Land Home Western Alliance, Weinstein, and Waite are substantially interfering with the AHP Trusts' right to possess the Mortgage Loans, Mortgage Loan Proceeds, and Mortgage Loan Files.

605.   Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein and Waite's actions were and are unilateral, unauthorized, and with knowledge that the Mortgage Loans, Mortgage Loan Proceeds and Mortgage Loan Files were illegally stolen from the AHP Trusts.

606.   As a direct and proximate cause of Magerick, Atlantica, Oak Harbor, Land Home, and Western Alliance, the AHP Trusts have been damaged in an amount in excess of $60 million.

607.   The AHP Trusts have suffered special and consequential damages in an amount to be proven at trial.

608.   Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein and Waite's actions were a substantial factor in causing the AHP Trusts' damages.

609.   Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein and Waite's actions were done intentionally with malice, oppression, or fraud such that the Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein and Waite are liable for punitive damages in an amount to punish and make an example of these Defendants.

610.   The conduct constituting malice, oppression, or fraud was committed or authorized by one or more officers, directors, or managing agents of Magerick, Atlantica, Oak Harbor, Land Home and Western Alliance who acted on behalf of Magerick, Atlantica, Oak Harbor, Land Home and Western Alliance, or they knew of the conduct and either adopted or approved that conduct after it occurred.

611.   The actions by Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein and Waite were malicious, oppressive and fraudulent in the sense of Civil Code § 3294, and so Plaintiff is entitled to exemplary and punitive damages.

**THIRTEENTH CLAIM FOR RELIEF**
**FRAUD**
**(Against Oak Harbor and Weinstein)**

612.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

613.   Oak Harbor and Weinstein made the following material misrepresentations to the AHP Trusts:

      a.     the LPOAs would be used consistent with the powers therein;

      b.     the MLSARO was a loan from Cymbidium to the AHP Trusts;

     c.     Cymbidium had the ability to return the Mortgage Loans to the AHP Trusts;

     d.     all transactions with Mortgage Loans, such as the Keydally Sale, were arms lengths transactions in which the AHP Trusts were to receive the proceeds; and

     e.     insurance had been procured for properties which secured the Mortgage Loans.

614.　At the time Oak Harbor and Weinstein made the representations set forth in the immediately preceding paragraph, Oak Harbor was aware and believed that the representations were false and did intend for the AHP Trusts to rely upon them.

615.　The AHP Trusts justifiably relied on the representations of Oak Harbor and Weinstein set forth above to their detriment.

616.　As a direct and proximate cause of the Defendants fraud the AHP Trusts have been damaged in an amount in excess of $60 million.

617.　The Defendants' actions were done intentionally with malice, oppression, and fraud such that the Defendants are liable for punitive damages in an amount to punish and make an example of the Defendants.

618.　The conduct constituting malice, oppression, or fraud was committed or authorized by one or more officers, directors, or managing agents of the Defendants, who acted on behalf of the Defendants, or they knew of the conduct and either adopted or approved that conduct after it occurred.

619.　The actions by Magerick, Atlantica, Oak Harbor, Land Home, Western Alliance, Weinstein and Waite were malicious, oppressive and fraudulent in the sense of Ca. Civil Code § 3294, and so Plaintiff is entitled to exemplary and punitive damages.

## FOURTEENTH CLAIM FOR RELIEF
## DECLARATORY & INJUNCTIVE RELIEF
## (Against all Defendants)

620.　The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

COMPLAINT

X:\D\788-01\Pleadings\MASTER Complaint FINAL.docx

621.   Pursuant to 28 U.S.C. § 2201(a), Declaratory relief is available to party who desires a declaration of "the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

622.   An actual controversy has arisen and now exists between the AHP Trusts and the Defendants.   The AHP Trusts contend that the Mortgage Loans have been stolen from them and they are entitled to the return of the same free and clear of any encumbrance.  The Defendants contend that they are either the owner of the Mortgage Loans or they have some rights and or encumbrances therein.

623.   Defendants are currently acting and proceeding as if they own or have rights in the Mortgage Loans.

624.   The AHP Trusts are therefore entitled to a declaration pursuant to 28 U.S.C. § 2201(a)that they are the owner or the Mortgage Loans, without encumbrances and the Defendants have no legal or equitable interest in the Mortgage Loans or the Mortgage Loan Proceeds.

### FIFTEENTH CLAIM FOR RELIEF – UNFAIR BUSINESS PRACTICES CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *et seq.* (Against Magerick, Oak Harbor, Atlantica, Land Home, Western Alliance, Weinstein, and Waite)

625.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

626.   The acts of the Defendants described above constitute fraudulent and unlawful business practices as defined by California Business and Professions Code § 17200, *et seq.*

627.   The above-described acts and practices by the Defendants are likely to deceive the general public and therefore constitute fraudulent business practices in violation of California Business and Professions Code § 17200, *et seq.*

628.   The unlawful and fraudulent business practices of the Defendants described above present a continuing threat to, and are meant to deceive members of, the public in

that the Defendants, continue to act and present to the public that they are the owners of the Mortgage Loans, Mortgage Loan Proceeds and Mortgage Loan Files, and have the rights consistent therewith, including the right to pledge the Mortgage Loans as collateral.

629.    The unlawful and fraudulent business practices of the Defendants described above present a continuing threat to, and are meant to deceive members of, the public in that the Defendants, continue to act and present to the public that their homes are insured, that claims will be paid, and that the premiums they are being charged are being utilized to pay for viable contracts of insurance rather than being deceptively collected by Land Home and misappropriated by Oak Harbor.

630.    Magerick, Oak Harbor, Atlantica, Land Home, Weinstein, Western Alliance and Waite engaged in theft, concealment and withholding of the Mortgage Loans, Mortgage Loan Proceeds and Mortgage Loan Files in violation of Cal. Penal Code section 496(a).

631.    As a direct and proximate result of the acts described herein, the Defendants have and will continue to profit from their actions and presentment to the public that they are the owners of the Mortgage Loans, Mortgage Loan Proceeds and Mortgage Loan Files, and have the rights consistent therewith, including the right to pledge the Mortgage Loans as collateral.

632.    As a direct and proximate result of the acts described herein, the AHP Trusts have been and continue to be injured in fact, have, and continue to lose money and profits, and such harm will continue unless the Defendants acts are enjoined by the Court.  The AHP Trusts' have no adequate remedy at law for the Defendants' continuing violation of their rights.

633.    As a direct and proximate result of the acts described herein, the Defendants have and will continue to profit from their actions and presentment to the public that their homes are insured, that claims will be paid, and that the premiums they are being charged

are being utilized to pay for viable contracts of insurance rather than being deceptively collected by Land Home and misappropriated by Oak Harbor.

634.   As a direct and proximate result of the acts described herein, the Trusts have been and continue to be injured in fact, have, and continue to lose money and profits, and such harm will continue unless the Defendants acts are enjoined by the Court.  The Trusts' have no adequate remedy at law for the Defendants' continuing violation of their rights.

635.   The Defendants should be required to restore to the AHP Trusts any and all profits earned as a result of their unlawful and fraudulent actions and provide the AHP Trusts with other restitutionary relief as the Court deems appropriate.

## SIXTEENTH CLAIM FOR RELIEF
### VIOLATION OF 12 USC § 2607
### (Against Land Home Financial Services, Inc.)

636.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

637.   In furtherance of the terms of the MLSARO and Amendment, Cymbidium retained Oak Harbor to carry out the terms of those agreements.

638.   In August 2022, the servicing of the Mortgage Loans was transferred to Land Home at the direction of Oak Harbor.

639.   At the time the MLSARO and Amendment were executed, Land Home was one of Magerick's investors and had and has a substantial financial stake in Magerick.

640.   Thereafter, Land Home, as the loan servicer, had a duty to manage and service the Mortgage Loans.

641.   Land Home failed or otherwise refused to take any appropriate action to service the Mortgage Loans to the detriment to the mortgagors and the AHP Trusts, as mortgagee.

642.   Land Home, purporting to act as the loan servicer for The Mortgage Loans, engaged in the following unlawful activities prohibited by 12 U.S.C. § 2607, including

but not limited to, charging and accepting fees not reasonably related to the servicing of the Mortgage Loans, to the detriment of the mortgagors and the AHP Trusts as mortgagees, retaining the Mortgage Loans and Mortgage Loan Proceeds owned by the AHP Trusts despite the AHP Trusts repeatedly demanding Land Home return or reimburse the AHP Trusts for the value of the amounts received.

643.   By accepting proceeds and revenue from the sale and assignment of federally related loans for services it never performed and by continuing to receive proceeds of federally related loans without consideration to the AHP Trusts in the form of a credit against the Cymbidium Loan, Land Home engaged in the practice of receiving a payment that bears no reasonable relationship to the market value of the services provided and that were actually performed or provided in violation of 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.14.

644.   By receiving a payment for services that it never performed as loan servicer for The Mortgage Loans, Land Home violated 12 U.S.C. § 2607, and Regulation X, 24 C.F.R. § 3500.14.

645.   Under 12 U.S.C. § 2607(d)(2), Third-Party Plaintiffs are entitled to statutory damages for Land Home's violations of 12 U.S.C. § 2607 in an amount equal to three times the amount of the fees received for services not performed.

646.   Under 12 U.S.C. § 2607(d)(5), Third-Party Plaintiffs are entitled to the court costs of the action together with reasonable attorneys' fees.

### SEVENTEENTH CLAIM FOR RELIEF
**VIOLATION OF 12 USC §  2607**
**(Against WWR Management, LLC)**

647.   The AHP Trusts reallege and incorporate all of the foregoing paragraphs as though set forth in this paragraph in full.

X:\D\788-01\Pleadings\MASTER Complaint FINAL.docx

648.  At or around the time the MLSARO and Amendment were executed, WWR was an affiliate of Oak Harbor and Magerick. Latim Wong was concurrently both the Governor of WWR and the REO Director of Oak Habor.

649.  In violation of the terms of the MLSARO and Amendment, which restricted reimbursement to costs paid to unrelated third-parties, Oak Harbor contracted with or otherwise had an agreement with WWR, a related party, to perform certain real estate settlement services, which includes, but is not limited to REO asset management in connection with the Mortgage Loans which Oak Harbor agreed to manage as part of the MLSARO and Amendment.

650.  Despite agreeing to perform such services, WWR was given a $1,500 management fee for sales of real estate without performing any of the services for which it was being compensated.

651.  WWR provided no back-up documentation for its performance on the ATLA statements that accompanied the sale of assets owned by the AHP Trusts.

652.  By accepting proceeds from the sale and assignment of real estate for services it never performed and by continuing to receive proceeds of federally related transactions without consideration to the AHP Trusts in the form of a credit against the Loan, WWR engaged in the practice of receiving a payment that bears no reasonable relationship to the market value of the services provided and that were not actually performed or provided in violation of 12 U.S.C. § 2607 and Regulation X, 24 C.F.R. § 3500.14.

653.  Under 12 U.S.C. § 2607(d)(2), the AHP Trusts are entitled to statutory damages for Defendants' violations of 12 U.S.C. § 2607 in an amount equal to three times the amount of the fees received for services not performed.

654.  Under 12 U.S.C. § 2607(d)(5), is the AHP Trusts are entitled to the court costs of the action together with reasonable attorneys' fees.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EIGHTEENTH CLAIM FOR RELIEF
### MONEY HAD AND RECEIVED
### (Against Oak Harbor, Land Home, WWR, Magerick, Weinstein, Western Alliance, Waite and Banner)

655.   The AHP Trusts reallege and incorporate paragraphs 1 through 168 as though set forth in this paragraph in full.

656.   Oak Harbor, Land Home, WWR, Magerick, Weinstein, Western Alliance, Waite and Banner received money and benefitted from and continue to receive money and benefit from the Mortgage Loan Proceeds that were and are intended for the use and benefit of the AHP Trusts.

657.   The Mortgage Loan Proceeds were not used for the benefit of the AHP Trusts.

658.   Oak Harbor, Land Home, Magerick, Weinstein, Waite and Western Alliance have not returned the Mortgage Loans and continue to collect and retain the Mortgage Loan Proceeds despite the AHP Trusts' demand that the Defendants do so.

659.   Oak Harbor, Land Home, Magerick, Weinstein, and Western Alliance owe money that they received from the Mortgage Loan Proceeds to the AHP Trusts.

## PRAYER

**WHEREFORE**, Plaintiff requests judgment as follows:

## ON THE FIRST CLAIM FOR RELIEF

For:

1.   general damages in excess of $75,000.00;

2.   special and consequential damages according to proof;

3.   treble damages according to proof; and

4.   attorneys' fees and costs.

## ON THE SECOND CLAIM FOR RELIEF

For:

COMPLAINT

X:\D\788-01\Pleadings\MASTER Complaint FINAL.docx

1.    general damages in excess of $75,000.00;

2.    special and consequential damages according to proof; and

3.    punitive damages in an amount to punish and make an example of Defendants.

### ON THE THIRD CLAIM FOR RELIEF

For:

1.    general damages in excess of $75,000.00; and

2.    special and consequential damages according to proof.

### ON THE FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH AND NINTH CLAIMS FOR RELIEF

For:

1.    general damages in excess of $75,000.00;

2.    special and consequential damages according to proof;

3.    treble damages according to proof; and

4.    attorneys' fees pursuant to 18 U.S.C. § 1964(c).

### ON THE TENTH CLAIM FOR RELIEF

For:

1.    general damages in excess of $75,000.00; and

2.    special and consequential damages according to proof.

### ON THE ELEVENTH CLAIM FOR RELIEF

For an order requiring the Defendants to Account for all of the Mortgage Loans, Mortgage Loans Proceeds, and all alleged charges against the Mortgage Loans and the Mortgage Loans Proceeds.

### ON THE TWELFTH AND THIRTEENTH CLAIM FOR RELIEF

For:

1.      general damages in excess of $75,000.00;

2.      special and consequential damages according to proof; and

3.      punitive damages in an amount to punish and make an example of Defendants.

### ON THE FOURTEENTH CLAIM FOR RELIEF

For a Declaration pursuant to 28 U.S.C. § 2201(a)that the AHP Trusts are the owners or the Mortgage Loans, without encumbrances, and the Defendants have no legal or equitable in the Mortgage Loans or the Mortgage Loan Proceeds.

### ON THE FIFTEENTH CLAIM FOR RELIEF

For:

1.      an order restoring to the AHP Trusts any and all profits earned by the Defendants as a result of their unlawful and fraudulent actions and providing the AHP Trusts with other restitutionary relief as the Court deems appropriate;

2.      attorneys' fees and costs; and

3.      punitive damages in an amount to punish and make an example of the Defendants.

### ON THE SIXTEENTH, SEVENTEENTH AND EIGHTEEN CLAIMS FOR RELIEF

For:

1.      general damages in excess of $75,000.00;

2.      special and consequential damages according to proof;

3.      treble damages according to proof pursuant to 12 U.S.C. § 2607(d)(2); and

4.      attorneys' fees pursuant to 12 U.S.C. § 2607(d)(5).

### ON THE NINETEENTH CLAIM FOR RELIEF

COMPLAINT

X:\D\788-01\Pleadings\MASTER Complaint FINAL.docx

For:

    1.    general damages in excess of $75,000.00; and

    2.    special and consequential damages according to proof.

## **ON ALL CLAIMS FOR RELIEF**

For:

    1.    the imposition of a constructive trust for the benefit of the AHP Trusts;

    2.    costs of suit, including attorneys' fees, that may be awarded by statute and/or case law;

    3.    prejudgment interest at the maximum legal rate; and

    4.    such other and further relief as the Court deems just and proper.

LANZA & SMITH
A Professional Law Corporation

September 30, 2024    */s/Brodie H. Smith*_____
Brodie H. Smith
Attorneys for Plaintiffs

127
COMPLAINT

1

## **DEMAND FOR JURY TRIAL**

2

3
Plaintiffs hereby demand a jury trial in this action.

4                                                LANZA & SMITH
                                                 A Professional Law Corporation
5

6
September 30, 2024                                */s/Brodie H. Smith*_____
7                                                Brodie H. Smith
                                                 Attorneys for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28